UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In Re

| | |
|---|---|
| TERRY MANUFACTURING COMPANY, INC., | In re Case No. 03-32063-WRS Chapter 7 |
| Debtor. | |
| J. LESTER ALEXANDER, III, TRUSTEE, | Adv. Pro. No. 04-3135-WRS |
| Plaintiff, | |
| v. | |
| DELONG, CALDWELL, NOVOTNY & BRIDGERS, LLC; DELONG, CALDWELL, LOGUE & WISEBRAM; DELONG & CALDWELL, LLC; and EARNEST H. DELONG, JR., | |
| Defendants. | |

## DEFENDANT'S DESIGNATION OF CONTENTS FOR INCLUSION IN RECORD ON APPEAL AND STATEMENT OF ISSUES ON APPEAL

The defendants herein pursuant to Bankruptcy Rule 8006, file this Designation of Contents for Inclusion in the Record on Appeal and Statement of Issues on Appeal:

***The following shall be included in the record on appeal:***

1.    Plaintiff's Complaint, dated 12/08/2004;  (AP Docket #1)

1

2.    Motion to Transfer Venue, dated 1/10/05; (Docket #6)

3.    Memorandum of Law in Support of Motion to Transfer Venue, dated 01/10/05; (Docket #7)

4.    Defendant's Answer, dated 01/10/05; (Docket #8)

5.    Response to Defendant's Motion to Transfer Venue, dated 01/25/05; (Doc #11)

6.    Memorandum Decision, dated 02/08/05; (Docket #13)

7.    Order on Motion to Transfer Venue, dated 02/08/05; (Docket #14)

8.    Motion for Leave to File Amended Complaint, dated 03/07/05; (Docket #23)

9.    Order Granting Motion to Amend Complaint, dated 03/14/05; (Docket #24)

10.    Amended Order on Plaintiff's Motion to Amend Complaint, dated 03/18/05; (Docket # 28)

11.    Objection to Motion for Leave to File First Amended and Restated Complaint, dated 03/25/05; (Docket #30)

12.    Brief, dated 03/25/05; (Docket #31)

13.    Reply to Objection to Trustee's Motion for Leave to File First Amended and Supplemental Complaint, dated 04/11/05; (Docket #32)

14.    Memorandum Decision, dated 04/14/05; (Docket #33)

15.    Order on Motion for Leave to File First Amended and Supplemental Complaint, dated 04/14/05; (Docket #34)

16.  Motion to Dismiss Case or in the Alternative Transfer Venue or Abstain on State Law Claims, dated 05/16/05; (Docket #42)

17.  Supporting Brief and Memorandum of Law of Joint Motion to Dismiss, dated 05/16/05; (Docket #43)

18.  Amended Complaint, dated 05/27/05; (Docket #161)

19.  Trustee's Objections to Motion to Dismiss, dated 06/15/05; (Docket #52)

20.  Response to Trustee's Opposition to Motion to Dismiss, Transfer Venue or Abstain, dated 06/30/05; (Docket #57)

21.  Memorandum Decision; dated 07/25/05; (Docket #76)

22.  Order Denying Motion to Transfer, dated 07/25/05; (Docket #77)

23.  Order Granting Motion to Amend Complaint, dated 07/25/05; (Docket #78)

24.  Defendants' Answer to the Second Amended and Restated Complaint, dated 08/04/05; (Docket #82)

25.  Memorandum Decision/Opinion, dated 05/29/07; (Docket #201)

26.  Judgment, dated 05/29/07; (Docket #202)

27.  Defendant's Notice of Appeal, dated 06/08/07;

28.  This Designation of Contents and Statement of Issues, dated 06/22/07;

29.  Trial Transcript.

***Statement of Issues:***

1.  Whether the payments which Terry Manufacturing Company made to Earnest H. DeLong were fraudulent conveyances or fraudulent transfers

3

pursuant to O.C.G.A. § 2-2-22 or O.C.G.A.§2-2-70 to 2-2-80;

2.    Whether the payments Terry Manufacturing Company made to Mr. DeLong were fraudulent conveyances pursuant to 11 U.S.C. § 548(a)(1)(B);

3.    Whether Mr. DeLong received the payments made by Terry Manufacturing in good faith and for reasonably equivalent value;

4.    Whether, if Mr. DeLong is liable to the Trustee for any amounts of payments he received from Terry Manufacturing Company, he served as a mere conduit for those portions of the payments which were made to Terry Manufacturing Company's co-Counsel, Jerry Thomas, Esq. for work Mr. Thomas performed in the defense of the Company, for which payments Mr. DeLong should not be held liable;

5.    Whether the Court improperly denied Defendant's Motion to Transfer Venue.

6.    Whether the Court improperly denied Defendant's Motion to Dismiss the Complaint.

Submitted this 22nd day of June, 2007.

s/ Charles R. Bridgers
Earnest H. DeLong, Jr.
Georgia Bar No. 217300
Michael A. Caldwell
Georgia Bar No. 102775
Charles R. Bridgers
Georgia Bar No. 080791
*Attorneys for Defendants*

DeLong, Caldwell & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
404/979-3150
404/979-3170 Facsimile

4

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In Re

| | |
|---|---|
| TERRY MANUFACTURING<br>COMPANY, INC., | In re Case No. 03-32063-WRS<br>Chapter 7 |
| Debtor. | |
| | |
| J. LESTER ALEXANDER, III,<br>TRUSTEE, | Adv. Pro. No. 04-3135-WRS |
| Plaintiff, | |
| v. | |
| DELONG, CALDWELL, NOVOTNY &<br>BRIDGERS, LLC; DELONG,<br>CALDWELL, LOGUE & WISEBRAM;<br>DELONG & CALDWELL, LLC; and<br>EARNEST H. DELONG, JR., | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2007, I electronically filed the foregoing **Defendant's Designation of Contents for Inclusion in Record on Appeal and Statement of Issues on Appeal** with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> Brent B. Barrier, T.A.
> Catherine E. Lasky
> Phelps Dunbar, LLP
> One Canal Place

365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534

I further certify that I sent a copy of the foregoing by U.S. Mail, postage prepaid

to:

Jerry A. Buchanan
Buchanan & Land, LLP
Post Office Box 2848
Columbus, Georgia 31902

Submitted this 22nd day of June, 2007.

s/ Charles R. Bridgers
Earnest H. DeLong, Jr.
Georgia Bar No. 217300
Michael A. Caldwell
Georgia Bar No. 102775
Charles R. Bridgers
Georgia Bar No. 080791
*Attorneys for Defendants*

DeLong, Caldwell & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
404/979-3150
404/979-3170 Facsimile

6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY MANUFACTURING COMPANY, INC.,** | ) ) | **CASE NO. 03-32063-WRS** |
| | ) | **CHAPTER 7** |
| Debtor. | ) | |
| | | |
| IN RE: | ) | |
| | ) | |
| **TERRY UNIFORM COMPANY, LLC.** | ) ) | **CASE NO. 03-32213-WRS** |
| | ) | **CHAPTER 7** |
| Debtor. | ) | |
| | | |
| **J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC.** | ) ) ) ) ) | **ADVERSARY PROCEEDING** |
| | ) | **NO. 04-03135** |
| v. | ) ) | |
| **DeLONG, CALDWELL, NOVOTNY & BRIDGERS, LLC.** | ) ) ) | **<u>JURY TRIAL DEMANDED</u>** |

### <u>DEFENDANTS' ANSWER TO THE SECOND AMENDED AND RESTATED COMPLAINT OF J. LESTER ALEXANDER, III, TRUSTEE</u>

**COME NOW** the Defendants, and for their Answer to the Trustee's

Second Amended and Restated Complaint, state as follows:

1.    No response is required from these Defendants to the introductory

paragraph.  Similarly, Defendants deny the allegations contained in paragraph 1.

1

2.      Earnest H. DeLong individually (hereafter referred to as "DeLong") and the law firm DeLong & Caldwell, LLC admit that they did represent Terry Manufacturing in litigation styled <u>Commercial Factors of Atlanta, Inc. v. Terry Manufacturing, et al.</u>, case number 99-A-10650-5, Gwinnett Judicial Circuit Superior Court, State of Georgia (the "Commercial Factors litigation") and likewise, that they represented Rudolph Terry in the Commercial Factors litigation.  Other than this admission, Defendants deny any explicit or implicit allegations contained in paragraph 2.

3.      The claims and allegations underlying the Commercial Factors litigation can be found in the pleadings filed therein and are a matter of public record.  Accordingly, no response is required of these defendants to the allegations contained in paragraph number 3 and to the extent such allegations are inconsistent or contradict the pleadings filed in the Commercial Factors litigation, such allegations are denied.

4.      These defendants admit that a federal criminal action styled <u>USA v. Pouncey, et al.</u>, in the District Court for the Northern District of Georgia, Case No. 2003-cr-00055 was initiated and that Rudolph Terry was named a defendant in such criminal action.  The defendants further admit that Rudolph Terry pled guilty to certain criminal conduct as set forth in his plea agreement with federal authorities and that such plea agreement speaks for itself and is a matter of public record.  Other than these admissions, these defendants deny any other allegations

2

contained in paragraph 4.

5.     Denied.

6.     Denied.

7.     No response is required from these defendants.

8.     Admitted.

9.     Defendants admit that DeLong, Caldwell, Novotny & Bridgers, LLC, is a limited liability company organized and existing under the laws of the State of Georgia, with its principle place of business in the city of Atlanta, state of Georgia. The remaining allegations are denied.

10.     Defendants deny the allegations contained in paragraph 10.

11.     Defendants deny that venue is proper in this district.

12.     See defendants' response to paragraph 2 herein.  Unless otherwise admitted in paragraph 2 herein, the allegations contained in paragraph 12 are denied.

13.     See defendants' response to paragraph 3 herein.  Unless otherwise admitted in paragraph 3 herein, the allegations contained in paragraph 13 are denied.

14.     Denied.

15.     Any and all available defenses, reasonably grounded in fact and/or law, were raised on behalf of Terry Manufacturing.  The remaining allegations contained in paragraph 15 are denied.

3

16.    Denied.

17.    Any indictment against Rudolph Terry is a matter of public record and speaks for itself, and, in addition, any plea agreement by Rudolph Terry is a matter of public record and speaks for itself.  Therefore, no response to the allegations contained in paragraph 17 is required from these defendants.  To the extent a response is required the allegations in paragraph 17 are denied.

18.    These defendants are without sufficient information to either admit or deny the allegations contained in paragraph 18 and, therefore, such allegations are denied.

19.    These defendants are still in the process of gathering records related to any payments made by Rudolph Terry and/or Terry Manufacturing in connection with their defense and representation in the Commercial Factors litigation and therefore can neither admit nor deny the allegations contained in paragraph 19.

## COUNT I

20.    These defendants are without sufficient information to either admit or deny the allegations contained in paragraph 20; therefore,such allegations are denied.

21.     Denied.

22.    Paragraph 22, including its sub-parts, is denied in its entirety.

4

23.    Denied.  Furthermore, these defendants deny that the Trustee is entitled to any damages and/or relief whatsoever against them.

## COUNT II

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.  Furthermore, these defendants deny that the Trustee is entitled to any damages and/or relief whatsoever against them.

## COUNT III

28.    Denied.

## COUNT IV

29.    Denied.

30.    Denied.

31.    These defendants deny that the Trustee is entitled to any relief as requested in his "wherefore" paragraph following paragraph 30.  Furthermore, Defendants assert that the Trustee is not entitled to and should not be awarded any damages or relief whatsoever against them.

## AFFIRMATIVE DEFENSES

32.    The Trustee has failed to state a claim for relief against Defendants for which relief can be granted.

33.    The Trustee's claims against Defendants are time barred by the

applicable statute of limitations.

34.    Defendants plead not guilty to the charges complained of in the Trustee's Adversary Proceeding and demand strict proof thereof.

35.    Defendants aver that there is an absence of proximate cause between any act, error, or omission by any Defendant and the damages and/or relief sought by the Trustee.

36.    Defendants aver that any and all actions of the Defendants were privileged, justifiable and reasonable.

37.    The Trustee's claims against the Defendants are barred by the doctrines of waiver, estoppel, contributory negligence and/or assumption of the risk.

38.    Defendants plead the general issue.

39.    Defendants deny that any act or omission by a Defendant proximately caused the damages and/or relief sought by the Trustee in his Adversary Proceeding.

40.    The Trustee's Complaint fails to state any injuries or damages that were proximately caused by the Defendants.

41.    Defendants deny each and every material allegation in the Trustee's Complaint and demand strict proof thereof.

42.    Defendants allege that the Trustee has suffered damages which were not within the Defendants' control to either cause or prevent.

6

43.    Defendants aver that there is an efficient intervening cause which isolates the Defendants from any alleged liability and barr Trustee's recovery against them.

44.    The Defendants did not commit any act or omission, nor did they breach any duty, that caused or contributed to the Trustee's alleged injuries and would give Trustee the right to seek relief from them.

45.    The Trustee is not entitled to relief or damages whatsoever against Defendants.

46.    Defendants deny that they acted in any negligent, wanton, unlawful or illegal manner that caused or contributed to Trustee's alleged injuries or damages, or which would give the Trustee the right to seek relief against them.

47.    The Defendants have not acted in any manner whatsoever that would infringe any legally protected right of the Trustee and entitle Trustee to seek relief against them.

48.    Defendants allege that any alleged damages for which the Trustee seeks relief are the result of acts or omissions of others, over whom Defendants had no control and for whom Defendants have no responsibility.

49.    Defendants at all times acted in compliance with any and all pertinent legal rules or legal standards to which Defendants may be subject.

50.    The Trustee has failed to mitigate his alleged damages.

51.    The Trustee's right to recovery or legal relief is barred by the doctrine

7

of unclean hands.

52.     The Trustee's claims are barred by the Statute of Frauds or Parole Evidence Rule or both.

53.     No individual Defendant has ever conspired or acted with any other Defendant, or any one else, to commit any unlawful, oppressive or immoral act, or to engage in any lawful activity by unlawful, oppressive or immoral means.

54.     Defendants aver that the Trustee's claims are in their entirety, or in part, barred by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

Respectfully submitted this the _4th_ day of August, 2005.

/s/ J. Flynn Mozingo
J. Flynn Mozingo (MOZ/003)
Joseph C. Espy, III (ESP002)
Attorneys for **Earnest H. "Woody"
DeLong, Jr. and DeLong,
Caldwell, Novotny & Bridgers,
LLC**
Melton, Espy & Williams, PC
301 Adams Avenue
Montgomery, AL  36104
Telephone: (334) 263-6621
Facsimile: (334) 263-7252
fmozingo@mewlegal.com

OF COUNSEL:

Robert F. Northcutt
Attorney for DeLong, Caldwell,
Novotny & Bridgers, LLC
Capell & Howard
P.O. Box 2069
Montgomery, AL 36102
Telephone: (334) 241-8000
Facsimile: (334) 323-8888
rfn@chlaw.com

Charles D. Butler
Attorney for DeLong, Caldwell,
Novotny & Bridgers, LLC
Shapiro Fussell
One Midtown Plaza
Suite 1200
1360 Peachtree Street
Atlanta, GA 30309
Telephone: (404) 870-2212
Facsimile: (404) 870-2222
dbutler@shapirofussel.com
Attorneys for DeLong & Caldwell,
Logue & Wisebram, LLC,
DeLong & Caldwell, LLC,
DeLong, Caldwell, Novotny & Bridgers, LLC
and Earnest H. DeLong, Jr.

## <u>JURY TRIAL DEMANDED</u>

## CERTIFICATE OF SERVICE

_____I hereby certify that on this the _4th _ day of August, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of such filing to the following:

Brent B. Barriere                      Teresa R. Jacobs
Phelps Dunbar, LLP                     US Bankruptcy Administrator
365 Canal Street                       One Church Street
Suite 2000                             Montgomery, AL 36104
New Orleans, LA 70130-6534

/s/ J. Flynn Mozingo_____
J. Flynn Mozingo (MOZ/003)
Joseph C. Espy, III (ESP002)
Attorneys for **Earnest H. "Woody"
DeLong, Jr. and DeLong,
Caldwell, Novotny & Bridgers,
LLC**
Melton, Espy & Williams, PC
301 Adams Avenue
Montgomery, AL  36104
Telephone: (334) 263-6621
Facsimile: (334) 263-7252
fmozingo@mewlegal.com

10

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 03-32063-WRS
                                                         Chapter 7
TERRY MANUFACTURING
COMPANY, INC.,

        Debtor.


J. LESTER ALEXANDER, III,
TRUSTEE,
                                                         Adv. Pro. No. 04-3135-WRS
        Plaintiff,

  v.

DELONG, CALDWELL, NOVOTNY &
BRIDGERS, LLC;  DELONG,
CALDWELL, LOGUE & WISEBRAM;
DELONG & CALDWELL, LLC; and
EARNEST H. DELONG, JR.,

        Defendants.


## <u>MEMORANDUM DECISION</u>

This Adversary Proceeding came before the Court for a four-day trial beginning on January 30, 2007.  Plaintiff J. Lester Alexander, III, was present in person and by counsel Brent B. Barriere, T.A. and Catherine E. Lasky.  Defendants were present by Earnest H. DeLong, Jr., Michael A. Caldwell, and Charles R. Bridgers.  At the conclusion of the trial, the Court took the matter under submission.  The parties, at the Court's request, have filed Proposed Findings of Fact and Conclusions of Law.  (Docs. 199, 200).

In this Adversary Proceeding, the Chapter 7 Trustee seeks to avoid payments totaling $476,233.67 made by the Debtor Terry Manufacturing to lawyers who represented it in a civil

action in Georgia.  The Trustee contends that the cash transfers are avoidable as fraudulent conveyances alleging that the payments were constructively fraudulent in that Terry Manufacturing did not receive reasonably equivalent value in exchange for the transfers.  The Trustee also seeks to avoid the payments as preferential transfers.  The Trustee further alleges that the Defendants committed malpractice by representing both Terry Manufacturing and Rudolph Terry.  For the reasons set forth below, the Court enters judgment in favor of the Trustee in the amount of $476,233.67 on the fraudulent conveyance claim.  As the malpractice claim is not a core proceeding, the Court enters Proposed Findings of Fact and Conclusions of Law by way of a separate document.  As a final matter, the preference claim is dismissed with prejudice.

## I.  FINDINGS OF FACT

### A.  Background

Terry Manufacturing, Inc., filed a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code in this Court on July 7, 2003.  (Case No. 03-32063, Doc. 1).  J. Lester Alexander, III, was appointed Trustee on July 11, 2003.  (Case No. 03-32063, Doc. 20).  The case was converted to a case under Chapter 7 on May 13, 2004.  (Case No. 03-32063, Doc. 579).  The Trustee filed a complaint initiating this Adversary Proceeding on December 8, 2004.  (Doc. 1).[1]  The Trustee's complaint alleges claims for fraudulent conveyances, avoidable preferences, and attorney malpractice.

---

[1]  Documents in this Adversary Proceeding, No. 04-3135, will be referred to by its document number.  Documents in other files will be preceded by the case number of that file.

-2-

Terry Manufacturing was a textile business specializing in the manufacture of uniforms. Its two most notable contracts were with the United States Department of Defense for combat fatigues and McDonald's for its restaurant workers' uniforms. Terry Manufacturing has its main business and manufacturing location in Roanoke, Alabama and also had a facility in Atlanta, Georgia. By local standards, Terry Manufacturing was a large business employing more than 300 people in its heyday.

The principals of Terry Manufacturing were Roy Terry and Rudolph Terry, who are brothers. Both of Terry brothers have been convicted of crimes relating to their activities at Terry Manufacturing. Roy Terry plead guilty to thirteen counts of bank fraud, wire fraud and mail fraud and has been sentenced to prison for seventy-eight months. United States v. Roy Terry, in the United States District Court for the Middle District of Alabama, Criminal No. 3:05CR141-MEF. Rudolph Terry plead guilty to one count of conspiracy to defraud the United States and was sentenced to prison for forty-one months. United States v. Rudolph Terry, in the United States District Court for the Middle District of Alabama, Criminal No. 3:06CR52-MEF. In addition, Rudolph Terry plead guilty to criminal charges in the Northern District of Georgia for his fraud in connection with the Commercial Factors case.

Rudolph Terry was Vice President of Terry Manufacturing and owned 49% of the common stock. Rudolph Terry lived in Georgia at all times relevant to these proceedings. Moreover, Rudolph worked in the Atlanta, Georgia office. It appears that almost all of the cash transfers were by check written from the Georgia bank account. (Pl. Ex. 12). Moreover, DeLong's law office is in Atlanta, and the Commercial Factors litigation was in Gwinnett

County, Georgia.  While Terry Manufacturing was based in Roanoke, Alabama, it appears that

virtually all of the activities relating to the claims at issue here took place in Georgia.

The activities of the Terry brothers has spawned a considerable amount of litigation, and

this Court has become familiar with the workings of Terry Manufacturing and the Terry brothers.

Both Rudolph and Roy Terry testified at the trial of this Adversary Proceeding.  While the loss to

creditors and shareholders has not yet been quantified, the plea agreement entered in Roy Terry's

criminal case estimates the loss at between $20 and $50 million, which appears to the

undersigned to be a reasonable estimation of the losses.  The Terry brothers engaged in a

massive fraud which took place over a number of years beginning in the late 1990's and

continuing to 2003, when Terry Manufacturing ceased doing business.  The fraudulent scheme

included the issuance of false financial statements, check kiting, and the massive diversion of

funds from Terry Manufacturing.

### B.  The Commercial Factors Litigation

Rudolph Terry involved himself in a scheme to defraud Commercial Factors of Atlanta,

Inc.  Floodgates, LTD., had been a supplier of tee shirts to Terry Manufacturing during the 1996

Summer Olympic games, which were in Atlanta.  Jon L. Pouncey was the principal of

Floodgates, which factored its accounts receivable to Commercial Factors.  Floodgates entered

into a commercial borrowing arrangement whereby it would transfer its accounts receivable to

Commercial Factors in exchange for cash.  Pouncey and Rudolph Terry conspired to defraud

Commercial Factors by submitting fraudulent invoices which were issued by Floodgates to Terry

Manufacturing.  That is, Floodgates would issue invoices to Terry Manufacturing for product

which was never delivered.  Millions of dollars worth of fraudulent invoices were transferred to

Commercial Factors.  Moreover, Rudolph Terry signed a certification for Commercial Factors, verifying receipt of the invoiced tee shirts, knowing that in reality no such tee shirts had been delivered.  Rudolph Terry knew that his certification was false, and he knew that Commercial Factors was advancing money to Floodgates in reliance upon the legitimacy of the invoices.

In December of 1999, Commercial Factors brought a civil action against Terry Manufacturing, Floodgates, and Pouncey.  (Pl. Ex. 31).  Commercial Factors of Atlanta, Inc., v. Terry Manufacturing Co., et al., in the Superior Court of Gwinnett County, Georgia, Civil No. 99-A10650-5.  Rudolph Terry retained Defendant Earnest DeLong, an Atlanta lawyer, to represent Terry Manufacturing, and later himself in the Commercial Factors litigation.[2]  In his trial testimony, DeLong characterized the original complaint in the Commercial Factors suit as a garden variety collection dispute.  On January 31, 2000, DeLong filed an Answer and Counterclaim on behalf of Terry Manufacturing in the Commercial Factors suit.  (Pl. Ex. 32).  In the original complaint, Commercial Factors alleged that Terry Manufacturing owed approximately $3.3 million on the Floodgate invoices.  (Pl. Ex. 31).  In the Answer and Counterclaim filed by DeLong on behalf of Terry Manufacturing, it was alleged that Terry Manufacturing owed approximately $2.1 million on the Floodgate invoices.  (Pl. Ex. 32).  It is significant in that Terry Manufacturing filed a pleading in court to the effect that it owed $2.1 million, when in fact it had never received the first tee shirt, and for that reason owed nothing.

---

[2]  There is a great deal of confusion as to whether Earnest DeLong, an individual, was retained or whether it was the law firm.  To further complicate matters, DeLong practiced under the name of DeLong & Caldwell, LLC, at the time he was retained.  The firm has gone through several changes due to partners joining and leaving the firm at various times.  For purposes of discussion, the Defendant will be referred to as DeLong.  In Part I(D) below, the problem of the proper entity will be discussed in more detail.

As Terry Manufacturing in fact owed nothing on the invoices, the defense of the civil action

should have been a relatively straightforward matter.

Commercial Factors undertook extensive discovery beginning in the spring of 2000.

Rudolph Terry's deposition was first taken on April 28, 2000. (Pl. Ex. 44A). The deposition

was continued and Rudolph Terry was further deposed on May 17, 2000, (Pl. Ex. 45), and again

on October 31, 2000. (Pl. Ex. 47). Rudolph Terry's deposition was also taken on October 11,

2001. (Pl. Ex. 48). When Rudolph Terry's appeared for a scheduled deposition on April 28,

2000, he did not bring documents relating to the invoices, as requested by the lawyers

representing Commercial Factors. It is noteworthy that DeLong had filed a pleading alleging

that Terry Manufacturing owed Floodgates $2,130,628.91 on the invoices in question. (Pl. Ex.

32). Such a precise figure implies that an accounting was undertaken to arrive at that figure.

Rudolph Terry testified, on April 28, 2000, as follows:

> Q. What search did you engage in to find documents responsive to
> request No. 2?
>
> A. I have not – I have not had the opportunity to do any such search.
>
> Q. And do you plan to make such search in the future?
>
> A. I plan to consult with my attorney and make a decision as it
> relates to that. I have not assessed any of these as it relates to
> relevancy, applicability. So I just physically have gone beyond
> reason so to make myself available here.

(Pl. Ex. 44A, 11:3-11:14). Thus, it appears that Rudolph Terry was stonewalling Commercial

Factor's efforts to discover the facts relating to the invoices in question.[3] Indeed, the record in

---

[3] An exasperated Commercial Factors lawyer, Matthew Coles, complained at Rudolph
Terry's April 28, 2000 deposition:

the Commercial Factors litigation is replete with stonewalling and obfuscation.

Commercial Factors took Rudolph Terry's deposition again on May 17, 2000, and Rudolph Terry did not produce any documents.  (Pl. Ex. 45, 153:22-155:12).  Following a ruling by the Court in Gwinnett County, Rudolph Terry produced eighteen boxes of documents at a deposition held October 31, 2000.  (Pl. Ex. 47, 287:5-287:14).  In Rudolph Terry's lengthy deposition testimony, it becomes clear that none of the documents in the eighteen boxes produced contained documents which related to the Commercial Factors invoices to Terry Manufacturing.  The following deposition testimony is illustrative:

> Q.  When Terry Manufacturing purchased goods or services from Floodgates, would Terry Manufacturing issue a purchase order?
>
> A.  Probably not.
>
> Q.  Never?
>
> A.  Probably–I don't know that never, but probably not.  I say that that was not the general process.
>
> Q.  What document would Terry Manufacturing exchange with Floodgates concerning goods and services that Floodgates was to provide to Terry Manufacturing?
>
> A.  Might not be any document.

---

> I don't understand what we're doing here.  I mean, you know that we're going to have no choice but to go back in front of the Court.  The Court has heard from us on this case multiple times and has made it abundantly clear that discovery is going to go forward, and now we're being absolutely stonewalled at this properly noticed deposition.  Not a single document has been produced, and not we're being told that the most basic of questions are not going to be answered.  I am dumbfounded by that, in light of the Judge's order.

(Pl. Ex. 44A, 59:11-60:1).

(Pl. Ex. 47, 300:10-300:22).  Rudolph Terry was testifying falsely here as he was well aware that there were no documents.   According to invoices previously certified by Rudolph Terry to Commercial Factors, Terry Manufacturing had received millions of dollars worth of tee shirts. (Pl. Ex. 70). Commercial Facts amended its complaint and added Rudolph Terry as a named party Defendant.

### C. Cash Transfers

DeLong represented Terry Manufacturing from January 2000 until July 2003, when Terry Manufacturing filed for bankruptcy.  The parties have stipulated that Rudolph Terry paid DeLong $476,233.67 for the legal work DeLong performed in the Commercial Factors case. (Doc. 193, ¶ 2).  The payments were made in forty transfers between January 18, 2000 and June 12, 2003.[4]  DeLong sent regular bills to Rudolph, which Rudolph paid from checks written on Terry Manufacturing's accounts.  The Court has reviewed these bills, which total 141 pages.  (Pl. Ex. 13).  It is undisputed that the bills were sent under the letter head of "DeLong & Caldwell, LLC."

---

[4]  These forty cash transfers total $860,998.54.  (Pl. Ex. 11).  The parties have stipulated that the amount of the transfers subject to the Trustee's fraudulent transfer claim is $476,233.67. (Doc. 193).  It appears that the difference is that amounts were transferred to DeLong in an effort to settle the Commercial Factors claim which are not actually DeLong's money.  Thus, DeLong was a conduit to the extent of $384,764.87.  The stipulation does not attempt to reconcile Plaintiff's Exhibit 11 with amount agreed up.  As the Court has found that the transfers are avoidable under both old Georgia law and new Georgia law, the distinction is not material.

### D.  Identity of Defendants

The Court will next turn to the question of which Defendants are liable.  The "Second Amended and Restated Complaint," in this Adversary Proceeding named four Defendants: (1) DeLong, Caldwell, Novotny & Bridgers, LLC (DCNB); (2) DeLong, Caldwell, Logue & Wisebram, LLC (DCLW); (3) Earnest H. DeLong, Jr., an individual; and (4) DeLong & Caldwell, LLC.  (Doc. 161).

All of the billing and correspondence for DeLong's services for Rudolph Terry was done under the name "DeLong & Caldwell, LLC," on bills issued to Terry Manufacturing. (Pl. Exs. 10-13).  However, at no time relevant to these proceeding was such an entity in existence. DCLW filed a change of name with the Georgia Secretary of State's office on January 28, 2007, changing its name to "DeLong & Caldwell, LLC."  (Pl. Ex. 142).  Thus, DeLong & Caldwell, LLC, did not exist until two days before the trial.

On the other hand, Earnest H. DeLong, Jr., an individual, was involved at all relevant times.  The Defendants vigorously deny liability on both the fraudulent conveyance and professional liability counts.  Alternatively, they contend that if there is any liability, Earnest DeLong is the only liable party.  The Court finds that Earnest DeLong, an individual, is the only Defendant who should be held liable here.  The evidence does not establish that any other named Defendant had an interest in the transfers in question.

## II.  CONCLUSIONS OF LAW

### A.  Jurisdiction/Core Proceedings

This Court has subject matter jurisdiction over the claims brought here pursuant to 28 U.S.C. § 1334.  The fraudulent conveyance claims are core proceedings.  28 U.S.C. § 157(b)(2)(H).  The preference claims are also core proceedings.  28 U.S.C. § 157(b)(2)(I).  As the attorney malpractice claim could be prosecuted independent of the Bankruptcy filing, it is not a core proceeding.  See Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Electric Mach. Enters., Inc.), 479 F.3d 791 (11th Cir. 2007) (holding that a core proceedings is one that would only arise in bankruptcy).  For this reason, the Court will enter a final order on the fraudulent conveyance and preference claims, and it will make proposed findings of fact and conclusions of law on the attorney malpractice claim.

### B.  Conflict of Laws

In this Adversary Proceeding, the Trustee asserts state law claims for malpractice and fraudulent conveyances.  Both the Trustee and DeLong agree that Georgia substantive law applies to the malpractice claims.  (Doc. 199, p. 21; Doc. 200, p. 30).  However, the Trustee argues that Alabama substantive law applies to the fraudulent transfer, while DeLong asserts that Georgia substantive law is applicable.  (Id.).

The first step in deciding a conflict of law problem is to determine whether the substantive law of Georgia is different than that of Alabama on the legal issues presented.  Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006).  The inquiry here is complicated by the fact that the Georgia Legislature amended its fraudulent transfer statutes on July 1, 2002, which make some of the transfers here subject to the old law

and others subject to the new law.  See Hays v. Morgan Stanley DW, Inc. (In re Stewart Finance Co.), __ B.R. __, 2007 WL 1032263 (Bankr. M.D. Ga. Mar. 30, 2007) (applying the repealed Georgia fraudulent transfer act to conveyances that occurred prior to July 1, 2002 and applying the current Georgia act to transfers that occurred after July 1, 2002).  The former act was codified at GA. CODE. ANN.  § 18-2-22 (repealed 2002), while the new law is codified at GA. CODE ANN. § 18-2-70 et seq. (2002).  The Alabama Fraudulent Transfer Act is codified at ALA. CODE § 8-9A-1 et seq.  There is a conflict in the burden of proof applied under the Alabama act and the Georgia act.  Compare Pennington v. Bigham, 512 So.2d 1344, 1346 (Ala. 1987) (holding that under  ALA. CODE § 8-9A-4, the plaintiff bears the initial burden of proving that a transfer was made, and then the burden shifts to the defendant to prove that it was for reasonably equivalent value), with Ambase Int'l Corp. v. Bank South, N.A., 395 S.E.2d 904, 908 (Ga. Ct. App. 1990) (holding that under GA. CODE. ANN.  § 18-2-22, the plaintiff must prove each element by a preponderance of the evidence).

Finding a conflict between Alabama and Georgia law, this Court applies the conflict of law rule from the forum state–Alabama.  See JP Morgan Chase Bank, N.A. v. AVCO Corp. (In re Citation Corp.), 349 B.R. 290, 294 (Bankr. N.D. Ala. 2006) ("This Court is bound by the Erie Doctrine in this case and therefore will look to Alabama choice-of-law rules.").  This case presents a cause of action for fraudulent transfers, which are properly characterized as tort claims.  See Cox v. Hughes, 781 So.2d 197, 201 (Ala. 2000) (classifying fraudulent conveyances actions as tort claims).  For tort actions, Alabama applies the law of *lex loci delicti*, which requires application of the law of the state where the wrong occurred.  Fitzgerald v. Austin, 715 So.2d 795, 797 (Ala. Civ. App. 1997).

-11-

This case involves a series of payments made from Rudolph Terry to DeLong. At the time of these transfers, Rudolph Terry and Earnest DeLong were residents of the State of Georgia. Rudolph Terry made the transfers on checks written from Terry Manufacturing's Atlanta office to Earnest DeLong's Atlanta law practice. The checks were written on a Georgia bank account and were made in payment for legal work that DeLong purportedly performed on the Commercial Factors Litigation, which was in a Georgia state court. Under the law of *lex loci delicti*, it appears that the "wrong" occurred in Georgia. As such, this Court concludes that Georgia substantive law applies to both the state law claims for malpractice and fraudulent transfers.

### C. Fraudulent Transfer Claims

As the Court has resolved the conflict of law question, concluding that Georgia law controls, the Court will next examine Georgia law. This is complicated by fact that the fraudulent transfer claim involves approximately forty cash transfers, the first one taking place on January 18, 2000, and the last one having occurred on June 12, 2003. These dates are significant in that the Georgia fraudulent transfer statutes were amended effective July 1, 2002. Thus, some of the transfers were made while the old law was in effect and the remainder were made while the new law was in effect. The transfers made prior to July 1, 2002 are analyzed under GA. CODE ANN. § 18-2-22 (old Georgia law), and the transfers made on or after July 1, 2002 are analyzed under GA. CODE ANN. §§ 18-2-70 to 18-2-80 (new Georgia law). See Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1081 (11th Cir. 2004) (concluding that causes of action existing prior to July 1, 2002, were not extinguished).

In this case, the Trustee seeks to stand in the shoes of a creditor of Terry Manufacturing. See 11 U.S.C. § 544(b) (allowing the Trustee to act on behalf of an unsecured creditor to avoid any transfer of an interest of the debtor in property that is voidable under applicable law). The parties have stipulated that there are at least eight unsecured creditors of Terry Manufacturing whose claims arose prior to the date of the transfers at issue here. (Doc. 193, ¶ 4).

## 1. Old Georgia Law

The former Georgia act on fraudulent conveyances, GA. CODE ANN. § 18-2-22 (repealed 2002), provided in pertinent part as follows:

> The following acts by debtors shall be fraudulent in law against creditors and others and as to them shall be null and void:
>
> * * *
>
> (3) Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor who is insolvent at the time of the conveyance.

Id. The necessary elements under the constructive fraud provision are: (1) a bona fide creditor must exist at the time the transfer was made; (2) the transfer was made for inadequate consideration; and (3) the debtor was insolvent at the time of the transfer or was rendered insolvent as a result of the transfer. Ambase Int'l Corp., 395 S.E.2d at 908; Loeb v. Dante (In re Dante), 1 B.R. 547, 548 (Bankr. N.D. Ga. 1979). The Trustee bears the burden to prove each element by a preponderance of the evidence. See Carey v. U.S.A. (In re Carey), 1992 WL 12004363, at *5 (Bankr. S.D. Ga. May 14, 1992).

The first and third elements are not disputed by the parties. The parties have stipulated to the transfers. (Doc. 193, ¶ 2). The parties have also stipulated that Terry Manufacturing was insolvent on January 1, 2000 and at all times thereafter. (Doc. 193, ¶ 5). The Trustee's

fraudulent transfer claim turns on the question of whether Terry Manufacturing received

adequate consideration for its cash transfers to DeLong.  Georgia courts have held that "valuable

consideration is founded on money or something convertible into money or having a value in

money." <u>Lionheart Legend, Inc. v. Norwest Bank Minnesota National Assoc.</u>, 560 S.E.2d 120,

124 (Ga. Ct. App. 2002).

Terry Manufacturing paid $476,233.67 to DeLong for the legal work he performed in the

Commercial Factors case.  The sheer magnitude of the attorney's fees here is astonishing.  Terry

Manufacturing never received the first tee shirt.  This fact could have been easily established

with a modest amount of effort.  However, this fact could not be proven without also establishing

that Rudolph Terry had lied to Commercial Factors about the Floodgates invoices.  Thus, the

thrust of DeLong's efforts was not to defend Terry Manufacturing in the Commercial Factors

civil action.  Rather, it was to shield Rudolph Terry from criminal liability, using Terry

Manufacturing to fund the effort and refusing to produce Terry Manufacturing documents which

would have gotten it off the hook, while placing Rudolph Terry in jeopardy of a criminal

indictment.

The DeLong bills, spanning a period of time from January 2000, to June 2003, consist of

141 pages.  (Pl. Ex. 13).  As Terry Manufacturing did not receive the first tee shirt from

Commercial Factors (during the period covered by the invoices), there is no valid reason for the

defense to have taken such a massive effort.  Examination of the DeLong bills reveals that an

enormous amount of time was spent resisting the efforts of Commercial Factors to obtain

discovery from Terry Manufacturing and its accountant, Richard S. Rose.  The underlying

purpose of this massive effort to thwart Commercial Factor's discovery was to conceal the

criminal activities of Rudolph and Roy Terry and not to defend Terry Manufacturing.  Rudolph

Terry was deeply involved in the fraudulent scheme with Jon Pouncey, and the materials sought

by Commercial Factors would have paved Rudolph Terry's path to prison.  Moreover, the

accounting work papers of Rose, Terry Manufacturing's accountant, if they in fact did exist,

would have shown that Terry Manufacturing's financial statements were fraudulent.[5]

      Terry Manufacturing was named a Defendant in the Commercial Factors litigation where

millions of dollars in damages were sought.  DeLong contends that the failure to successfully

defend Terry Manufacturing could have resulted in its ruin.  DeLong contends that he vigorously

litigated the Commercial Factors case and that he used a high degree of skill.  The problem is

that virtually all of DeLong's efforts were directed at protecting Rudolph Terry from criminal

prosecution, often to the detriment of Terry Manufacturing.  For example, DeLong filed a

pleading which admitted that Terry Manufacturing had received approximately $2.1 million in

goods from Floodgate, when in fact it had not.  (Pl. Ex. 32).  Rather than aggressively work to

prove that Terry Manufacturing had received no tee shirts, which would have gotten Terry

---

     [5]  Rose refused to produce documents or give testimony in the Commercial Factors case. Following a court order compelling discovery, Rose prosecuted an appeal to the Georgia Court of Appeals.  Rose v. Commercial Factors of Atlanta, Inc., 586 S.E.2d 41 (Ga. Ct. App. 2003) (holding that crime-fraud exception overrides a claim of privilege).  Georgia law recognizes an accountant-client privilege.  However, the trial court found that the privilege did not apply in that case because Rose acted in furtherance of a fraudulent scheme.  The Georgia Court of Appeals affirmed the trial court.  Id.  The evidence produced at trial established that Rose did not subsequently produce his work papers.  The Trustee testified at the trial of this Adversary Proceeding that in all likelihood, no such work papers exist and that Rose probably certified Terry Manufacturing's financial statements without conducting an audit.  While this is an inference and not direct evidence, the Court is of the view that the Trustee is correct.  If the fact that Terry Manufacturing's financial statements were fraudulent been established in the year 2000 or 2001, the unraveling of Terry Manufacturing would have taken place earlier.  In other words, DeLong's efforts stalled, for a year or two, the exposure of the massive fraud perpetrated by the Terry brothers.

Manufacturing off the hook, DeLong undertook an extraordinarily time consuming effort to keep evidence which would have proved this fact from Commercial Factors. Having heard many hours of testimony and having considered voluminous documents concerning the Commercial Factors litigation, the Court finds that this was done not to benefit Terry Manufacturing; rather, it was done to protect Rudolph Terry. Indeed, these efforts were highly prejudicial to Terry Manufacturing.

DeLong argues that the claims made against Terry Manufacturing and Rudolph Terry were coextensive. This is true. However, DeLong ignores the fact that the defenses of Terry Manufacturing and Rudolph Terry were antagonistic. Terry Manufacturing's defense–no tee shirts–necessarily implies Rudolph Terry's fraud, as he had falsely certified the existence of the nonexistent tee shirts. Rather than defending Terry Manufacturing, DeLong placed Terry Manufacturing squarely between Commercial Factors and Rudolph Terry. That is, DeLong was defending Rudolph Terry at the expense of Terry Manufacturing.

The shortcomings in DeLong's defense is that he assumes that value provided to Rudolph Terry individually inured to the benefit of Terry Manufacturing. This is not correct. Terry Manufacturing did not benefit from DeLong's services in the Commercial Factors litigation. As Terry Manufacturing did not receive the tee shirts represented by the Commercial Factors invoices, it had a simple, straight-forward defense, which DeLong could not raise without also establishing that Rudolph Terry falsely certified the Commercial Factors invoices. DeLong argues that Terry Manufacturing not been defended, that judgment would have been taken and the corporation ultimately destroyed. To be sure, by filing any kind of answer and taking any

-16-

kind of position, judgment was staved off for a time.[6]  The proper comparison is not DeLong's services with no services, but rather the services rendered by DeLong with those of an attorney not encumbered with the defense of Rudolph Terry.  Indeed, not only did Terry Manufacturing not benefit from DeLong's services, rather it was harmed because its defense was not established.

Buried deeply in the papers filed DeLong in the Commercial Factors litigation was an affidavit of Roy Terry, which was filed in the Gwinnett County case in support of a motion for summary judgment.  (Pl. Ex. 69).  In Paragraph 13 of that affidavit Roy Terry states that "if Rudolph Terry engaged in the inappropriate conduct alleged by the Plaintiff [Commercial Factors], that conduct was outside the scope of Rudolph Terry's employment at TMC, and it was not in furtherance of the business of TMC."  (Pl. Ex. 69).  As DeLong argues in his filings here, he raised every possible defense, none of which were credible because they were inconsistent with one another.  Indeed, he qualified Roy Terry's statement with the conditional "if."  One need look no farther than Roy Terry's affidavit to see that facts raised by the Defense were inconsistent with one another.

Rudolph Terry's defense to the fraud allegations was that the fraudulent invoices were part of a scheme to lend money to Jon Pouncey.  Roy Terry admits knowledge of the scheme at Paragraph 10 of his affidavit.  (Pl. Ex. 69).  It was alleged by Rudolph Terry that Tracy Eden (an employee of Commercial Factors) had knowledge of the lending arrangement and that as a result Commercial Factors was not misled.  (Pl. Ex. 64, Response to Interrogatory No. 5).  In sum, the

---

[6] DeLong states in his Proposed Findings that "without a defense, it is exceeding likely that a judgment wold have ben entered against Terry Manufacturing."  (Doc. 200, p. 33).

Defense was that Rudolph Terry didn't do any thing wrong because Commercial Factors was in

on the arrangement, or in the alternative, if Rudolph Terry did anything wrong, Terry

Manufacturing did not have anything to do with it.  Not surprisingly, the motion for summary

judgment was denied.

One cannot sit down and stand up at the same time.  So it was with the inconsistent

defenses raised by DeLong on behalf of Terry Manufacturing and Rudolph Terry in the

Commercial Factors litigation.  Terry Manufacturing paid DeLong nearly half a million dollars

to effectively eviscerate its litigation position.  For this reason, Terry Manufacturing did not

receive adequate consideration for the cash transfers in suit, and therefore, this Court finds that

the transfers are voidable as constructively fraudulent.[7]

### 2.  New Georgia Law

The Uniform Fraudulent Transfer act (UFTA), found at GA. CODE ANN. § 18-2-70 et seq.

(2002), provides in § 18-2-74, as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent
> as to a creditor, whether the creditor's claim arose before or after the
> transfer was made or the obligation was incurred, if the debtor made
> the transfer or incurred the obligation:
>
> * * *
>
> (2) Without receiving a reasonably equivalent value in
> exchange for the transfer or obligation, and the debtor:

---

[7] At trial, the Trustee offered evidence as to DeLong's liability under the "actual fraud" category of fraudulent transfer law.  However, the Trustee's complaint and second amended complaint only address theories under "constructive fraud."  Therefore, this Court will not address the "actual fraud" theories.  See Atlas Chem. Indus., Inc. v. Moraine Prods., 509 F.2d 1, 7-8 (6th Cir. 1974) (holding that the Court will not address causes of action introduced at trial but not included in the pleadings).

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

GA. CODE ANN. § 18-2-74 (2002).  As discussed in Part II(C)(1) above, the Court concludes that the transfers in question are fraudulent transfers under old Georgia law.  Having considered Georgia's new fraudulent transfer statute, the Court comes to the same conclusion - the cash transfers to DeLong were made for less than sufficient consideration.

### 3. Section 548 of the Bankruptcy Code

The Trustee has also sought to avoid the payments as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B).  At the time relevant to this Adversary Proceeding,[8] that section provided, in relevant part:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily -

* * *

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

---

[8]  Section 548(a)(1)(B) was amended in 2005, pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.  The pre-BAPCPA version of the statute is applicable here as the underlying bankruptcy case was filed prior to the effective date of the Act.

11 U.S.C. § 548(a)(1)(B).  The Court finds that the Trustee has satisfied the elements of

fraudulent transfer under the Bankruptcy Code.  However, section 548 only provides for a one

year look back period for avoidance.  As the Court has already determined that the transfers in

issue here are avoidable as fraudulent transfers under Georgia law, it need not address the issue

avoidability under section 548.

### 4. Good Faith Defense

Georgia has codified a good faith defense at GA. CODE ANN. § 18-2-78, which provides,

in part, as follows:

> A transfer or obligation is not voidable under paragraph (1) of
> subsection (a) of Code Section 18-2-74 against a person who took
> in good faith and for a reasonably equivalent value or against any
> subsequent transferee or obligee.

GA. CODE ANN. § 18-2-78(a) (2002).  As the Court has determined that DeLong did not provide

reasonably equivalent value for the cash transfers in question, a defense predicated on § 18-2-78

fails.

### 5. Conduit Theory

DeLong raises a "conduit" defense, arguing that he was a mere conduit, at least to the

extent of fees paid to co-counsel Jerry Thomas.  (Doc. 200, pp. 58-64).  The United States Court

of Appeals for the Eleventh Circuit recognizes a "conduit theory."[9]  IBT Int'l, Inc., v. Northern

(In re International Admin. Servs., Inc.), 408 F.3d 689, 705 (11th Cir. 2005); Nordberg v. Arab

Banking Corp. (In re Chase & Sandborn Corp.), 904 F.2d 588, 598 (11th Cir. 1990).  Moreover,

---

[9]  Presumably, the conduit defense is available regardless of whether it is raised in the
context of a suit brought pursuant to 11 U.S.C. § 548, or 11 U.S.C. § 544 and applicable state
law.

-20-

this Court has discussed the conduit defense in two recent decisions.  Alexander v. Horton (In re Terry Manufacturing Co.), 345 B.R. 377 (Bankr. M.D. Ala. 2006); Alexander v. J. Martin & Assocs. (In re Terry Manufacturing Co.), __ BR __, 2007 WL 528067 (Bankr. M.D. Ala. Feb. 20, 2007).

The conduit theory provides that the first entity which receives a transfer from a debtor may be so controlled by the debtor that it cannot be said to be an initial transferee.  This Court rejected a conduit theory argument similar to that made by DeLong in J. Martin & Assoc.  In Martin, Brian Steele, a criminal defense lawyer, was hired to defend Rudolph Terry in the criminal proceeding which arose out of the Commercial Factors fraud.  Steele in turn hired co-counsel Leeza Cherniak and J. Martin, an investigator.  The Trustee argued there that Steele was a mere conduit for Cherniak and Martin.  The Court rejected that argument, finding that the criminal defense lawyer was not so controlled by the Terry brothers so as to make him a mere conduit.

The facts in this Adversary Proceeding is similar to those in J. Martin.  Rudolph Terry hired DeLong, who in turn associated Jerry Thomas.  It was DeLong and not Rudolph Terry who made this decision, and it was DeLong who controlled the Commercial Factors litigation and the activities of Jerry Thomas.  The Court heard lengthy testimony from both DeLong and Rudolph Terry.  It was well established at trial that DeLong had substantial control and cannot be said to have been so controlled by Rudolph Terry so as to be a mere conduit between Terry Manufacturing and Jerry Thomas.  Therefore, the Court finds that DeLong's conduit theory defense is without merit.

### D. The Preference Claim

A voidable preference is defined as follows:

> [T]he trustee may avoid any transfer of an interest of the debtor in property–
>
> > (1) to or for the benefit of a creditor;
> > (2) for or on account of an antecedent debtor owed by the debtor before such transfer was made.
> > (3) made while the debtor was insolvent;
> > (4) made
> > > (A) on or within 90 days before the date of the filing of the petition; and
> >
> > * * *
> >
> > (5) that enables such creditor to receive more than such creditor would receive if–
> > > (A) the case were a case under chapter 7 of this title;
> > > (B) the transfer had not been made; and
> > > (C) such creditor received payment of such debt to
> the
> > extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Having considered the evidence, it appears that the elements of a voidable preference, within the meaning of 11 U.S.C. § 547(b), have been met.  However, the Trustee may not avoid a transfer made in the ordinary course of business.  <u>See</u> 11 U.S.C. § 547(c)(2).[10]   The evidence shows that DeLong billed Terry Manufacturing periodically, usually monthly, for services rendered.  The evidence further shows that DeLong's bills were paid promptly.  The Court finds

---

[10]  Section 547(c)(2) was amended in 2005, pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.  The pre-BAPCPA version of the statute is applicable here as the underlying bankruptcy case was filed prior to the effective date of the Act.

-22-

that the payments in question were made in the ordinary course of business; therefore, DeLong

has established this defense.  For this reason, the Trustee's preference claim is dismissed.

### E.  The Attorney Malpractice Claim

As the malpractice claim is not a core proceeding, the Court will file Proposed Findings

of Fact and Conclusions of Law with the District Court.

### F.  Rule 54(b) Certification

As this Court has determined that the malpractice claim is a noncore proceeding, it

necessarily follows that this Court cannot dispose of all pending claims by way of this decision.

When judgment on fewer than all claims is entered, that judgment is not a final judgment.  Rule

54(b), Fed. R. Civ. P., as made applicable by Rule 7054, Fed. R. Bankr. P.  However, if the

Court finds that "there is no just reason for delay" it may direct entry of a final judgment.  The

Court makes such a determination here.  The Clerk will enter a final judgment on all claims,

except for the attorney malpractice claim.  Specifically, the Court will, by way of a separate

document, enter final judgment in favor of the Plaintiff and against Defendant Earnest H.

DeLong, Jr., in the amount of $476,233.67.  Moreover, the claims against Defendants DeLong,

Caldwell, Novotny & Bridgers, LLC, DeLong, Caldwell, Logue & Wisebram; and DeLong &

Caldwell, LLC, are DISMISSED.  In addition, the preference claim is DISMISSED.

## <u>CONCLUSION</u>

Having considered all of the evidence on this point, having heard the testimony of the witnesses, having considered voluminous documents, the Court finds that Terry Manufacturing not receive reasonably equivalent value for the money paid DeLong. Therefore, this Court finds that the transfers were constructively fraudulent under Georgia Law. Judgment will be entered by way of a separate document.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 03-32063-WRS |
| | Chapter 7 |
| TERRY MANUFACTURING COMPANY, INC., | |
| Debtor. | |
| J. LESTER ALEXANDER, III, TRUSTEE, | |
| | Adv. Pro. No. 04-3135-WRS |
| Plaintiff, | |
| v. | |
| DELONG, CALDWELL, NOVOTNY & BRIDGERS, LLC;  DELONG, CALDWELL, LOGUE & WISEBRAM; DELONG & CALDWELL, LLC; and EARNEST H. DELONG, JR., | |
| Defendants. | |

### **FINAL JUDGMENT**

Pursuant to this Court's Memorandum Decision of this date, judgment is entered in favor of Plaintiff J. Lester Alexander, III, Trustee for Terry Manufacturing, Inc., and against Earnest H. DeLong, Jr., in the amount of $476,233.67.  The claims against DeLong, Caldwell, Novotny & Bridgers, LLC (DCNB), DeLong, Caldwell, Logue & Wisebram, LLC (DCLW), and DeLong & Caldwell, LLC, are dismissed with prejudice, excluding the claim under Count I of the complaint, which is before the District Court on this Court's Proposed Findings of Fact and Conclusions of Law.

Done this the 29th day of May, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge