**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

IN RE:                                    )
                                          )
TERRY MANUFACTURING                       )      CASE NO.  03-32063-WRS
   COMPANY, INC.                          )
                                          )      CHAPTER 7
   Debtor                                 )
                                          )
_____

IN RE:                                    )
                                          )      CASE NO.  03-32213-WRS
TERRY UNIFORM                             )
   COMPANY, LLC,                          )      CHAPTER 7
                                          )
   Debtor.                                )
_____

J. LESTER ALEXANDER, III,                 )
TRUSTEE OF TERRY                          )
MANUFACTURING COMPANY, INC.               )
AND TERRY UNIFORM                         )
COMPANY, LLC                              )      ADVERSARY PROCEEDING
                                          )      NO.  04-03135
VERSUS                                    )
                                          )
DELONG, CALDWELL, NOVOTNY,                )
& BRIDGERS, L.L.C. , DELONG               )
CALDWELL LOGUE & WISEBRAM,                )
DELONG & CALDWELL, L.L.C.                 )
AND EARNEST H. DELONG, JR.                )

**TRUSTEE'S DESIGNATION OF RECORD ON APPEAL
AND STATEMENT OF ISSUES ON CROSS-APPEAL**

NOW INTO COURT, through undersigned counsel comes J. Lester Alexander,

III, Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC

and Cross-Appellant and Appellee in the above-captioned proceeding pursuant to

Bankruptcy Rule 8006 to submit this designation of record on appeal.  In addition to the

items designated by Appellants, the Trustee submits the following items to be a part of

the record on appeal:

1)  All of Plaintiff's trial exhibits;

2)  The following pleadings and exhibits thereto filed in the above-captioned proceeding:

   a)  Memorandum Decision (Docket No. 13)

   b)  Discovery Response (Docket No. 49)

   c)  Exhibit "E" Related to Document 52 (Docket No. 53)

   d)  Trustee's Motion to Strike Affidavits of Earnest H. DeLong, Jr. and Michael
       Caldwell (Docket No. 55)

   e)  Discovery Response to Plaintiff's Second Request for Production (Docket No. 84)

   f)  Trustee's Motion to Compel Production of Documents Improperly Withheld as
       Privileged and Incorporated Memorandum in Support (Docket No. 89)

   g)  Memorandum Decision (Docket No. 94)

   h)  Order on Motion to Compel (Docket No. 95)

   i)  Order Denying Motion for Summary Judgment (Docket No. 162)

   j)  Memorandum Decision/Opinion (Docket No. 163)

   k)  Submission of Documents: Summary of Trustee's Contentions (Docket No. 185)

   l)  Submission of Documents: Joint Stipulations (Docket No. 193)

   m)  Trustee's Proposed Findings of Fact and Conclusions of Law (Docket No. 199)

   n)  Memorandum Decision/Opinion (Docket No. 201)

3)  Deposition transcript and exhibits of Earnest DeLong, Jr.; and

- 2 -

4)  Deposition transcript and exhibits of Charles Bridgers.

## Statement of Issues on Cross-Appeal

1)    Whether the Bankruptcy Court erred in failing to find DeLong &

Caldwell, L.L.C. and Michael Caldwell, individually, liable for the judgment granted in

favor of the Trustee and against Earnest H. DeLong, Jr., individually.

Respectfully submitted,

**PHELPS DUNBAR LLP**

By:/s/  Catherine E. Lasky
Brent B. Barriere, T.A. (La. Bar No. 2818)
Catherine E. Lasky (La. Bar No. 28652)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130

ATTORNEYS FOR J. LESTER
ALEXANDER, III, TRUSTEE

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2007, I electronically filed the

foregoing with the Clerk of Court by using the CM/ECF system which will send a notice

of electronic filing to the following:  Earnest H. DeLong, Jr. and Charles Bridgers.  I

further certify that I sent a copy of the foregoing by U.S. Mail, postage prepaid to:

Jerry A. Buchanan
Post Office Box 2848
Columbus, GA 31902

    /s/ Catherine E. Lasky

NO.99790355.1

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re:                                                    Case No. 03-32063

TERRY MANUFACTURING
COMPANY INC.,

      Debtor.


In re:                                                    Case No. 03-32213

TERRY UNIFORM
COMPANY, LLC,


      Debtor.

J. LESTER ALEXANDER III,                   Adv. Pro. No. 04-3135
TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC.
AND TERRY UNIFORM COMPANY,
LLC

      Plaintiff,

v.

DELONG, CALDWELL, NOVOTNY,
& BRIDGERS, LLC,

      Defendants.

<u>**MEMORANDUM DECISION**</u>

     This Adversary Proceeding is before the Court upon the motion of Defendant

Delong, Caldwell, Novotny, & Bridgers, LLC ("Defendant") to transfer venue of this

Adversary Proceeding from this Court to the Northern District of Georgia.  (Docs. 6, 7).

The Plaintiff opposes the motion.  (Doc. 11).  For the reasons set forth below, the motion

is DENIED.


## I.  FACTS

The Trustee has initiated this Adversary Proceeding seeking $352,718.44 paid by

Terry Manufacturing Company Inc. ("Terry Manufacturing") to the Defendant.[1]

(Doc. 1).  The Trustee alleges that these payments constituted fraudulent conveyances

within the meaning of 11 U.S.C. § 548 and under the Alabama and Georgia

Fraudulent Transfer Acts.  (Doc. 1).  The Defendant asserts that a change of venue is

appropriate because the Defendant is located in Atlanta, Georgia, the claims between

Terry Manufacturing and the Defendant arose in the metropolitan Atlanta area, its

witnesses and documentary evidence reside there, and because it will incur substantial

travel expenses if this Adversary Proceeding is not changed to another venue.  The

Court notes that the present Adversary Proceeding is one of twenty-nine Adversary

Proceedings filed by the Trustee, all relating to the Terry Manufacturing or Terry

Uniform bankruptcy cases.


## I.  CONCLUSIONS OF LAW

The parties involved in this Adversary Proceeding do not dispute that venue is

proper in this district.  <u>See</u> 11 U.S.C. § 1409(a).  Section 1409(a) permits the Trustee

to bring suit in the district in which the underlying bankruptcy case is pending, unless

---

[1] Terry Manufacturing filed a voluntary Chapter 11 petition in this Court on July 7, 2003. (Case No. 03-32063, Doc. 1). Terry Uniform filed a voluntary Chapter 11 petition on July 22, 2003. (Case. No. 03-32213, Doc. 1).  Both cases have subsequently converted to a case under Chapter 7.

the amount is less than $1,000.00  As the amount in suit here is approximately

$352,718.44 venue is proper in this Court.  The sole issue here is whether transfer to

another venue is appropriate under the circumstances.  This is a "core proceeding"

within the meaning of 28 U.S.C. § 157(b)(2)(F).  See In re AP Industries, 117 B.R.

789, 798 (Bankr. S.D. N.Y. 1990); In re Oceanquest Feeder Service, Inc., 56 B.R.

715, 718-20 (Bankr. D. Conn. 1986);   A majority of courts consider 28 U.S.C. §

1412 to be the "appropriate authority for transfer of bankruptcy proceedings."  In re

Bruno's, Inc., 227 B.R. 311, 323 (Bankr. N.D. Ala. 1998).  Section 1412 authorizes a

court to "transfer a case or proceeding under title 11 to a district court for another

district, *in the interest of justice* or *for the convenience of the parties*."  28 U.S.C. §

1412 (emphasis added); see also Fed. R. Bankr.P. 7087.  The power to transfer a case

should be exercised cautiously.  See In re Enron Corp., 317 B.R. 629, 638 (Bankr.

S.D. N.Y. 2004) (citing In re Toxic Control Tech., Inc., 84 B.R. 140, 143 (Bankr.

N.D. Ind. 1988)); In re A.R.E. Manufacturing Company, Inc., 124 B.R. 912, 914

(Bankr. M.D. Fla. 1991) (citations omitted).  A motion to transfer venue of a case or a

proceeding lies within the sound discretion of a bankruptcy court based upon an

"individualized, case by case analysis of convenience and fairness."  Id.  (citations

omitted); see also In re Steeley, 243 B.R. 421, 439 (Bankr. N.D. Ala. 1999) (noting

that transfer of venue under § 1412 requires a case-by-case analysis that is subject to

broad court discretion).  The burden of proof is on the moving party to establish by a

preponderance of the evidence that transfer is appropriate.  Furthermore, there is a

strong presumption in favor of maintaining venue where the bankruptcy case is

pending.  See Matter of Holmes, 306 B.R. 11, 14 (Bankr. M.D. Ga. 2004); In re

Uslar, 131 B.R. 22, 23 (Bankr. E.D. Pa. 1991) (stating, "unless the balance is strongly in favor of transferring venue, the debtor's choice of forum should rarely be disturbed"); In re Grogg, 295 B.R. 297, 306 (citing Matter of Continental Airlines, Inc., 133 B.R. 585 (Bankr. D. Del. 1991).  This presumption exists mainly to foster the speedy and economic administration of the bankruptcy case.  See In re Windsor Communications Group, Inc., 53 B.R. 293, 296 (Bankr. E.D. Pa. 1985) (noting that speed and efficiency is a "paramount consideration").  Because § 1412 is phrased in the disjunctive, transfer may be based upon either the interest of justice or the convenience of the parties.  In re Harnischfeger Industries, 246 B.R. 421, 435 (Bankr. N.D. Ala. 2000); see also In re Toxic Control Tech., Inc., 84 B.R. at 143 (noting that the tests to change venue is discrete).

In determining the propriety of granting a motion to transfer the venue of an Adversary Proceeding, the Court will consider the following § 1412 "interest of justice" factors: (a) the economics of estate administration; (b) the presumption in favor of the "home court"; (c) judicial efficiency; (d) the ability to receive a fair trial; (e) the state's interest in having local controversies decided within its borders, by those familiar with its laws; (f) the enforceability of any judgment rendered, and; (g) the plaintiff's original choice of forum; In re Bruno's, Inc., 227 B.R. 311, 324-26 (Bankr. N.D. Ala. 1998).  With respect to the second prong of § 1412, "convenience of the parties," the Court will consider the following factors: (a) the location of the plaintiff and defendant; (b) the ease of access to necessary proof; (c) the convenience

of witnesses; (d) the availability of subpoena power for the unwilling witnesses, and;

(e) the expenses related to obtaining witnesses.  Id.[2]

Applying the relevant factors to this case, the Court finds that this Adversary

Proceeding will be more efficiently and expeditiously resolved in the venue chosen by

the Trustee.  The Court first notes that this Adversary Proceeding is one of more than two

dozen Adversary Proceedings that have been filed in this Court which relate to the Terry

Manufacturing or Terry Uniform bankruptcy cases.  In a majority of these Adversary

Proceedings, the Court has already scheduled final-pretrial conferences during the month

of April and has set aside a trial week during that month as well.  See In re Butcher, 46

B.R. 109, 112 (Bankr. N.D. Ga. 1985) (stating that "the most important factor is whether

the transfer of the proceeding would promote the economic and efficient administration

of the estate); see also In re Cole Associates, Inc., 7 B.R. 154, 157 (Bankr. Utah 1980)

(noting that "[i]f one factor could be singled out as having the most logical importance, it

would be whether a transfer would promote the efficient and economic administration of

an estate"). The scheduling of multiple Adversary Proceedings during a one-month

period will significantly reduce costs and promote an efficient administration of the

bankruptcy estate.

Furthermore, as the Court has, and will continue to become even more familiar with

the business dealings of the Debtor corporations, the interest in judicial economy would

be best served if one court, rather than two dozen different courts, rule on these

Adversary Proceedings.  Issues such as the insolvency of the Debtor and its ordinary

---

[2]  The Court notes that several of the factors listed are not applicable in this particular case.  There is no dispute that the Trustee will be able to receive a fair trial irrespective of the forum selected.  Moreover, there is no reason why a judgment received by the Trustee in either Court would not be enforceable against the Defendant.

course of business are likely to be tried several times, using the same witnesses and the same documents. The interest of judicial economy would favor trial in the Middle District of Alabama, saving the investment of time and resources of a court in another district having to take a completely fresh look at a new case. In addition, from the Trustee's point of view, it would be more efficient for him to try all of his cases, in one forum rather than two dozen or more different fora scattered about the United States.

With respect to the convenience factors, the Trustee has asserted that its principal witnesses are located in Birmingham and travel to this Court routinely. The Defendant however contends that additional expenses will be incurred if their witnesses are required to travel to the Middle District of Alabama and that all witnesses are beyond the subpoena power of this Court. However, the Defendant has not specified at all who these witnesses are or what their testimony will cover. See Matter of Holmes, 306 B.R. at 15 (stating "[i]f a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied") (quoting 15 C. Wright, A. Miller, & Cooper, Federal Practice and Procedure §§ 3851 and 3853 (2nd ed. 1986 & Supp. 2003)); see also In re Hayes Lemmerz International Inc., 312 B.R. 44, 47 (Bankr. Del. 2004) (explaining that the convenience of the witnesses is only a factor "to the extent that the witnesses may actually be unavailable for trial in one of the fora"). The Defendant has made no showing to the Court as to who these witnesses are, what their testimony will be, and further there has been no showing of any unavailability. Similarly, with respect to documentary evidence, the Trustee asserts that records of the bankruptcy estate are located in Birmingham. However, the Defendant contends that most if not all of the

pertinent evidence is located in the Northern District of Georgia.  However, the Court has

difficulty accepting this contention, as all of the records of the estate are located at the

Trustee's office in Birmingham and can easily be transported to the Defendant.

Furthermore, the Defendant has put forth mere general allegations, failing to show the

"[precise] location and the importance of the documents in question" that allegedly reside

in the Northern District of Georgia.  Matter of Holmes, 306 B.R. at 16 (quoting 15 C.

Wright, A. Miller, & Cooper, Federal Practice and Procedure §§ 3851 and 3853 (2nd ed.

1986 & Supp. 2003)).  Lastly, the Court finds that two policy considerations, in

conjunction with the aforementioned factors, strongly warrant the denial of this motion to

transfer venue.  First, the plaintiff's choice of forum is entitled to great deference and

analysis of the factors listed above does not weigh in favor of disturbing that forum

selection.  In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989).  Second, as discussed in

In re Hechinger Investment Company of Delaware, Inc., 296 B.R. 323, 327 (Bankr. D.

Del. 2003), transferring a routine case such as this would set an unwanted precedent.  The

court there stated the following:

> If Defendant were successful in having this case transferred to the Houston Division,
> it would establish a basis for transferring hundreds, if not thousands, of preference
> actions away from the forum of the debtor's chapter 11 case, resulting in considerable
> additional cost to the estate or causing the debtor (or trustee) to forgo pursuit of
> preference actions, thereby undermining the intended effect of 11 U.S.C. § 547 of
> equalizing distribution to creditors.

In re Hechinger Investment Company of Delaware, Inc., 296 B.R. 323, 327 (Bankr. D.

Del. 2003).[3]  Like the court in Hechinger, this Court is reluctant to establish such a basis.

Having considered all of the applicable § 1412 factors and the relevant policy

---

[3] The Court recognizes that the facts of Hechinger involved a preference action pursuant to 11 U.S.C. §
547, while this case involves a fraudulent conveyance action within the meaning of 11 U.S.C. § 548 and the
Alabama and Georgia Fraudulent Transfer Acts.  Despite this distinction, the policy considerations engaged
in by that court are just as applicable to the facts of the present case.

considerations, the Court finds that the most efficient disposition of the present

Adversary Proceeding can be made in the forum chosen by the Plaintiff. For the reasons

stated above, the Defendant's motion to transfer venue is DENIED.

Done this 8th day of February, 2005.

/s/ William R. Sawyer
United States Bankruptcy Judge

c:  Brent B. Barriere
    Catherine E. Lasky, Attorneys for Plaintiff
    Robert F. Northcutt, Attorney for Defendant
    Trustee
    Debtors
    Teresa Jacobs, Bankruptcy Administrator

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO. 03-32063-WRS |
| COMPANY, INC., | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | | |
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM | ) | CASE NO. 03-32213-WRS |
| COMPANY, LLC. | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | | |
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING | ) | |
| COMPANY, INC. AND TERRY | ) | ADVERSARY PROCEEDING |
| UNIFORM COMPANY, LLC. | ) | |
| | ) | NO. 04-03135 |
| v. | ) | |
| | ) | |
| DeLONG, CALDWELL, | ) | |
| NOVOTNY & BRIDGERS, | ) | |
| LLC. | ) | |

## DEFENDANT EARNEST H. DELONG, JR'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

**COME NOW** the Defendant, Earnest H. DeLong, Jr., and in response to

Plaintiff's First Request for Production, states as follows:

## GENERAL OBJECTIONS

**Earnest H. DeLong, Jr.** objects to the Requests for Production to the

extent that it would require the communication of information subject to the

1

attorney/client privilege or information comprised of attorney work product, or any other privilege allowed, or require communication of information compiled in anticipation of litigation by or for **Earnest H. DeLong, Jr.**

This defendant's Responses to the Discovery are made solely for the purpose of this action. Each response is subject to all objections concerning relevance, materiality, propriety and admissibility, and, further, as to any and all objections and grounds which would require the exclusion of any response to the discovery at the time of trial, all such objections and grounds being expressly reserved subject to being interposed at the time of trial.

The following responses are based upon information presently available to **Earnest H. DeLong, Jr.**, which he believes to be correct. The responses are made without prejudice to this defendant's rights to rely upon other subsequently discovered documents and information. Any supplementation will be made only in accordance with the applicable Rules of Civil Procedure.

Subject to and expressly reserving the foregoing general objections which are expressly incorporated into each of this defendant's Responses herein, **Earnest H. DeLong, Jr.** responds as follows:

## RESPONSES TO REQUEST FOR PRODUCTION

1.    Please produce all documents relating to the subject matter of any Interrogatory contained in the First Set of Interrogatories to DeLong, Caldwell, Novotny and Bridgers, L.L.C. Your response to this Request shall include,

without limitation, all documents identified within or consulted in connection

with the preparation of your responses to Plaintiff's interrogatories as well as all

documents whose existence or contents relate to the subject matter of the

interrogatories.

> **Response:** Defendant DeLong objects to this request for production
> on the grounds that it is vague, ambiguous and confusing and calls
> for the production of documents protected by the attorney/client
> privilege.  However, without waiving this objection, this Defendant
> has previously made available for inspection to the Trustee in any all
> documents in this Defendant's possession related to or arising from
> the claims that are the subject of the above styled Adversary
> Proceeding.  In addition, this Defendant is still in the process of
> locating any and all documents that were not made available for
> inspection, notice of which was previously provided to the Trustee,
> and will supplement this response if and when such documents are
> located.

2.    Please produce any and all documents you intend to introduce as exhibits

at the trial of this matter.

> **Response:** This Defendant has not yet determined each and every
> document that he will introduce as an exhibit at the trial of this
> matter.  Moreover, exhibits that this Defendant is likely to use were
> previously made available for inspection to the Trustee as noted in
> this Defendant's response to Request for Production number 1.  This
> Defendant will more fully identify its exhibits for trial as provided by
> the Court's Scheduling Order.

3.    Please produce any and all documents relating to payments received by

DeLong, the DeLong Firm, DeLong & Caldwell and/or DeLong, Caldwell, Logue &

Wisebram from Terry Manufacturing and/or Terry Uniform during the applicable

time period, including, but not limited to, documents and/or records reflecting

and/or recording payments made to DeLong, the DeLong Firm, DeLong &

Caldwell and/or DeLong, Caldwell, Logue & Wisebram, and/or copies of any

negotiable instrument(s) accepted as payment to DeLong, the DeLong Firm,

DeLong & Caldwell and/or DeLong, Caldwell, Logue & Wisebram.

> **Response:** See this Defendant's response to Request for Production
> number 1.

4.     Please produce any and all bills, invoices and/or other forms of

statements issued to Terry Manufacturing, Rudolph Terry and/or Terry Uniform

by DeLong, the DeLong Firm, DeLong & Caldwell or DeLong, Caldwell, Logue &

Wisebram.

> **Response:** See this Defendant's response to Request for Production
> number 1.

5.     Please produce any engagement letters between DeLong, the DeLong Firm,

DeLong & Caldwell and/or DeLong, Caldwell, Logue & Wisebram and Terry

Manufacturing, Terry Uniform and/or Rudolph Terry.

> **Response:** See this Defendant's response to Request for Production
> number 1.  Moreover, see exhibit C to the Affidavit of Earnest H.
> DeLong, Jr., attached as Exhibit 1 to this Defendant's Motion to
> Dismiss, Transfer or Abstain previously filed with the Bankruptcy
> Court.

6.     Please produce any and all documents referring, relating or pertaining to

communications with or concerning Terry Manufacturing and/or Rudolph Terry,

including, but not limited to, communications regarding conflicts of interest

between Terry Manufacturing and Rudolph Terry.

4

**Response:** See this Defendant's response to Request for Production number 1.

7.     Please produce any and all other documents referring, relating or pertaining to Terry Manufacturing and either received or created by you during the applicable time period.

**Response:** See this Defendant's response to Request for Production number 1.

8.     Please produce any and all original time sheets and other time records prepared by you or on behalf of attorneys, paralegals and any other personnel of the DeLong Firm, DeLong & Caldwell and/or DeLong, Caldwell, Logue & Wisebram for any matters involving Terry Manufacturing, Terry Uniform and/or Rudolph Terry, including, but not limited to, the Commercial Factors Litigation.

**Response:** See this Defendant's response to Request for Production number 1.

9.     Please produce any and all files kept by DeLong, the DeLong Firm, DeLong & Caldwell and/or DeLong, Caldwell, Logue & Wisebram, including, but not limited to, pleadings, correspondence, transcripts and other documents, for any matters involving Terry Manufacturing, Terry Uniform and/or Rudolph Terry, including, but not limited to, the Commercial Factors Litigation.

**Response:** See this Defendant's response to Request for Production number 1.

10.     Please produce any and all documents relating to the first defense asserted by the DeLong Firm in the Answer filed by the DeLong Firm.

**Response:** See this Defendant's response to Request for Production number 1.

11.     Please produce any and all documents relating to the second defense asserted by the DeLong Firm in the Answer filed by the DeLong Firm.

**Response:** See this Defendant's response to Request for Production number 1.

12.     Please produce any and all documents relating to the third defense asserted by the DeLong Firm in the Answer filed by the DeLong Firm.

**Response:** See this Defendant's response to Request for Production number 1.

13.     Please produce any and all documents relating to the fourth defense asserted by the DeLong Firm in the Answer filed by the DeLong Firm.

**Response:** See this Defendant's response to Request for Production number 1.

14.     Please produce any and all documents relating to the fifth defense asserted by the DeLong Firm in the Answer filed by the DeLong Firm.

**Response:** See this Defendant's response to Request for Production number 1.

15.     Please produce any and all documents relating to the sixth defense asserted by the DeLong Firm in the Answer filed by the DeLong Firm.

**Response:** See this Defendant's response to Request for Production number 1.

16.     Please produce any and all documents relating to the seventh defense asserted by the DeLong Firm in the Answer filed by the DeLong Firm.

**Response:** See this Defendant's response to Request for Production number 1.

_____Respectfully submitted this the _3rd__ day of June, 2005.

/s/ J. Flynn Mozingo
J. Flynn Mozingo (MOZ003)
Joseph C. Espy, III (ESP002)
Attorneys for **Earnest H. "Woody"
DeLong, Jr.**
Melton, Espy & Williams, PC
301 Adams Avenue
Montgomery, AL  36104
Telephone: (334) 263-6621
Facsimile: (334) 263-7252
fmozingo@mewlegal.com

7

## CERTIFICATE OF SERVICE

_____I hereby certify that on this the _3rd__ day of June, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of such filing to the following:

Brent B. Barriere
Phelps Dunbar, LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

Teresa R. Jacobs
US Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Robert F. Northcutt
Capell & Howard
P.O. Box 2069
Montgomery, AL 36102

Charles D. Butler
Shapiro Fussell
One Midtown Plaza
Suite 1200
1360 Peachtree Street
Atlanta, GA 30309

/s/ J. Flynn Mozingo_____
J. Flynn Mozingo (MOZ003)
Joseph C. Espy, III (ESP002)
Attorneys for **Earnest H. "Woody" DeLong, Jr.**
Melton, Espy & Williams, PC
301 Adams Avenue
Montgomery, AL  36104
Telephone: (334) 263-6621
Facsimile: (334) 263-7252
fmozingo@mewlegal.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                              )
                                    )
TERRY MANUFACTURING                 )       CASE NO.  03-32063-WRS
    COMPANY, INC.                   )
                                    )       CHAPTER 7
    Debtor                          )
                                    )

IN RE:                              )
                                    )       CASE NO.  03-32213-WRS
TERRY UNIFORM                       )
    COMPANY, LLC,                   )       CHAPTER 7
                                    )
    Debtor.                         )

J. LESTER ALEXANDER, III,           )
TRUSTEE OF                          )
TERRY MANUFACTURING                 )
COMPANY, INC. AND                   )       ADVERSARY PROCEEDING
TERRY UNIFORM COMPANY, LLC          )
                                    )       NO.  04-03135
VERSUS                              )
                                    )
DELONG, CALDWELL, NOVOTNY,          )
& BRIDGERS, LLC AND                 )
EARNEST H. DELONG                   )

## AFFIDAVIT OF CLARK R. HAMMOND

STATE OF ALABAMA

COUNTY OF JEFFERSON

Before me, Notary Public, came and appeared Clark R. Hammond, who, after being duly

sworn, did depose and declare as follows:

NO:99541227.1



1.   I am an attorney admitted to the practice of law in the State of Alabama, and I am a
     partner in the firm of Johnston Barton Procter & Powell, LLP.

2.   I was formerly engaged as counsel of record for J. Lester Alexander, III, while he was
     Chapter 11 Trustee of Terry Manufacturing, Inc.

3.   During the Chapter 11 case of Terry Manufacturing, either attorneys working under my
     supervision or I had numerous oral and written communications with Ernest H. DeLong
     of the firm of DeLong, Caldwell, Novotny & Bridgers, LLC.

4.   Mr. DeLong identified himself as an attorney representing Rudolph Terry, Deborah
     Watson and Michael Terry.

5.   Among various issues discussed with Mr. DeLong were claims by Rudolph and Michael
     Terry and Deborah Watson that property owned by them, rather than Terry
     Manufacturing, was located at facilities of Terry Manufacturing.  Moreover, there were
     discussions regarding the trustee's letter to Mr. Rudolph Terry, Deborah Watson and
     Michael Terry to cease and deist from carrying out unauthorized business activities using
     the name of Terry Manufacturing.

6.   With respect to these individuals, I ultimately reached an agreement with Mr. DeLong
     pursuant to which the property claimed to be owned by Rudolph or Michael Terry or
     Deborah Watson was stored at the offices of the AEA Group in Birmingham, Alabama.

7.    Mr. Delong also appeared in the Chapter 11 case as counsel for Winning Image, Inc. and
     Terry Screen Print in connection with a proposed sale by the trustee of certain assets of
     the estate.  On information and believe, both of these companies were owned or

controlled by Rudolph or Roy Terry.  A copy of the objection filed by Mr. Delong on

behalf of Winning Image and Terry Screen Print is attached to this affidavit.

8.      Due to Mr. Delong's participation and appearance in the Chapter 11 case for the above

parties, I served him with various pleadings, which I filed on behalf of the Trustee and

the bankruptcy court added him to the mailing matrix.

9.      The foregoing facts are known to me personally and I would so testify if called upon to

do so in a court of law.

_____
CLARK R. HAMMOND

SWORN TO AND SUBSCRIBED
BEFORE ME, THIS 16th DAY OF
JUNE, 2005.

_____
NOTARY PUBLIC

My Commission expires on:

August 2, 2008
_____

NO:99541227.1

**FILED**

**OCT 3 1 2003**

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

|  |  |
|---|---|
| IN RE: | ) |
| | ) |
| TERRY MANUFACTURING COMPANY | ) BANKR. CASE NO 03-32063-DHW |
| INC., | ) |
| | ) CHAPTER 11 |
| Debtor. | ) |

### OBJECTION OF WINNING IMAGE, INC. AND TERRY SCREEN PRINT, INC. TO TRUSTEE'S MOTION TO APPROVE SALE OF PROPERTY FREE AND CLEAR OF LIENS

Come now Winning, Image, Inc. and Terry Screen Print, Inc. (Objecting Parties), by and through counsel, and enter this their objection to the Trustee's Motion for authority to sell property free and clear of liens. As the basis for their objection, Objecting Parties show the Court the following:

1. Contrary to the Trustee's contention, the majority of merchandise stored at 430 Englewood Avenue in Atlanta, Georgia is not dated and/or damaged. Likewise, it is not second hand merchandise. Rather, it is primarily T-shirts and golf shirts that have not been either printed or embroidered.

2. There is some merchandise stored in the referenced facility that would be characterized as "Seconds" because of printing or embroidery errors. However, such merchandise is only a small part of the inventory in question.

3. While a small part of the stored merchandise belongs to Terry Manufacturing Company, the majority of the merchandise is the property of Objecting Parties. Objecting Parties have been excluded from the referenced facility since July, 2003. In addition they have not had access to records which would specifically identify the merchandise and its owner. Without either

access to the records or access to the referenced facility Objecting Parties cannot demonstrate which portion of the merchandise is the property of Terry Manufacturing Company and which portion of the merchandise is the property of Objecting Parties.

4.    Objecting Parties are guarantors of the debt owed to First Bank and SouthTrust Bank. However, they are not parties in this bankruptcy proceeding. Thus, there is no principle of law which would authorize the Trustee to seize and sell merchandise belonging to Objecting Parties.

5.    As guarantors of the debt owed by Terry Manufacturing Company to First Bank and SouthTrust Bank, Objecting Parties granted the banks security title to and a security interest in, among other things, its inventory. Therefore, First Bank and SouthTrust Bank have a first priority security interest in the merchandise located in the referenced facility that is the property of Objecting Parties.

6.    There is a proceeding pending in the Circuit Court of Randolph County, Alabama styled. First Bank and SouthTrust Bank vs. Terry Manufacturing Company, Inc., Winning Image, Inc., Terry Screen Print, Inc., Roy D. Terry and Rudolph Terry. On October 23, 2003 the, based upon the Unconditional Guaranty of Payment and Performance that each signed, Objecting Parties consented to the entry of a judgment against them in that proceeding. By virtue of the judgment, First Bank and SouthTrust Bank confirmed their first priority interest in the merchandise located in the referenced facility which belongs to Objecting Parties.

7.    Objecting Parties do not believe that the sale of merchandise proposed by the Trustee is commercially reasonable. However, because Objecting Parties have been denied access to the premises and because of the extremely short time they have to respond to Trustee's motion, Objecting Parties can not adequately assess the situation and present the Court with an appropriate alternative. Accordingly, Objecting Parties request that they be given the opportunity to determine

specifically what merchandise is in the referenced facility, to whom it belongs and what is its

reasonable value prior to the Court entertaining Trustee's Motion.

8.    In the event that the merchandise housed in the referenced facility is sold, the entire

sale proceeds should be paid to the parties that have a direct interest in the items being sold.  Those

parties are Showroom Svcs., Inc. which has shouldered the burden of storing and maintaining the

materials since the Trustee took over the facility and First Bank and SouthTrust Bank, in accordance

with their perfected security interests in the said merchandise.

Respectfully submitted, this 30 day of October , 2003.

Earnest H. DeLong
Georgia Bar No. 217300

Attorney for Winning, Image, Inc. and Terry
Screen Print, Inc.

DeLong, Caldwell, Novotny & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
404/979-3155

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following listed persons by facsimile transmission and/or by placing a copy of the same in the United States Mail, postage prepaid and addressed as follows:

Von G. Memory, Esq.
P.O. Box 4054
Montgomery, AL 36101

Thomas H. Castelli, Esq.
Sutherland Asbill & Brennan, LLP
999 Peachtree Street
Atlanta, GA 30309-3996

Teresa R. Jacobs
United States Bankruptcy Administrator
Middle District of Alabama
One Church Street
Montgomery, AL 36104

Jesse S. Vogtle, Esq.
Balch & Bingham
1901 6th Avenue North
Suite 2600
Birmingham, AL 35203

George L. Beck, Jr., Esq.
Beck & Byrne, P.C.
22 Scott Street
Montgomery, AL 36104-4012

Berry E. Teague, Esq.
P.O. Box 586
Montgomery, AL 36101

Antonio L. Thomas, Esq.
230 Peachtree Street, NW
Atlanta, GA 30303

Brian E. Steel, Esq.
The Steel Law Firm, P.C.
1800 Peachtree Street, NW
Atlanta, GA 30309-2519

David A. Norris, Esq.
McGlinchey Stafford, PLLC
Post Office Drawer 22949
Jackson, MS 39225

Jeffery D. Saferstein, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064

Timothy M. Lupinacci, Esq.
Matthew W. Grill, Esq.
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203-2618

Robert G. Sanker, Esq.
Susan M. Argo, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202-3752

Joseph Vann, Esq.
Ira R. Abel, Esq.
Coherr Tauber Spievack & Wagner, LLP
420 Lexington Avenue
24th Floor
New York, NY 10170

Leura Q. Camary, Esq.
Patricia Allen Conover, Esq.
P.O. Box 197
Montgomery, AL 36101-0197

10/31/2003  11:41    4049793170                    D C N B

                                                                    PAGE  06

Internal Revenue Service
801 Tom Martin Drive
Suite 126
Birmingham, AL 35211

Brian G. Flanagan, Esq.
Defense Contract Management Agency
Attn: DCMAE-GLG
1910 Third Avenue North
Suite 201
Birmingham, AL 35203

Robert H. Adams, Esq.
Najjar Denaburg, P.C.
2125 Morris Avenue
Birmingham, AL 35203

Ronald E. Barab, Esq.
Smith, Gambrell & Russell, LLP
Suite 3100, Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309-3592

Craig G. Cornwell, Esq.
U.S. Department of Agriculture
Sterling Centre
4121 Carmichael Road
Suite 205
Montgomery, AL 36106-2872

C. Ellis Brazeal III, Esq.
Walston, Wells, Anderson & Bains, LLP
P.O. Box 830642
Birmingham, AL 35289-0642

Eric Briethaupt, Esq.
Christian and Small
505 20th Street North
Suite 1700
Birmingham, AL 35203

William Russell Patterson, Jr., Esq.
Ragsdale, Beals, Hooper & Seigler, LLP
2400 International Tower, Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303-1629

Romaine S. Scott, III., Esq.
Garrison Scott Gamble & Rosenthal, P.C.
2224 1st Avenue North
Birmingham, AL 35203

Rudolph Terry
President
Terry Screen Print, Inc.
1785 Loch Lomond Trail
Atlanta, GA 30331

Rudolph Terry
President
Winning Image, Inc.
1785 Loch Lomond Trail
Atlanta, GA 30331

Clark R. Hammond
Johnston Barton Proctor & Powell, LLP
1901 Sixth Avenue North
Suite 2900
Birmingham, AL 35201

10/31/2003  11:41    4049793170                    D C N B                                              PAGE  07

This **30** day of _October_ , 2003.

*Earnest H. DeLong*

Earnest H. DeLong
Georgia Bar No. 217300

Attorney for Winning, Image, Inc. and Terry
Screen Print, Inc.

DeLong, Caldwell, Novotny & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
404/979-3155

10/31/2003  11:41   4049793170          D C N B                              PAGE  01

3100 CENTENNIAL TOWER
101 MARIETTA STREET
ATLANTA, GEORGIA 30303
(404) 979-3150
(404) 979-3170 FAX

# DELONG, CALDWELL,
# NOVOTNY & BRIDGERS, LLC

*Attorneys and Counselors At Law*

# FACSIMILE

RECEIVED

OCT 3 1 2003

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

| To: | Henrietta | From: | Alisha N. Jackson |
| Fax: | (334) 954-3819 | | |

| Date: | October 31, 2003 | Pages: | 7 | (Including Cover) |

Re:     **Terry Manufacturing**

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

## CONFIDENTIALITY NOTICE

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS LEGALLY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE INDIVIDUAL NAMED ABOVE. IF YOU ARE NEITHER THE INTENDED RECIPIENT NOR AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS FACSIMILE MESSAGE IS STRICLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE MESSAGE IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE AT THE NUMBER ABOVE FOR THE RETURN OF THE ERRONEOUSLY RECEIVED FACSIMILE MESSAGE.

**NOTE:**

# Thank you!!!!!!!!!!

Alisha

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO.  03-32063-WRS |
| COMPANY, INC. | ) | |
| | ) | CHAPTER 7 |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  03-32213-WRS |
| TERRY UNIFORM | ) | |
| COMPANY, LLC, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF | ) | |
| TERRY MANUFACTURING | ) | |
| COMPANY, INC. AND | ) | ADVERSARY PROCEEDING |
| TERRY UNIFORM COMPANY, LLC | ) | |
| | ) | |
| VERSUS | ) | NO.  04-03135 |
| | ) | |
| DELONG, CALDWELL, NOVOTNY, | ) | |
| & BRIDGERS, L.L.C. AND EARNEST | ) | |
| H. DELONG, JR. | ) | |

### TRUSTEE'S MOTION TO STRIKE AFFIDAVITS OF
### EARNEST H. DELONG, JR. AND MICHAEL CALDWELL

NOW INTO COURT, through undersigned counsel comes J. Lester Alexander III, the duly

appointed and acting Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC,

plaintiff in the above-captioned adversary proceeding, and respectfully requests that the original affidavit

of Earnest H. DeLong, Jr., the supplemental affidavit of Earnest H. DeLong, Jr. and the affidavit of Michael

Caldwell filed in the above-captioned adversary proceeding be stricken as each contains patently false and misleading statements. In support of his Motion, the Trustee respectfully represents:

1.

On May 16 , 2005, defendants Earnest H. DeLong, Jr. and DeLong, Caldwell, Novotny & Bridgers, LLC (the "Firm") filed a Memorandum of Law in Support of Joint Motion to Dismiss or, in the Alternative, Transfer Venue or Abstain on State Law Claims (the "Memorandum"). The body of the Memorandum contained affidavits executed by Earnest H. DeLong and Michael Caldwell. Those affidavits were also attached as exhibits to the Memorandum.

2.

Mr. DeLong's original affidavit provides in relevant part "I have never sought to be licensed with the Alabama State Bar and I have never practiced law in the State of Alabama. I am not familiar with the Alabama Rules of Professional Conduct nor am I familiar with Alabama law...". Mr. DeLong's original affidavit is attached as Exhibit "A."

3.

Mr. Caldwell's original affidavit stated in relevant part that the Firm "does not have an office in the State of Alabama and does not do business in the State of Alabama...the law firm has never represented a client from the State of Alabama, nor has it conducted any business in the State of Alabama." Mr. Caldwell's original affidavit is attached as Exhibit "B."

4.

In May, 2005, Mr. DeLong and the Firm produced a number of documents responsive to the Trustee's First Requests for Production of Documents. A review of those documents in early June revealed

a Motion for Admission Pro Hac Vice and related affidavit in which Mr. DeLong and the Firm sought to

be enrolled as counsel of record for Rudolph Terry, Winning Image, Inc. and Terry Screen Print, Inc. in

the Circuit Court of Randolph County, Alabama in litigation styled *First Bank and South Trust Bank v.*

*Terry Manufacturing Company, Inc., Winning Image, Inc., Terry Screen Print, Inc., Roy Terry and*

*Rudolph Terry*, Case No. CV-03-77.   The verified application and affidavit filed by Mr. DeLong are

attached as Exhibit "C."

5.

In contrast to the affidavit filed with this Court in which Mr. DeLong claimed no knowledge of the

Alabama Rules of Professional Conduct, in the affidavit accompanying the Motion for Pro Hac Vice, Mr.

DeLong specifically agreed to both abide by those Rules and be subject to the Court's jurisdiction.  The

Trustee assumes Mr. DeLong would not attest to his compliance with Rules of which he has no knowledge.

6.

Undersigned counsel for the Trustee contacted counsel for Mr. DeLong and the Firm to advise him

that documents produced by Mr. DeLong and the Firm refuted the affidavit submitted by Mr. DeLong and

the Firm.  On June 13, Mr. DeLong, but not the Firm, submitted a new affidavit designed to "clarify a

statement made in [his] prior Affidavit."  In substance, Mr. DeLong attested that he had played only a

minimal role in the Randolph County litigation.  While begrudgingly admitting that he had acted as counsel

of record in that litigation, Mr. DeLong went on to attest "other than my limited involvement in the Randolph

County Circuit Court case, I have never been admitted Pro Hac Vice in any other case in the State of

Alabama, I have never requested to be admitted Pro Hac Vice in any other case in the State of Alabama

and I have never requested or sought to be admitted generally to the Alabama State Bar.  Therefore, as

previously stated, in my personal opinion, I have not practiced law in the State of Alabama." A copy of the supplemental affidavit is attached as Exhibit "D."

7.

Mr. DeLong's affidavit, even as supplemented, is, at best, misleading. In fact, Mr. DeLong has acted as counsel of record in at least two other cases in the State of Alabama, including most notably the Terry Manufacturing Chapter 11 case.

8.

Mr. DeLong acted as counsel of record for Rudolph Terry in litigation styled *Roosevelt McCorvey, et al v. Roy Terry and Rudolph Terry*, Civil Action No. CV2003-0108 in the Circuit Court of Randolph County, Alabama. Pleadings and correspondence from the *McCorvey* litigation are attached as Exhibit "E". Notably, Mr. DeLong did not disclose that representation in his initial affidavit nor in the supplement.

9.

Mr. DeLong also acted as counsel of record for Winning Image, Inc. and Terry Screen Print, Inc. in the Chapter 11 case of Terry Manufacturing styled *In re Terry Manufacturing, Inc.*, Case No. 03-32063, United States Bankruptcy Court for the Middle District of Alabama. For example, Mr. DeLong filed an objection on behalf of those entities to the Trustee's Motion to Approve Sale of Property Free and Clear of Liens and Encumbrances and participated in a hearing on that motion. *See,* Objection of Winning Image, Inc. and Terry Screen Print, Inc. attached as Exhibit "F."

10.

Mr. DeLong, the senior partner of the DeLong firm, has acted as counsel in at least three Alabama cases. This directly contradicts the representation that Mr. DeLong has never "practiced law in the State of Alabama" or that the firm has not "conducted any business in the State of Alabama."

11.

Plainly, Mr. DeLong and the Firm have practiced law in the State of Alabama. Indeed, they have done so in the bankruptcy case underlying the present adversary proceeding.

12.

Rule 12(f) of the Federal Rules of Civil Procedure and Rule 7012(6) of the Bankruptcy Rules authorize this Court to strike any "redundant, immaterial, impertinent or scandalous matter." The Trustee respectfully represents that the affidavits of Mr. DeLong and Mr. Caldwell are, at a bare minimum, grossly misleading and should be properly stricken consistent with Rule 12(f) and Rule 7012(b).

Respectfully submitted this 29th day of June, 2005.

Respectfully submitted,

By:     /s/   Brent B. Barriere
Brent B. Barriere, T.A.  (La. Bar No. 2818)
David L. Patrón (La. Bar No. 22566)
Katherine M. Determan (La. Bar No. 25381)
Catherine E. Lasky (La. Bar No. 28652)
**PHELPS DUNBAR LLP**
One Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served on the party listed below by facsimile and First Class Mail this 29th day of June, 2005:

C. David Butler, Esq.
Shapiro Fussell Wedge
  Smotherman Martin & Price, LLP
1360 Peachtree Street
One Midtown Plaza, Suite 1200
Atlanta, GA 30309-3214

J. Flynn Mozingo, Esq.
Melton, Espy & Williams, P.C.
301 Adams Avenue
Montgomery, AL  36104

Robert Northcutt, Esq.
Capel & Howard
P. O. Box 2069
Montgomery, AL  36102

/s/ Brent B. Barriere

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO. 03-32063-WRS |
| COMPANY, INC., | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | | |
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM | ) | CASE NO. 03-32213-WRS |
| COMPANY, LLC. | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | | |
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING | ) | |
| COMPANY, INC. AND | ) | ADVERSARY PROCEEDING |
| TERRY UNIFORM | ) | |
| COMPANY, LLC. | ) | NO. 04-03135 |
| | ) | |
| v. | ) | |
| | ) | |
| DeLONG, CALDWELL, | ) | |
| NOVOTNY & BRIDGERS, | ) | |
| LLC. | | |

STATE OF GEORGIA        )

COUNTY OF FULTON        )

## <u>AFFIDAVIT OF EARNEST H. DELONG, JR.</u>

Before me, the undersigned authority, a Notary Public in and for the State

of Georgia at Large, personally appeared EARNEST H. DELONG, JR., who being

known to me and, who being first duly sworn deposeth and says as follows:

1



1.      My name is Earnest H. "Woody" DeLong, Jr. I am a citizen and
resident of the State of Georgia. I reside at 2365 Craighead Drive, Atlanta,
Georgia. I was born in Georgia and have lived in Georgia my entire life.

2.      I am a practicing attorney licensed with the State Bar of Georgia
since 1970. I am a member of the law firm DeLong, Caldwell, Novotny &
Bridgers, LLC, which is located at Centennial Tower, Suite 3100, 101 Marietta
Street NW, Atlanta, Georgia, 30303. I am knowledgeable of the rules of
professional conduct and ethics for lawyers in the State of Georgia.

3.      I am a graduate of Emory University in Atlanta, having received a
Bachelor of Arts degree in 1966 and a Juris Doctorate degree in 1970.

4.      I am not licensed to practice law in the State of Alabama nor any
state besides Georgia.   I have never sought to be licensed with the Alabama
State Bar and I have never practiced law in the State of Alabama. I am not
familiar with the Alabama Rules of Professional Conduct nor am I familiar with
Alabama law, including the Alabama Uniform Fraudulent Transfer Act. I am
familiar, however, with the Georgia fraudulent transfer law.

5.      I do not have an office in the State of Alabama nor have I ever had
        an
office in the State of Alabama.

6.      I have no employees in the State of Alabama nor have I ever had any
employees in the State of Alabama.

2

7.      I maintain no records in the State of Alabama nor have I ever maintained any records in the State of Alabama.

8.      Prior to this lawsuit, I have never been a litigant in the courts of Alabama.

9.      I have never received any benefits of any kind from the State of Alabama.

10.     I have never resided in the State of Alabama nor have I ever been in Alabama for a prolonged period.  I do not own any property in Alabama nor any interest in any Alabama companies.  I do not have any family or relatives in Alabama.

11.     I lease no property in the State of Alabama nor have I ever leased any property in the State of Alabama.

12.     I have no accounts, financial or otherwise, in the State of Alabama nor have I ever had any such accounts.

13.     In December 1999, I was contacted by another lawyer in Atlanta about possibly representing Terry Manufacturing Company, Inc. in a lawsuit filed against it in the Superior Court of Gwinnett County, Georgia, styled, Commercial Factors of Atlanta, Inc. v. Terry Manufacturing Company, et al., In the Superior Court of Gwinnett County, Georgia, Civil Action No. 99-A10650-5. (Exhibit A.)  Thereafter, I met with the Vice President of Terry Manufacturing, Rudolph Terry, in my office in Atlanta and agreed to represent Terry

3

Manufacturing in the Gwinnett County proceedings.

14.     In December 1999, I was a member of the law firm Delong & Caldwell, LLC.  Delong & Caldwell was organized in the State of Georgia and comprised of two attorneys, Michael Caldwell and myself.  Michael Caldwell is also licensed to practice law with the State Bar of Georgia.  The office of Delong & Caldwell, LLC was located at 1770 Resurgens Plaza, 945 East Paces Ferry Road, N.E., Atlanta, Georgia 30326.

15.     When I met Rudolph Terry he was residing at 1785 Loch Lomond Trail, Atlanta, Georgia 30331, where he still resides today.  Rudolph Terry was the operations director for Terry Manufacturing's Georgia operations located at 3725 Zip Industrial Blvd., Atlanta, Georgia 30354. (Exhibit B, Business Card of Rudolph Terry.)

16.     The lawsuit against Terry Manufacturing in Gwinnett County was filed by Commercial Factors of Atlanta, Inc., a Georgia company, and asserted a claim under Georgia state law, for account stated.  In the course of the lawsuit, the complaint was amended multiple times to add claims for fraud, conspiracy, conversion, bad faith, deception and theft.  All of the claims were based on Georgia state law, and all the alleged acts and omissions of Terry Manufacturing allegedly occurred in the State of Georgia.  In addition, Rudolph Terry was later added as a defendant to the Georgia state law claims.

17.     On or about January 3, 2000, I mailed an engagement letter to

Terry Manufacturing at Terry Manufacturing's Atlanta address. (Exhibit C.)  The letter confirmed the terms of my representation of Terry Manufacturing and the fact that Terry Manufacturing had employed me to represent its interests, as well as the interests of its "officers, directors and shareholders in the defense of the [Commercial Factors litigation]." (Exhibit $C$.)  The letter further confirmed that Terry Manufacturing was also employing Jerry Thomas, a lawyer in Atlanta, Georgia, to jointly represent its interest.

18.    I never provided any legal services whatsoever to Terry Manufacturing Company or Rudolph Terry in the State of Alabama in the Commercial Factors litigation.  I never had any meetings with Rudolph Terry or any officers, shareholders or representatives of Terry Manufacturing in the State of Alabama.  All of my meetings with Rudolph Terry and other representatives of Terry Manufacturing, including Roy Terry, occurred in Atlanta, Georgia.  My correspondence with Terry Manufacturing was directed and mailed to Terry Manufacturing's Atlanta, Georgia, address.

19.    All of my legal fees and expenses were billed to Terry Manufacturing at its Atlanta, Georgia, address.  To my knowledge, all or most all of my fees and expenses were paid by Terry Manufacturing from its Atlanta address and on a Georgia bank account.  Any funds I or DeLong and Caldwell, LLC received from Terry Manufacturing were deposited in a Georgia bank account belonging to DeLong & Caldwell, LLC.

20.   Besides Terry Manufacturing, I have never represented a client who was a resident of, or was domiciled or incorporated in the State of Alabama.

21.   Were this case to be tried, any and all witnesses that might testify on my behalf reside in Atlanta, Georgia.  Specifically, I would potentially call as witnesses attorney Jerry Thomas and attorney Brian Steel, all residents and lawyers doing business in Atlanta, Georgia.  Attorney Thomas would be expected to testify concerning the <u>Commercial Factors</u> litigation and the resolution of any potential conflict that arose as the case progressed and evolved.  Attorney Steel would be expected to testify concerning his representation of Rudolph Terry, including his entry of appearance in the <u>Commercial Factors</u> litigation on Mr. Terry's behalf.

22.   I would also call Rudolph Terry, who still resides in Atlanta, Georgia. Rudolph Terry would be expected to testify concerning the <u>Commercial Factors</u> litigation and the resolution of any potential conflict that arose as the case progressed and evolved.

23.   The only witness residing in the state of Alabama that I might call on my behalf would be Roy Terry, who resides in Roanoke, Alabama.  It is my understanding that Roanoke is less than 100 miles from Atlanta, Georgia and Roy Terry would, therefore, be subject to subpoena power by a federal court located in Atlanta.  To my knowledge, Atlanta is more than 100 miles from Montgomery, Alabama and my witnesses in Atlanta would not be subject to

6

subpoena from the Bankruptcy Court in Montgomery, Alabama.  Moreover, Roanoke can be easily reached from Atlanta, Georgia on Interstate 85 and Georgia Highway 34.  However, to my knowledge Roanoke is more than 100 miles from Montgomery, Alabama and cannot be reached directly by interstate.

24.    In addition, my complete file on Terry Manufacturing Company, which would contain documents and letters supporting my defenses in this proceeding, is located in Atlanta, Georgia.  My file consists of at least 15 bankers boxes.  To my knowledge, there are no documents or other tangible evidence located in the State of Alabama that would be used in my defense.

25.    I demand the right to trial by jury on any claims against me for which a jury trial may be held.  However, I do not consent to trial by jury in the United States Bankruptcy Court or any federal court in the State of Alabama.  I demand the right to be tried by a jury of my peers in the State of Georgia.

Affiant further saith not.

_____
EARNEST H. "WOODY" DELONG, JR.

SWORN to and SUBSCRIBED before me this the 11th day of May, 2005.

_____
NOTARY PUBLIC
My Commission Expires: 03/17/09

7

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO. 03-32063-WRS |
| COMPANY, INC., | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | | |
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM | ) | CASE NO. 03-32213-WRS |
| COMPANY, LLC. | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | | |
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING | ) | |
| COMPANY, INC. AND | ) | ADVERSARY PROCEEDING |
| TERRY UNIFORM | ) | |
| COMPANY, LLC. | ) | NO. 04-03135 |
| | ) | |
| v. | ) | |
| | ) | |
| DeLONG, CALDWELL, | ) | |
| NOVOTNY & BRIDGERS, | ) | |
| LLC. | ) | |

STATE OF GEORGIA          )

COUNTY OF FULTON          )

### AFFIDAVIT OF MICHAEL CALDWELL

Before me, the undersigned authority, a Notary Public in and for the State

of Georgia at Large, personally appeared MICHAEL CALDWELL, who being

known to me and, who being first duly sworn deposes and testifies as follows:

1



1.    My name is Michael A. Caldwell. I am a citizen and resident of the State of Georgia. I reside at 5426 Brooke Farm Road, Dunwoody, Georgia. I have resided in the State of Georgia since 1979.

2.    I am a practicing attorney licensed with the State Bar of Georgia since 1979. I am a member of the law firm DeLong, Caldwell, Novotny & Bridgers, LLC (hereinafter referred to as "Law Firm"), which is located at Centennial Tower, Suite 3100, 101 Marietta Street NW, Atlanta, Georgia, 30303. I am also a member of the Atlanta Bar Association. I have been designated as the Law Firm's corporate representative in the Adversary Proceeding filed against it by the Trustee, Lester Alexander, III, in the United States Bankruptcy Court for the Middle District of Alabama. My Affidavit is offered in support of, and is authorized by the Law Firm.

3.    I am a graduate of Catholic University of America, having received a Bachelor of Arts degree in 1968 and a Juris Doctorate degree in 1971.

4.    The Law Firm was formed in June 2001. The members of the Law Firm include Charles R. Bridgers, Earnest H. DeLong, Jr. and Edmond J. Novotny, Jr. and myself. None of the Law Firm's members are licensed to practice law in the State of Alabama. The Law Firm does not have an office in the State of Alabama and does not do business in the State of Alabama. The Law Firm does not have any employees in the State of Alabama nor has it ever had any employees in the State of Alabama. The Law Firm presently does not have

any clients that either reside, or are domiciled or incorporated in the State of Alabama. The Law Firm has never represented a client from the State of Alabama, nor has it conducted any business in the State of Alabama.

5.    The Law Firm owns no property in the State of Alabama nor has it ever owned any property in the State of Alabama.

6.    The Law Firm leases no property in the State of Alabama nor has it ever leased any property in the State of Alabama.

7.    The Law Firm has no accounts, financial or otherwise, in the State of Alabama nor has it ever had any such accounts.

8.    The Law Firm does not maintain any records in the State of Alabama nor has it ever maintained any records in the State of Alabama.

9.    Prior to this lawsuit, the Law Firm has never been a litigant in the courts of Alabama.

10.    The Law Firm has never received any benefits of any kind from the State of Alabama.

11.    Were the claims filed by the Trustee to be tried, any and all witnesses that might testify on behalf of the Law Firm reside in Atlanta, Georgia. The witnesses would include the individuals referenced in the Affidavit filed with the Court by Earnest H. DeLong, Jr., and myself. In addition, any records or other tangible evidence the Law Firm might use in its defense are located in Atlanta, Georgia, as also referenced in the Affidavit of Earnest H. DeLong, Jr.

3

The Law Firm does not have any records or other tangible evidence in the State of Alabama that would be used in its defense.

12.    The Law Firm demands the right to trial by jury on any claims against it for which a jury trial may be held.  However, the Law Firm does not consent to trial by jury in the United States Bankruptcy Court or any federal court in the State of Alabama.  The Law Firm demands the right to be tried by a jury composed of citizens of the State of Georgia.

Affiant further saith not.

_____
MICHAEL A. CALDWELL

SWORN to and SUBSCRIBED before me this the 11th day of May, 2005.

_____
NOTARY PUBLIC
My Commission Expires: 03/17/09

4

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

FIRST BANK and SOUTHTRUST BANK,  )
                                    )
           Plaintiffs,  )
                                    )
vs.  )   CASE NO. CV-03-77
                                    )
TERRY MANUFACTURING COMPANY,  )
INC., WINNING IMAGE, INC., TERRY  )
SCREEN PRINT, INC., ROY D. TERRY,  )
and RUDOLPH TERRY,  )
                                    )
          Defendants.  )

VERIFIED APPLICATION FOR ADMISSION TO PRACTICE UNDER
RULE VII OF THE RULES GOVERNING ADMISSION TO THE ALABAMA STATE BAR

Comes now Earnest H. DeLong, Jr., applicant herein, and respectfully represents the following:

1.    Applicant resides at 365 Craighead Drive, Atlanta, Fulton County, Georgia 30319. His home telephone number is 404/250-9058. His Social Security Number is 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.

2.    Applicant is an attorney and a member of the law firm of DeLong, Caldwell, Novotny & Bridgers, LLC; with offices at 3100 Centennial Tower, 101 Marietta Street, Atlanta, Fulton County, Georgia 30303. The telephone number is 404/979-3155.

3.    Applicant has been retained personally or as a member of the above-named law firm by Rudolph Terry, Winning Image, Inc. and Terry Screen Print, Inc. to provide legal representation in connection with the above-styled matter now pending before the above-named court or administrative agency of the State of Alabama.

4.    Since November 9, 1970, applicant has been, and presently is, a member in good standing of the Bar of the highest court of the State of Georgia where applicant regularly practices law. A Certificate of Good Standing issued by the Supreme Court of Georgia is attached hereto as

EXHIBIT 1



DeLong 010673

Exhibit "A".

    5.      Applicant has been admitted to practice before the following courts:

| | |
|---|---|
| All Georgia State and Superior Courts | November 9, 1970 |
| Georgia Court of Appeals | November 9, 1970 |
| Georgia Supreme Court | November 9 , 1970 |
| U.S. District Court for the Northern District of Georgia | November, 1970 |
| Fifth Circuit U.S. Court of Appeals | November, 1970 |
| Eleventh Circuit U.S. Court of Appeals | — |

Applicant is presently a member in good standing of the Bars of those courts listed above.

    6.      Applicant presently is not subject to any disbarment proceedings.

    7.      Applicant presently is not subject to any suspension proceedings.

    8.      Applicant never has been subject to any disbarment proceedings.

    9.      Applicant never has been subject to any suspension proceedings.

    10.    Applicant never has had any certificate or privilege to appear and practice before any administrative body suspended or revoked.

    11.    Applicant, either by resignation, withdrawal, or otherwise, never has terminated or attempted to terminate applicant's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings.

    12.    Applicant or a member of applicant's firm has filed application(s) to appear as counsel under Rule VII during the past three (3) years in the following matters:

            NONE

    13.    Local counsel of record associated with applicant in this matter is George L. Beck, Jr. (BEC011) who has offices at 22 Scott Street, P.O. Box 5019, Montgomery, AL 36103-5019, 334/832-4878.

    14.    The following lists accurately state the name and address of each party in this matter,

WHETHER OR NOT REPRESENTED BY COUNSEL, and the name and address of each counsel of record who has appeared for each party.

PARTIES

a.    First Bank, Post Office Drawer 750, Roanoke, AL 362774

b.    South Trust Bank, One Georgia Center, 600 W. Peachtree Street, 27th floor, Atlanta, GA 30308

c.    Roy Terry, PO Box 1304, Roanoke, AL 36274

d.    Rudolph Terry, 1785 Loch Lomond Trail, Atlanta, GA 30331

e.    Terry Screen Print, Inc., 1785 Loch Lomond Trail, Atlanta, GA 30331

f.    Winning Image, Inc., 1785 Lock Lomond Trail, Atlanta, GA 30331

COUNSEL

a.    Timothy M. Lupinacci, Maynard, Cooper & Gale, P.C., 1901 Sixth Avenue North, 2400 Am South/Harbert Plaza, Birmingham, AL 35202-2618

b.    George L. Beck, Jr., P.O. Box 5019, Montgomery, AL 36103-5019

15.    Applicant agrees to comply with the provisions of the Alabama Rules of Professional Conduct, and applicant consents to the jurisdiction of the courts and the disciplinary boards of the State of Alabama.

16.    Applicant respectfully requests to be admitted to practice in the above-named court or administrative agency for this cause only.

DATED this 29 day of October, 2003.

APPLICANT

*Earnest H. DeLong Jr.*

Earnest H. DeLong, Jr.
Georgia Bar No. 217300

3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
404/979-3155

DeLong 010676

STATE OF GEORGIA
COUNTY OF FULTON

I, Earnest H. DeLong, Jr., do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true.

Earnest H. DeLong, Jr.

Subscribed and sworn to
before me this 22nd day
of October, 2003.

Notary Public

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| FIRST BANK and SOUTHTRUST BANK, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CASE NO. CV-03-77 |
| ) | |
| TERRY MANUFACTURING COMPANY, ) | |
| INC., WINNING IMAGE, INC., TERRY ) | |
| SCREEN PRINT, INC., ROY D. TERRY, ) | |
| and RUDOLPH TERRY, ) | |
| ) | |
| Defendants. ) | |

NOTICE OF HEARING

This application for admission is set for hearing before the court or administrative agency appearing in the style hereof on the 20 day of _November_ , 2003.

_Earnest H. DeLong_
Earnest H. DeLong, Jr.

DeLong 010678

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| FIRST BANK and SOUTHTRUST BANK, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CASE NO. CV-03-77 |
| | ) |
| TERRY MANUFACTURING COMPANY, | ) |
| INC., WINNING IMAGE, INC., TERRY | ) |
| SCREEN PRINT, INC., ROY D. TERRY, | ) |
| and RUDOLPH TERRY, | ) |
| | ) |
| Defendants. | ) |

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the Alabama State Bar by mail addressed to: Alabama State Bar, Attn: PHV Adminissions, P.O. Box 671, Montgomery, Alabama 36101, accompanied by payment of the $100.00 filing fee to the Alabama State Bar on this the 23 day of October, 2003.

Earnest H. DeLong, Jr.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TERRY MANUFACTURING | ) | CASE NO. 03-32063-WRS |
| COMPANY, INC., | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | | |
| IN RE: | ) | |
| | ) | |
| TERRY UNIFORM | ) | CASE NO. 03-32213-WRS |
| COMPANY, LLC. | ) | |
| | ) | CHAPTER 7 |
| Debtor. | ) | |
| | | |
| J. LESTER ALEXANDER, III, | ) | |
| TRUSTEE OF TERRY | ) | |
| MANUFACTURING | ) | |
| COMPANY, INC. AND TERRY | ) | ADVERSARY PROCEEDING |
| UNIFORM COMPANY, LLC. | ) | |
| | ) | NO. 04-03135 |
| v. | ) | |
| | ) | |
| DeLONG, CALDWELL, | ) | |
| NOVOTNY & BRIDGERS, | ) | |
| LLC. | ) | |

**STATE OF GEORGIA        )**

**COUNTY OF FULTON        )**

### SUPPLEMENTAL AFFIDAVIT OF
### EARNEST H. DELONG, JR. IN SUPPORT OF
### MOTION TO DISMISS, TRANSFER VENUE OR ABSTAIN

Before me, the undersigned authority, a Notary Public in and for the State

of Georgia at Large, personally appeared EARNEST H. DELONG, JR., who being

1



known to me and, who being first duly sworn deposeth and says as follows:

1.    My name is Earnest H. "Woody" DeLong, Jr.  I have previously submitted an Affidavit in the above referenced case, dated May 11, 2005.  I hereby submit this Supplemental Affidavit in order to clarify a statement made in my prior Affidavit.  In my prior Affidavit, I stated that I had never sought to be licensed with the Alabama State Bar and I have never practiced law in the State of Alabama.  I re-affirm those statements and believe them, in my personal opinion, to be true and correct.  Nonetheless, I was involved in a case filed in the Circuit Court of Randolph County Alabama, styled <u>First Bank v. Terry Manufacturing Co.</u>, Case No. CV-03-77.

2.    Upon information and belief, <u>First Bank</u> was initiated upon the filing of a Complaint in July 2003 against Terry Manufacturing Co.; Winning Image, Inc.; Terry Screen Print, Inc.; Roy Terry; and Rudolph Terry.  Terry Manufacturing was represented by attorney George Beck of Montgomery, Alabama.  Attorney Beck filed on my behalf a Motion for Admission Pro Hac Vice with the Randolph County Circuit Court on or about October 28, 2003, in order for me to represent Winning Image, Inc.; Terry Screen Print, Inc.;  and Rudolph Terry.

3.    At the time Attorney Beck filed the Motion for Admission Pro Hac Vice with the Randolph County Circuit Court, a Motion for Summary Judgment on behalf of the Plaintiff as well as a Motion for Default Judgment were already

pending against Winning Image, Inc.; Terry Screen Print, Inc.; and Rudolph
Terry.  The defendants subsequently agreed to the entry of summary judgment in
favor of the Plaintiff and the Plaintiff's Motion for Summary Judgment was
granted on or about November 20, 2003.  The Motion for Admission Pro Hac
Vice filed on my behalf was not granted until several months later, on February
12, 2004.

     4.     My clients never asserted a defense in the case.  In addition, I never
signed any pleadings or motions with the Circuit Court of Randolph County in the
First Bank case.  The only documents I personally signed or filed with the Circuit
Court of Randolph County are attached hereto as Exhibit A and concern my
Admission Pro Hac Vice.

     5.     The only times I was ever present in the Circuit Court of Randolph
County was for hearings on the consent entry of summary judgment on or about
November 2, 2003.  At such time I had not been admitted Pro Hac Vice in the
Court and I did not participate in the hearing.  Instead, my clients were
represented by George Beck who spoke on their behalf.  Finally, I exchanged
correspondence with the attorney for the Plaintiffs, but only in connection with
my becoming involved in the case, and the subsequent consent judgment.

     6.     Other than my limited involvement in the Randolph County Circuit
Court case, I have never been admitted Pro Hac Vice in any other case in the State
of Alabama, I have never requested to be admitted Pro Hac Vice in any other case

in the State of Alabama and I have never requested or sought to be admitted

generally to the Alabama State Bar.  Therefore, as previously stated, in my

personal opinion, I have not practiced law in the State of Alabama.

Affiant further saith not.

*Earnest H. DeLong*

EARNEST H. "WOODY" DELONG, JR.

SWORN to and SUBSCRIBED before me this the 13th day of June, 2005.

*Daniel P. Taylor*

NOTARY PUBLIC

My Commission Expires: 02/22/2009

4



687-4-733 / 25525881

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | |
|---|---|
| ROOSEVELT MCCORVEY, | ) |
| ROOSEVELT MCCORVEY, MD, PA, | ) |
| CLEVELAND AVE OB/GYN ASSOC. and | ) |
| PAUL FORTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  **CIVIL ACTION NUMBER** |
| | )  **CV2003-0108** |
| ROY TERRY and RUDOLPH TERRY. | ) |
| | ) |
| Defendants. | ) |

**Filed in Office**

DEC 8  2003

**KIM S. BENEFiELD**
Clerk of Circuit Court

### ORDER GRANTING SUMMARY JUDGMENT

This action came before the Court this 20th day of November, 2003, on Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Alabama Rules of Civil Procedure.

The Court having considered the Plaintiffs' Motion, arguments of counsel, and supporting Affidavits of Roosevelt McCorvey, M.D. and Paul Fortson, it is the finding of this Court that on Count I of the Plaintiffs' Complaint based upon breach of contract, the Plaintiffs do hereby recover a judgment against the Defendants, ROY TERRY and RUDOLPH TERRY in the sum of $1,437,500.00, plus cost of Court.

FURTHER, on Count II of the Plaintiffs' Complaint the Court finds that the Defendants committed willful and intentional fraud upon the Plaintiffs causing them injury and damages and the Court awards the sum of $310,000.00 as compensatory damages and $1,127,500.00 as punitive damages on Count II of the Complaint, plus the cost of Court.

DONE AND ORDERED this 8th day of December, 2003.

_____
THOMAS F. YOUNG, JR.
Circuit Court Judge

Cc:    Robert Baugh
        Robin Stephens
        Rodney E. Nolen
        Attorneys for Plaintiff
        Sirote & Permutt, P.C.
        2311 Highland Avenue
        Birmingham, Alabama 35205

        George Beck                              Earnest H. "Woody" DeLong, Jr.
        Attorney for Roy Terry                   Attorney for Rudolph Terry
        22 Scott Street                          3100 Centennial Tower, 101 Marietta St. NW
        Montgomery, Alabama 36103-5019           Atlanta, Georgia 30303

DOCSBHM\1135236\1\

**EXHIBIT**
*tabbies*
*E*

11/24/2003 MON 13:01 FAX



## SIROTE
### &
## PERMUTT
A PROFESSIONAL CORPORATION

(205) 930-5143
rnolen@sirote.com

November 24, 2003

### VIA FACSIMILE AND U.S. MAIL

Mr. George Beck
Attorney at Law
22 Scott Street
Montgomery, Alabama 36103-5019

Mr. Earnest H. DeLong, Jr.
DeLong, Caldwell, Novotny & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street, N.W.
Atlanta, Georgia 30303

Re:   Roosevelt McCorvey, Roosevelt McCorvey, MD, P.A., et. al.
      v. Roy Terry and Rudolph Terry
      Case No. CV2003-0108
      Our File No. 687-4-733 / 25525881

Dear George and Woody:

I enjoyed meeting you in Wedowee, Alabama last Thursday.  Enclosed is a draft proposed Order
I have prepared for Judge Young.  I believe it conforms to the agreement we discussed.

I will mail this to the clerk of Randolph County tomorrow morning.  If you have any suggested
changes, corrections or revisions, please send them to me by return fax at (205) 322-5070.

Very truly yours,

Rodney E. Nolen
FOR THE FIRM

REN/jmt
enclosure

DOCSBHM/1135277/1\

LAW OFFICES AND SUPREME COURT
2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727
TELEPHONE   {  205.930.5100    FAX  {  205.930.5101    URL  {  http://www.sirote.com
B i r m i n g h a m   {   H u n t s v i l l e   {   M o b i l e

DeLong 010613

11/24/2003 MON 13:51 FAX                                                    993/993

687-4-733 / 25525881

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| ROOSEVELT MCCORVEY, | ) | |
| ROOSEVELT MCCORVEY, MD, PA, | ) | |
| CLEVELAND AVE OB/GYN ASSOC. and | ) | |
| PAUL FORTSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | CV2003-0168 |
| ROY TERRY and RUDOLPH TERRY. | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER GRANTING SUMMARY JUDGMENT

This action came before the Court this 20th day of November, 2003, on Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Alabama Rules of Civil Procedure.

The Court having considered the Plaintiffs' Motion, arguments of counsel, and supporting Affidavits of Roosevelt McCorvey, M.D. and Paul Fortson, it is the finding of this Court that on Count I of the Plaintiffs' Complaint the Plaintiffs do hereby recovery a judgment against the Defendants, ROY TERRY and RUDOLPH TERRY in the sum of $1,437,500.00, plus cost of Court.

FURTHER, on Count II of the Plaintiffs' Complaint the Court finds that the Defendants committed willful and intentional fraud upon the Plaintiffs causing them injury and damages and the Court awards the sum of $310,000.00 as compensatory damages and $1,127,500.00 as punitive damages on Count II of the Complaint, plus the cost of Court.

DONE AND ORDERED this _____ day of _____, 2003.

_____
THOMAS F. YOUNG, JR.
Circuit Court Judge

Cc:    Robert Baugh
       Robin Stephens
       Rodney E. Nolen
       Attorneys for Plaintiff
       Sirote & Permutt, P.C.
       2311 Highland Avenue
       Birmingham, Alabama 35205

       George Beck                          Earnest H. "Woody" DeLong, Jr.
       Attorney for Roy Terry               Attorney for Rudolph Terry
       22 Scott Street                      3100 Centennial Tower, 101 Marietta St. NW
       Montgomery, Alabama 36103-5019       Atlanta, Georgia 30303

DOCSBHM\1352361\1

**DeLong 010614**

# SIROTE
## &
# PERMUTT
A PROFESSIONAL CORPORATION

(205) 930-5143
*rnolen@sirote.com*

November 24, 2003

**<u>VIA FACSIMILE AND U.S. MAIL</u>**

Mr. George Beck
Attorney at Law
22 Scott Street
Montgomery, Alabama 36103-5019

Mr. Earnest H. DeLong, Jr.
DeLong, Caldwell, Novotny & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street, N.W.
Atlanta, Georgia 30303

Re:    Roosevelt McCorvey, Roosevelt McCorvey, MD, P.A., et. al.
       v. Roy Terry and Rudolph Terry
       Case No. CV2003-0108
       Our File No. 687-4-733 / 25525881

Dear George and Woody:

Here is the Order with one slight correction adding "breach of contract" after Count I.

Very truly yours,

Rodney E. Nolen
FOR THE FIRM

REN/jmt
enclosure

*Law Offices and Mediation Centers*
2311 Highland Avenue South    Birmingham, Alabama 35205
Post Office Box 55727    Birmingham, Alabama 35255-5727
TELEPHONE  |  205.930.5100    FAX  |  205.930.5101    URL  |  *http://www.sirote.com*

B i r m i n g h a m    |    H u n t s v i l l e    |    M o b i l e

**DeLong 010607**



687-4-733 / 25525881

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

ROOSEVELT MCCORVEY, )
ROOSEVELT MCCORVEY, MD, PA, )
CLEVELAND AVE OB/GYN ASSOC. and )
PAUL FORTSON, )
                         )
          **Plaintiff,** )
                         )
**vs.** )      **CIVIL ACTION NUMBER**
                         )         **CV2003-0108**
**ROY TERRY and RUDOLPH TERRY.** )
                         )
         **Defendants.** )

## ORDER GRANTING SUMMARY JUDGMENT

     This action came before the Court this 20th day of November, 2003, on Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Alabama Rules of Civil Procedure.

     The Court having considered the Plaintiffs' Motion, arguments of counsel, and supporting Affidavits of Roosevelt McCorvey, M.D. and Paul Fortson, it is the finding of this Court that on Count I of the Plaintiffs' Complaint based upon breach of contract, the Plaintiffs do hereby recovery a judgment against the Defendants, ROY TERRY and RUDOLPH TERRY in the sum of $1,437,500.00, plus cost of Court.

     FURTHER, on Count II of the Plaintiffs' Complaint the Court finds that the Defendants committed willful and intentional fraud upon the Plaintiffs causing them injury and damages and the Court awards the sum of $310,000.00 as compensatory damages and $1,127,500.00 as punitive damages on Count II of the Complaint, plus the cost of Court.

     DONE AND ORDERED this _____ day of _____, 2003.


                                           _____
                                           THOMAS F. YOUNG, JR.
                                           Circuit Court Judge

Cc:     Robert Baugh
        Robin Stephens
        Rodney E. Nolen
        Attorneys for Plaintiff
        Sirote & Permutt, P.C.
        2311 Highland Avenue
        Birmingham, Alabama 35205

        George Beck                             Earnest H. "Woody" DeLong, Jr.
        Attorney for Roy Terry               Attorney for Rudolph Terry
        22 Scott Street                         3100 Centennial Tower, 101 Marietta St. NW
        Montgomery, Alabama 36103-5019     Atlanta, Georgia 30303

DOCSBHM\1135236\1\

**DeLong 010608**

**FILED**

OCT 3 1 2003

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                    )
                                          )
TERRY MANUFACTURING COMPANY   )    BANKR. CASE NO 03-32063-DHW
INC.,                                     )
                                          )    CHAPTER 11
        Debtor.                           )

### OBJECTION OF WINNING IMAGE, INC. AND TERRY SCREEN PRINT, INC. TO
### TRUSTEE'S MOTION TO APPROVE SALE OF PROPERTY
### FREE AND CLEAR OF LIENS

Come now Winning, Image, Inc. and Terry Screen Print, Inc. (Objecting Parties), by and

through counsel, and enter this their objection to the Trustee's Motion for authority to sell property

free and clear of liens.  As the basis for their objection, Objecting Parties show the Court the

following:

1.      Contrary to the Trustee's contention, the majority of merchandise stored at 430

Englewood Avenue in Atlanta, Georgia is not dated and/or damaged. Likewise, it is not second hand

merchandise. Rather, it is primarily T-shirts and golf shirts that have not been either printed or

embroidered.

2.      There is some merchandise stored in the referenced facility that would be

characterized as "Seconds" because of printing or embroidery errors.  However, such merchandise

is only a small part of the inventory in question.

3.      While a small part of the stored merchandise belongs to Terry Manufacturing

Company, the majority of the merchandise is the property of Objecting Parties.  Objecting Parties

have been excluded from the referenced facility since July, 2003.  In addition they have not had

access to records which would specifically identify the merchandise and its owner. Without either



access to the records or access to the referenced facility Objecting Parties cannot demonstrate which portion of the merchandise is the property of Terry Manufacturing Company and which portion of the merchandise is the property of Objecting Parties.

4.      Objecting Parties are guarantors of the debt owed to First Bank and SouthTrust Bank. However, they are not parties in this bankruptcy proceeding. Thus, there is no principle of law which would authorize the Trustee to seize and sell merchandise belonging to Objecting Parties.

5.      As guarantors of the debt owed by Terry Manufacturing Company to First Bank and SouthTrust Bank, Objecting Parties granted the banks security title to and a security interest in, among other things, its inventory. Therefore, First Bank and SouthTrust Bank have a first priority security interest in the merchandise located in the referenced facility that is the property of Objecting Parties.

6.      There is a proceeding pending in the Circuit Court of Randolph County, Alabama styled. First Bank and SouthTrust Bank vs. Terry Manufacturing Company, Inc., Winning Image, Inc., Terry Screen Print, Inc., Roy D. Terry and Rudolph Terry. On October 23, 2003 the, based upon the Unconditional Guaranty of Payment and Performance that each signed, Objecting Parties consented to the entry of a judgment against them in that proceeding. By virtue of the judgment, First Bank and SouthTrust Bank confirmed their first priority interest in the merchandise located in the referenced facility which belongs to Objecting Parties.

7.      Objecting Parties do not believe that the sale of merchandise proposed by the Trustee is commercially reasonable. However, because Objecting Parties have been denied access to the premises and because of the extremely short time they have to respond to Trustee's motion, Objecting Parties can not adequately assess the situation and present the Court with an appropriate alternative. Accordingly, Objecting Parties request that they be given the opportunity to determine

specifically what merchandise is in the referenced facility, to whom it belongs and what is its reasonable value prior to the Court entertaining Trustee's Motion.

8.     In the event that the merchandise housed in the referenced facility is sold, the entire sale proceeds should be paid to the parties that have a direct interest in the items being sold. Those parties are Showroom Svcs., Inc. which has shouldered the burden of storing and maintaining the materials since the Trustee took over the facility and First Bank and SouthTrust Bank, in accordance with their perfected security interests in the said merchandise.

Respectfully submitted, this 30 day of October , 2003.

Earnest H. DeLong
Georgia Bar No. 217300

Attorney for Winning, Image, Inc. and Terry Screen Print, Inc.

DeLong, Caldwell, Novotny & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
404/979-3155

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following listed persons by facsimile transmission and/or by placing a copy of the same in the United States Mail, postage prepaid and addressed as follows:

Von G. Memory, Esq.
P.O. Box 4054
Montgomery, AL 36101

Thomas H. Castelli, Esq.
Sutherland Asbill & Brennan, LLP
999 Peachtree Street
Atlanta, GA 30309-3996

Teresa R. Jacobs
United States Bankruptcy Administrator
Middle District of Alabama
One Church Street
Montgomery, AL 36104

Jesse S. Vogtle, Esq.
Balch & Bingham
1901 6th Avenue North
Suite 2600
Birmingham, AL 35203

George L. Beck, Jr., Esq.
Beck & Byrne, P.C.
22 Scott Street
Montgomery, AL 36104-4012

Berry E. Teague, Esq.
P.O. Box 586
Montgomery, AL 36101

Antonio L. Thomas, Esq.
230 Peachtree Street, NW
Atlanta, GA 30303

Brian E. Steel, Esq.
The Steel Law Firm, P.C.
1800 Peachtree Street, NW
Atlanta, GA 30309-2519

David A. Norris, Esq.
McGlinchey Stafford, PLLC
Post Office Drawer 22949
Jackson, MS 39225

Jeffery D. Saferstein, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064

Timothy M. Lupinacci, Esq.
Matthew W. Grill, Esq.
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203-2618

Robert G. Sanker, Esq.
Susan M. Argo, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202-3752

Joseph Vann, Esq.
Ira R. Abel, Esq.
Cohen Tauber Spievack & Wagner, LLP
420 Lexington Avenue
24th Floor
New York, NY 10170

Leura Q. Camary, Esq.
Patricia Allen Conover, Esq.
P.O. Box 197
Montgomery, AL 36101-0197

Internal Revenue Service
801 Tom Martin Drive
Suite 126
Birmingham, AL 35211

Brian G. Flanagan, Esq.
Defense Contract Management Agency
Attn: DCMAE-GLG
1910 Third Avenue North
Suite 201
Birmingham, AL 35203

Robert H. Adams, Esq.
Najjar Denaburg, P.C.
2125 Morris Avenue
Birmingham, AL 35203

Ronald E. Barab, Esq.
Smith, Gambrell & Russell, LLP
Suite 3100, Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309-3592

Craig G. Cornwell, Esq.
U.S. Department of Agriculture
Sterling Centre
4121 Carmichael Road
Suite 205
Montgomery, AL 36106-2872

C. Ellis Brazeal III, Esq.
Walston, Wells, Anderson & Bains, LLP
P.O. Box 830642
Birmingham, AL 35289-0642

Eric Briethaupt, Esq.
Christian and Small
505 20th Street North
Suite 1700
Birmingham, AL 35203

William Russell Patterson, Jr., Esq.
Ragsdale, Beals, Hooper & Seigler, LLP
2400 International Tower, Peachtree Center
229 Peachtree Street, N.E.
Atlanta, Georgia 30303-1629

Romaine S. Scott, III., Esq.
Garrison Scott Gamble & Rosenthal, P.C.
2224 1st Avenue North
Birmingham, AL 35203

Rudolph Terry
President
Terry Screen Print, Inc.
1785 Loch Lomond Trail
Atlanta, GA 30331

Rudolph Terry
President
Winning Image, Inc.
1785 Loch Lomond Trail
Atlanta, GA 30331

Clark R. Hammond
Johnston Barton Proctor & Powell, LLP
1901 Sixth Avenue North
Suite 2900
Birmingham, AL 35201

This 30 day of October, 2003.

Earnest H. DeLong
Georgia Bar No. 217300

Attorney for Winning, Image, Inc. and Terry
Screen Print, Inc.

DeLong, Caldwell, Novotny & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
404/979-3155

10/31/2003  11:41    4049793170        D C N B                                    PAGE  01

3100 CENTENNIAL TOWER
101 MARIETTA STREET
ATLANTA, GEORGIA 30303
(404) 979-3150
(404) 979-3170 FAX

# DELONG, CALDWELL,
# NOVOTNY & BRIDGERS, LLC
*Attorneys and Counselors At Law*

# FACSIMILE

RECEIVED
OCT 31 2003
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

| | | | |
|---|---|---|---|
| To: | Henrietta | From: | Alisha N. Jackson |
| Fax: | (334) 954-3819 | | |
| Date: | October 31, 2003 | Pages: | 7   (Including Cover) |
| Re: | **Terry Manufacturing** | | |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

## CONFIDENTIALITY NOTICE

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS LEGALLY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE INDIVIDUAL NAMED ABOVE. IF YOU ARE NEITHER THE INTENDED RECIPIENT NOR AN EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS FACSIMILE MESSAGE IS STRICLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE MESSAGE IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE AT THE NUMBER ABOVE FOR THE RETURN OF THE ERRONEOUSLY RECEIVED FACSIMILE MESSAGE.

NOTE:

# Thank you!!!!!!!!!!

Alisha

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY MANUFACTURING** | ) | **CASE NO. 03-32063-WRS** |
| **COMPANY, INC.,** | ) | |
| | ) | **CHAPTER 7** |
| Debtor. | ) | |
| | | |
| IN RE: | ) | |
| | ) | |
| **TERRY UNIFORM** | ) | **CASE NO. 03-32213-WRS** |
| **COMPANY, LLC.** | ) | |
| | ) | **CHAPTER 7** |
| Debtor. | ) | |
| | | |
| **J. LESTER ALEXANDER, III,** | ) | |
| **TRUSTEE OF TERRY** | ) | |
| **MANUFACTURING** | ) | |
| **COMPANY, INC. AND TERRY** | ) | **ADVERSARY PROCEEDING** |
| **UNIFORM COMPANY, LLC.** | ) | |
| | ) | **NO. 04-03135** |
| **v.** | ) | |
| | ) | |
| **DeLONG, CALDWELL,** | ) | |
| **NOVOTNY & BRIDGERS,** | ) | |
| **LLC.** | ) | |

## DEFENDANTS DeLONG, CALDWELL, NOVOTNY & BRIDGERS, LLC AND EARNEST H. DELONG, JR'S RESPONSE TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION

**COME NOW** the Defendants, DeLong, Caldwell, Novotny & Bridgers, LLC, and Earnest H. DeLong, Jr., and in response to Plaintiff's Second Request for Production, states as follows:

## GENERAL OBJECTIONS

**Defendants** object to the Requests for Production to the extent that it would require the communication of information subject to the attorney/client privilege or information comprised of attorney work product, or any other privilege allowed, or require communication of information compiled in

1

anticipation of litigation by or for **Defendants.**

These defendants' Responses to the Discovery are made solely for the purpose of this action.  Each response is subject to all objections concerning relevance, materiality, propriety and admissibility, and, further, as to any and all objections and grounds which would require the exclusion of any response to the discovery at the time of trial, all such objections and grounds being expressly reserved subject to being interposed at the time of trial.

The following responses are based upon information presently available to **Defendants** which they believe to be correct.  The responses are made without prejudice to these defendants' rights to rely upon other subsequently discovered documents and information.  Any supplementation will be made only in accordance with the applicable Rules of Civil Procedure.

Subject to and expressly reserving the foregoing general objections which are expressly incorporated into each of these Defendants' Responses herein, **Defendants** respond as follows:

## RESPONSES TO REQUEST FOR PRODUCTION

1.    Please produce any and all bills, invoices and/or other forms of statements issued to Terry Manufacturing and/or Rudolph Terry by the Firm, DeLong and/or any other entity by which DeLong is or was employed by or associated with in any way, including, but not limited to, DeLong, Caldwell, Logue, & Wisebram and DeLong & Caldwell, LLC, for legal services prior to January 1, 2000 and after April 30, 2003.

> **Response:** Any and all documents responsive to this request not previously made available to the Trustee for inspection are produced herewith.

2.    Please produce any and all trust account and/or operating account records reflecting any deposits, checks, drafts, debits, credits or other transactions relating to funds received from Terry Manufacturing, Terry Uniform, Rudolph Terry or Roy Terry by the firm, DeLong and/or any other entity DeLong is or was employed by or associated with in any way, including, but not limited to, DeLong, Caldwell, Logue & Wisebram and DeLong & Caldwell, LLC, from 1999 through and including the date of the answers to these Requests.

**Response:** See Defendants' response to Request for Production # 1.

3.    Please produce any and all documents relating to the corporate status of the Firm, DeLong, Caldwell, Logue & Wisebram, and DeLong & Caldwell, LLC in the State of Georgia or elsewhere.

**Response:** Any and all documents responsive to this Request for Production of Documents are public record and are equally available to the Trustee.

4.    Please produce all records of any and all trust and operating accounts of the Firm, DeLong and/or any other entity DeLong is or was employed by or associated with in any way, including but not limited to, DeLong, Caldwell, Logue & Wisebram and DeLong & Caldwell, LLC, from 1999 through and including the date of the answers to these Requests, into which any funds received from Terry Manufacturing, Terry Uniform, Roy Terry and/or Rudolph Terry were deposited, including, but not limited to, deposit slips, checks, cancelled checks and/or other documents relating to the receipt of any funds into such account(s) and/or the payment of any funds from such account(s).

**Response:** See Defendants' response to Request for Production number 1.

5.    Please produce all records relating to any transactions, including, but

3

not limited to, deposits, checks, drafts, debits, credits, and/or wires from any and all trust and operating accounts relating to the disposition of or payout of any and all funds received from Terry Manufacturing, Terry Uniform, Rudolph Terry and/or Roy Terry by the Firm, DeLong and/or any other entity DeLong is or was employed by or associated with in any way, including, but not limited to, DeLong, Caldwell, Logue & Wisebram and DeLong & Caldwell, LLC, from 1999 through and including the date of the answers to these Requests.

**Response:** See Defendants' response to Request for Production number 1.

Respectfully submitted this the _8th_ day of August, 2005.

/s/ J. Flynn Mozingo
J. Flynn Mozingo (MOZ003)
Joseph C. Espy, III (ESP002)
Attorneys for **Earnest H. "Woody" DeLong, Jr.**
Melton, Espy & Williams, PC
301 Adams Avenue
Montgomery, AL 36104
Telephone: (334) 263-6621
Facsimile: (334) 263-7252
fmozingo@mewlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the _8th_ day of August, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of such filing to the following:

Brent B. Barriere
Phelps Dunbar, LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

Teresa R. Jacobs
US Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

Robert F. Northcutt
Capell & Howard
P.O. Box 2069
Montgomery, AL 36102

Charles D. Butler
Shapiro Fussell
One Midtown Plaza
Suite 1200
1360 Peachtree Street
Atlanta, GA 30309

/s/ J. Flynn Mozingo
J. Flynn Mozingo (MOZ003)
Joseph C. Espy, III (ESP002)
Attorneys for **Earnest H. "Woody" DeLong, Jr.**
Melton, Espy & Williams, PC
301 Adams Avenue
Montgomery, AL  36104
Telephone: (334) 263-6621
Facsimile: (334) 263-7252
fmozingo@mewlegal.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                    )
                                          )
TERRY MANUFACTURING                       )        CASE NO.  03-32063-WRS
    COMPANY, INC.                         )
                                          )        CHAPTER 7
    Debtor                                )
                                          )

IN RE:                                    )
                                          )        CASE NO.  03-32213-WRS
TERRY UNIFORM                             )
    COMPANY, LLC,                         )        CHAPTER 7
                                          )
    Debtor.                               )

J. LESTER ALEXANDER, III,                 )
TRUSTEE OF                                )
TERRY MANUFACTURING                       )
COMPANY, INC. AND                         )        ADVERSARY PROCEEDING
TERRY UNIFORM COMPANY, LLC                )
                                          )        NO.  04-03135
VERSUS                                    )
                                          )
DELONG, CALDWELL, NOVOTNY,                )
& BRIDGERS, L.L.C. , DELONG               )
CALDWELL LOGUE & WISEBRAM,                )
DELONG & CALDWELL, L.L.C.                 )
AND EARNEST H. DELONG, JR.                )

**TRUSTEE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD AS PRIVILEGED
AND INCORPORATED MEMORANDUM IN SUPPORT**

NOW INTO COURT, through undersigned counsel, comes J. Lester Alexander, III, the duly appointed and acting Chapter 7 trustee (the "Trustee") of Terry Manufacturing Company, Inc. ("Terry Manufacturing") and Terry Uniform Company, LLC, ("Terry Uniform"), and respectfully requests that this Court compel Earnest H. DeLong, Jr., DeLong & Caldwell, L.L.C., DeLong Caldwell Logue & Wisebram, and DeLong, Caldwell, Novotny & Bridgers L.L.C. ("Defendants") to produce documents that have been improperly withheld as privileged.

1.

The Trustee filed the above-captioned adversary proceeding against the Defendants in order to recover more than $860,000.00 in legal fees that were paid by Terry Manufacturing to the Defendants.  Beginning in January, 2000 and continuing until the eve of the Chapter 11 filing of Terry Manufacturing, DeLong and the Firm represented Rudolph Terry and Terry Manufacturing in litigation styled *Commercial Factors of Atlanta, Inc. v. Terry Manufacturing, et al*, Case No. 99-A-10650-5, Gwinnett Judicial Circuit Superior Court, State of Georgia (the "Commercial Factors Litigation").

2.

Neither the Trustee nor the Defendants dispute that the Defendants represented Terry Manufacturing or that Terry Manufacturing paid all legal fees due to Defendants.  Rather, the focus of the Trustee's complaint is that the simultaneous representation of Terry Manufacturing and Rudolph Terry when their interests were in direct conflict was a breach of the duty of care owed by Defendants to Terry Manufacturing and constitutes professional malpractice under the

-2-

laws of Alabama and Georgia. Terry Manufacturing was injured by this conflict of interest and professional malpractice and is entitled to an award of appropriate damages, including, the forfeiture and disgorgement of all fees paid to Defendants. The Trustee also maintains that Terry Manufacturing's payment of legal fees and expenses of Rudolph Terry, made at a time when Terry Manufacturing was insolvent and had inadequate capital with which to conduct its business and for which Terry Manufacturing had no liability and for which it received no benefit are avoidable as fraudulent conveyances under the United States Bankruptcy Code and applicable laws of Alabama and Georgia.

3.

On February 2, 2005, the Trustee served the First Set of Requests for Production of Documents upon DeLong, Caldwell, Novotny & Bridgers, L.L.C.[1]   The DeLong firm filed its response to those Requests on March 16, 2005. On May 13, 2005, the Defendants made documents related to this proceeding available for review by the Trustee. At that time, certain documents were withheld as privileged. On June 17, 2005, counsel for the Trustee received the Defendants' privilege log. A copy of the privilege log is attached hereto as Exhibit "A". On July 15, 2005, counsel for the Trustee sent a letter requesting that the Defendants disclose the June 19, 2002, facsimile withheld as privileged. *See* July 15, 2005 Letter from Brent Barriere to Flynn Mozingo, attached hereto as Exhibit "B". On July 19, 2005, counsel for the Defendants refused to produce that document. *See* July 19, 2005 Letter from Flynn Mozingo to Brent

---

[1]  As this Court is aware, the Trustee has since amended his complaint to add Earnest DeLong, Jr. individually and DeLong & Caldwell L.L.C. and DeLong Caldwell Logue & Wisebram as defendants. Because DeLong & Caldwell and DeLong Caldwell Logue & Wisebram were predecessor firms to DeLong, Caldwell, Novotny & Bridgers, all documents related to this case are in the possession of DeLong, Caldwell, Novotny & Bridgers, the original defendant.

-3-

Barriere, attached hereto as Exhibit "C". On August 4, 2005, counsel for the Trustee requested

that Defendants produce the August 20, 2003, facsimile withheld as privileged. *See* August 4,

2005 Letter from Catherine Lasky to Flynn Mozingo, attached hereto as Exhibit "D". Counsel

for the Defendants also refused to produce that document. As such, counsel for the Trustee has

attempted to resolve this matter in good faith.

4.

The disputed documents are two facsimiles, both which were withheld as privileged

based upon the attorney-client privilege. It is settled law that the "party invoking the [attorney-

client] privilege has the burden of establishing the existence of the attorney-client relationship

and the confidential nature of the communication." *See*, *e.g.*, *United States v. Schaltenbrand*,

930 F.2d 1554, 1562 (11th Cir. 1991); *In re Grand Jury Proceedings in the Matter of Freeman*,

708 F.2d 1571, 1575 (11th Cir. 1983). The Defendants are unable to sustain their burden as to

either document.

5.

The first document claimed as privileged is a three-page facsimile dated June 19, 2002

from Rudolph Terry to Earnest H. DeLong, Jr. and Jerry Thomas that attaches a letter from Jon

Pouncey to Rudolph Terry. *See* First Item on Privilege Log, attached as Exhibit "A". This

document was authored by Jon Pouncey who was neither a client of Earnest DeLong nor Jerry

Thomas.

6.

Although Jon Pouncey and Rudolph Terry were co-defendants in the Commercial Factors

litigation and criminal proceeding, they did not have a joint defense agreement. The attorney-

-4-

client privilege only extends to a co-defendant's lawyer when a joint defense agreement exists. As the Eleventh Circuit recognized,

> When a defendant conveys information to the lawyer of his co-defendant, as opposed to his own lawyer, the justification for protecting the confidentiality of the information is weak. The policy of fostering frank communication with an attorney is already facilitated by privileging those communications made to the defendant's own attorney; little can be gained by extending the privilege to those communications made to attorneys that do not represent the defendant.

*United States v. Almeida*, 341 F.3d 1318, 1324 (11th Cir. 2003)(holding that the attorney-client privilege is lost for communications made by one co-defendant to the attorneys of other co-defendants when each party to the joint defense agreement is represented by his own attorney and one co-defendant decides to testify on behalf of the government in exchange for a reduced sentence).

7.

Further, the letter was a communication between Jon Pouncey and Rudolph Terry that Rudolph Terry then decided to forward to his counsel. It was not created as a confidential communication to counsel for the purpose of seeking legal advice, which are required elements of the attorney-client privilege. "In order to show that communications made to an attorney are within the privilege, it must be shown that 'the communication was made to him confidentially, in his professional capacity, for the purpose of securing legal advice or assistance.'" *Schaltenbrand*, 930 F.2d at1562 (quoting *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973)). The Defendants cannot meet this burden.

8.

The second document is a facsimile dated August 20, 2003 from Rudolph Terry to Brian Steel, Earnest H. DeLong, Jr. and Jerry Thomas. According to the privilege log submitted by

-5-

Defendants, the facsimile contains "attorney notes being circulated regarding potential testimony of Rudolph Terry concerning criminal prosecution and its possible relationship to civil proceedings." *See* Exhibit "A". Defendants acknowledge that the facsimile is related to the Commercial Factors Litigation.

9.

As mentioned, Defendants represented both Rudolph Terry and Terry Manufacturing in the Commercial Factors Litigation. Courts have uniformly held that "[w]here there is a joint attorney-client privilege, there is no expectation that confidential information will be withheld from joint clients as there is no privilege between them." *Bass Pub. Ltd. Co. v. Promus Cos. Inc.*, 868 F.Supp. 615, 620 (S.D.N.Y.1994). *See also Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group* (*In re Hechinger Inv. Co. of Del.*), 285 B.R. 601, 612 (D.Del.2002) ("Generally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences ... will remain secret from each other…"); *E.F. Hutton & Co., Inc. v. Brown*, 305 F.Supp. 371, 393 (S.D.Tex.1969) ("[I]nformation imparted to the common attorney relating to the subject of the joint representation is imparted for the mutual benefit of all the joint clients and is therefore not privileged against any of them.").

10.

In addition, Georgia law is instructive because the Commercial Factors Litigation took place in Georgia. Georgia courts agree that an attorney who represents two clients in the same matter cannot keep confidences of one respecting the matter from the other. *See Scroggins v. Powell, Goldstein, Frazer & Murphy* (*In re Kaleidoscope, Inc.*), 15 B.R. 232, 244

-6-

(Bankr.N.D.Ga.1981) ("[T]he court believes that with regard to legal files created ... during the course of joint representation ... the entire contents of those legal files belong jointly to the clients in question, with each having an undivided ownership interest in, and equal right of access to, all of those files.") *rev'd on other grounds*, 25 B.R. 729 (N.D.Ga.1982); *Gearhart v. Etheridge*, 232 Ga. 638, 208 S.E.2d 460, 462 (Ga. 1974) ("If two or more persons jointly consult an attorney for the purpose of having him prepare a deed or contract for them, the communications which either makes to the attorney are not privileged in the event of any subsequent litigation between the parties.") (*quoting* Green, Georgia Law of Evidence, § 185 (1957)); *Peterson v. Baumwell*, 202 Ga.App. 283, 414 S.E.2d 278, 280 (1991) (same); see also *Atwood v. Sipple*, 182 Ga.App. 831, 357 S.E.2d 273, 276 (1987)).  Accordingly, Defendants have no basis to withhold the August 20, 2003 letter from Rudolph Terry to DeLong, Thomas and Steel.  The Trustee is entitled to all documents to which Terry Manufacturing would be entitled to receive as a result of Defendants' joint representation of Terry Manufacturing and Rudolph Terry.

11.

Furthermore, to the extent the interests of Terry Manufacturing and Rudolph Terry are now adverse in this litigation, that cannot be a basis for refusing to disclose information from the Defendants' prior representation of both Rudolph Terry and Terry Manufacturing.  *See, e.g.*, *Brennan's, Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168, 172 (5th Cir.1979) ("Assuming the prior representation was joint, defendants are quite correct that neither of the parties to this suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation."); *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir.1970), *cert. denied* 401

-7-

U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) ("In many situations in which the same attorney

acts for two or more parties having a common interest, neither party may exercise the privilege

in a subsequent controversy with the other.").

WHEREFORE, because the Defendants represented both Rudolph Terry and Terry

Manufacturing in the Commercial Factors Litigation and because both documents asserted as

privileged by Defendants pertain to that litigation, the Trustee respectfully requests that this

Court enter an order compelling the Defendants to disclose the documents withheld as privileged

or in the alternative, order an *in camera* review of the withheld documents.  The Trustee

respectfully requests oral argument on his Motion to Compel Production of Documents

Improperly Withheld as Privileged.

Respectfully submitted this 23rd day of August, 2005.


Respectfully submitted,

By:     /s/  Brent B. Barriere
       Brent B. Barriere, T.A.  (La. Bar No. 2818)
       David L. Patrón (La. Bar No. 22566)
       Katherine M. Determan (La. Bar No. 25381)
       Catherine E. Lasky (La. Bar No. 28652)
       **PHELPS DUNBAR LLP**
       One Canal Place
       365 Canal Street • Suite 2000
       New Orleans, Louisiana  70130-6534
       Telephone:  (504) 566-1311
       Facsimile:  (504) 568-9130

       **ATTORNEYS FOR J. LESTER ALEXANDER,
       III, TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

I, Brent B. Barriere, hereby certify that I have on the 23rd day of August, 2005, served a copy of the Trustee's Motion To Compel Production of Documents Improperly Withheld as Privileged and Incorporated Memorandum In Support, upon the parties listed below by facsimile:

C. David Butler, Esq.
Shapiro Fussell Wedge
  Smotherman Martin & Price, LLP
1360 Peachtree Street
One Midtown Plaza, Suite 1200
Atlanta, GA 30309-3214

Robert Northcutt, Esq.
Capel & Howard
P. O. Box 2069
Montgomery, AL  36102

J. Flynn Mozingo, Esq.
Melton, Espy & Williams, P.C.
301 Adams Avenue
Montgomery, AL  36104

/s/ Brent B. Barriere

NO.99549934.1

IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE: TERRY MANUFACTURING

ALEXANDER v. DeLONG, CALDWELL, NOVOTNY & BRIDGERS, LLC
ADVERSARY PROCEEDING NO. 04-3135

PRIVILEGE LOG

| Document | Date | Author | Subject | Addressee | Persons copied | Purpose | Basis for Confidentiality |
|---|---|---|---|---|---|---|---|
| Facsimile 3 pages | 6/19/02 | Rudolph Terry | Contains letter from Jon Pouncey to Rudolph Terry regarding questions to ask lawyers concerning litigation | Earnest H. DeLong, Jr. and Jerry Thomas | Unknown | Communication from Rudolph Terry | Attorney/client privilege |
| Facsimile 7 pages | 8/20/03 | Rudolph Terry | Notes regarding items to consider in determining whether or not Rudolph Terry testifies | Brian Steel, Earnest H. DeLong, Jr. and Jerry Thomas (attorneys for Rudolph Terry in criminal and civil proceedings in which he was a defendant) | Upon information and belief, none | Attorney notes being circulated regarding potential testimony of Rudolph Terry concerning criminal prosecution and its possible relationship to civil proceedings | Attorney work product and attorney/client privilege |



EXHIBIT

A

# PHELPS DUNBAR LLP

COUNSELORS AT LAW

Canal Place
365 Canal Street · Suite 2000
New Orleans, Louisiana 70130-6534
(504) 566-1311
Fax (504) 568-9130

www.phelpsdunbar.com

New Orleans, LA
Baton Rouge, LA
Houston, TX
London, England

Jackson, MS
Tupelo, MS
Gulfport, MS
Tampa, FL

BRENT B. BARRIERE
Partner
New Orleans Office
Admitted in Louisiana and Texas
(504) 584-9210
barriere@phelps.com

July 15, 2005

20745-1

## VIA FACSIMILE

J. Flynn Mozingo, Esq.
Melton, Espy & Williams, P.C.
301 Adams Avenue
Montgomery, AL 36104

Re:    J. Lester Alexander, III v. DeLong Caldwell, et al
       Adversary Proceeding No. 04-3035

Dear Flynn:

We are rapidly approaching our extended discovery deadline, and it remains unclear whether this case will remain before Judge Sawyer. I am proceeding on the assumption that if Judge Sawyer denies the defendant's motion, we will need to set a new discovery and other deadlines. Do you concur with that position? Please advise.

I note that you have asserted a privilege with respect to a letter sent by Jon Pouncey to Rudolph Terry and then forwarded to Earnest DeLong and Jerry Thomas. I fail to understand how this letter can possibly be subject to the attorney-client privilege. Mr. Pouncey was not a client of either Mr. DeLong or Mr. Thomas. I ask that you reconsider your position and advise me whether you will produce the letter voluntarily.

With kindest personal regards, I remain

Sincerely yours,

Brent B. Barriere

Brent B. Barriere

BBB/dob

NO.99547474.1


EXHIBIT
B
tabbies®

M E & W

LAW OFFICES

MELTON, ESPY & WILLIAMS, P.C.

301 ADAMS AVENUE

MONTGOMERY, ALABAMA 36104

OAKLEY MELTON, JR.
JOSEPH C. ESPY, III
JAMES E. WILLIAMS
J. FLYNN MOZINGO
SUZANNE D. EDWARDS
C. MARK BAIN
BENJAMIN J. ESPY*

* ALSO ADMITTED IN MISSISSIPPI

MAILING ADDRESS
P.O. DRAWER 5130
MONTGOMERY, AL
36103-5130

TELEPHONE
(334) 263-6621

FAX
(334) 263-7252

July 19, 2005
*Via Facsimile and USPS*

Brent B. Barriere
Phelps Dunbar, LLP
Canal Place, Suite 2000
365 Canal Street
New Orleans, LA 70130-6534

Re:   J. Lester Alexander, III v. DeLong, Caldwell, Novotny, & Bridgers, LLC
       Adversary Proceeding # 04-3135
       In the U.S. Bankruptcy Court, Middle District of Alabama

Dear Brent:

I am writing in response to your letter dated July 15, 2005. I have re-reviewed the three-page facsimile referenced in our privilege log. The fax is an attorney/client communication in and of itself and I stand by my position that the fax is privileged.

Finally, Judge Sawyer has never entered an Order extending our discovery deadline which, under the existing scheduling order, has run. I fully expect him to enter a revised scheduling order, if necessary, once he rules on my pending motion.

With highest personal regards, I am

Sincerely,

J. Flynn Mozingo

JFM/wbr

cc:   C. David Butler
       Robert F. "Bob" Northcutt



NO.99552379.1

# PHELPS DUNBAR LLP

COUNSELORS AT LAW

Canal Place

365 Canal Street • Suite 2000

New Orleans, Louisiana 70130-6534

(504) 566-1311

Fax (504) 568-9130

www.phelpsdunbar.com

Jackson, MS

Tupelo, MS

Gulfport, MS

Tampa, FL

New Orleans, LA

Baton Rouge, LA

Houston, TX

London, England

CATHERINE E. LASKY
Associate
(504) 584-9344
laskyk@phelps.com

August 4, 2005

20745-0001

**VIA FACSIMILE**

J. Flynn Mozingo
Melton, Espy & Williams, P.C.
301 Adams Avenue
Montgomery, AL 36104

Re:     *J. Lester Alexander, III v. DeLong, Caldwell, Novotny & Bridgers, LLC et al*,
        Adversary Proceeding No. 04-03135

Dear Flynn:

You have asserted a privilege with respect to a facsimile dated August 20, 2003 from Rudolph Terry to Brian Steel, Earnest H. DeLong, Jr. and Jerry Thomas regarding Mr. Terry's possible testimony and the impact on the Commercial Factors Litigation. We do not understand how this letter is subject to the attorney-client or work product privileges because the Defendants represented both Rudolph Terry and Terry Manufacturing in the Commercial Factors Litigation.

Courts have uniformly held that "[w]here there is a joint attorney-client privilege, there is no expectation that confidential information will be withheld from joint clients as there is no privilege between them." *Bass Pub. Ltd. Co. v. Promus Cos. Inc.*, 868 F.Supp. 615, 620 (S.D.N.Y.1994). *See also Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del.)*, 285 B.R. 601, 612 (D.Del.2002) ("Generally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences ... will remain secret from each other ... "); *Scroggins v. Powell, Goldstein, Frazer & Murphy (In re Kaleidoscope, Inc.)*, 15 B.R. 232, 244 (Bankr.N.D.Ga.1981) ("[T]he court believes that with regard to legal files created ... during the course of joint representation ... the entire contents of those legal files belong jointly to the clients in question, with each having an undivided ownership interest in, and equal right of access to, all of those files.") *rev'd on other grounds*, 25 B.R. 729 (N.D.Ga.1982).



EXHIBIT
D

J. Flynn Mozingo
August 4, 2005
Page 2

Please reconsider your position regarding the production of this document and advise us whether you will produce the facsimile voluntarily.

Sincerely,

*Katie E Lasky*

Catherine E. Lasky

CEL/dob
cc:    J. Lester Alexander, III (via facsimile)

NO.99552379.1

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:                                                   Case No. 03-32063

TERRY MANUFACTURING
COMPANY INC.,

     Debtor.


In re:                                                   Case No. 03-32213

TERRY UNIFORM
COMPANY, LLC,


     Debtor.

J. LESTER ALEXANDER III,                                 Adv. Pro. No. 04-3135
TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC.
AND TERRY UNIFORM COMPANY,
LLC

     Plaintiff,

v.

DELONG, CALDWELL, NOVOTNY,
& BRIDGERS, LLC, et. al.

     Defendants.


## <u>MEMORANDUM DECISION</u>


     This Adversary Proceeding is before the Court upon the Plaintiff's Motion to

Compel Production of Documents. (Doc. 89). The Defendants have not filed a brief in

response to the Plaintiff's motion and supporting memorandum, however they do oppose

the motion to compel. The Court heard oral argument on this matter on September 20,

2005.  (Doc. 92).  For the reasons discussed below, the Plaintiff's motion to compel is
GRANTED.

## I.  FINDINGS OF FACT

The Plaintiff in this Adversary Proceeding, Trustee of the Bankruptcy Estate of
Terry Manufacturing Company Inc. ("Terry Manufacturing")[1], is seeking to recover
damages and the disgorgement of professional fess in excess of $860,000.00 allegedly
arising from acts of professional malpractice and fraudulent conveyances involving the
Defendants Earnest H. Delong and DeLong, Caldwell, Novotny & Bridgers L.L.C.[2]  This
Adversary Proceeding is one of two[3] brought by the Trustee which alleges that
substantial amounts of attorney's fees have been paid by Terry Manufacturing which
were actually owed by the former officers of the debtor corporation, Roy and Rudolph
Terry.  The civil litigation which spawned the attorney's fees at issue in this Adversary
Proceeding is styled _Commercial Factors of Atlanta v. Terry Manufacturing, et al._, Case
No. 99-A-10650-5 ("Commercial Factors Litigation").  The Defendants in this Adversary
Proceeding simultaneously represented the interests of both Terry Manufacturing and
Rudolph Terry[4] in the Commercial Factors Litigation.

---

[1]  Terry Manufacturing filed a voluntary Chapter 11 petition in this Court on July 7, 2003. (Case No. 03-
32063, Doc. 1). Terry Uniform filed a voluntary Chapter 11 petition on July 22, 2003. (Case. No. 03-
32213, Doc. 1).  Both cases have subsequently converted to a case under Chapter 7.

[2] The Trustee amended his complaint naming two additional Defendants: (1) DeLong, Caldwell, Logue &
Wisebram and DeLong & Caldwell, L.L.C.  (Doc. 46).

[3] See _Alexander v. The Steel Law Firm, P.C._, Adversary Proceeding No. 04-3114.

[4] As a result of the same conduct which lead to the Commercial Factors Litigation, Rudolph Terry was
indicted in a federal criminal action styled _USA v. Pouncey, et. al._, in the United States District Court for

2

This present dispute involves two facsimiles, both of which have been withheld by the Defendants based upon an assertion of the attorney-client privilege[5]. The first document is a three page facsimile, dated June 19, 2002, from Rudolph Terry to his lawyers in the Commercial Factors Litigation, Earnest H. Delong, Jr. and Jerry Thomas. (Doc. 89, Ex. A). Attached to this facsimile is a letter from Jon Pouncey, Rudolph Terry's co-defendant in the criminal case, regarding questions to ask Rudolph Terry's lawyers concerning litigation. (Doc. 89, Ex. A). Jon Pouncey was never a client of Earnest Delong or Jerry Thomas. This document has been withheld by the Defendants based upon the attorney-client privilege.

The second document is a seven page facsimile dated August 20, 2003, from Rudolph Terry to attorneys Brian Steel[6], Earnest H. Delong, Jr., and Jerry Thomas. (Doc. 89., Ex. A). This facsimile contains attorney notes regarding the potential testimony of Rudolph Terry concerning his criminal prosecution and its possible relationship to the Commercial Factors Litigation. (Doc. 89, Ex. A). The Defendants have withheld this document based upon both the attorney-client privilege and the work product privilege. (Doc. 89, Ex. A). The Court will now address whether it is appropriate to compel the production of these two documents.

---

the Northern District of Georgia, Case No. 1:03-CR-00055-CC-ECS-ALL. Rudolph Terry ultimately pled guilty and served time in a federal prison in Montgomery, Alabama.

[5] It was noted at the September 20, 2005 telephonic hearing that the Defendants have willingly produced a substantial number of litigation files related to their representation of Rudolph Terry and Terry Manufacturing.

[6] The Trustee has also initiated an Adversary Proceeding against Brian Steel and The Steel Law Firm, P.C., seeking the recovery of payments that were made by Terry Manufacturing on behalf of Rudolph Terry in relation to his criminal indictment. (Adversary Proceeding No. 04-3114).

## II. CONCLUSIONS OF LAW

### A. The Attorney Client Privilege

First, it should be noted that Georgia law is particularly instructive in this case because the Commercial Factors Litigation, which is at the core of the allegations made by the Trustee in this Adversary Proceeding, took place in the State of Georgia. Furthermore, most if not all of the services provided to Rudolph Terry in relation to the Commercial Factors Litigation occurred in Atlanta, Georgia, the place of residence for Mr. Delong and where the Defendant law firm is located.

A claimant attempting to invoke the attorney-client privilege must show the following:

1) the asserted holder of the privilege is or sought to become a client; 2) the person to whom the communication was made (a) is [a] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; 3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Seebeck v. GMC.*, 1996 U.S. Dist. LEXIS 22629, at *6 (N.D. Ga. May, 17, 1996)(citing

*United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir.Fla. 1990), *cert denied*, 498 U.S.

976, 112 L. Ed. 432, 111 S. Ct. 451 (1990); *see* *also* *Automed Techs., Inc. v. Knapp*

*Logistics & Automation, Inc.*, 2005 U.S. Dist. LEXIS 17485, at *9-11 (N.D. Ga. Aug. 1, 2005); *United States v. Wells*, 929 F. Supp. 423, 424-25 (S.D. Ga. 1996); *Freiermuth v. PPG Indus., Inc.*, 218 F.R.D. 694, 698 (N.D. Ala. 2003).

The attorney-client privilege belongs to the client, not the attorney. *Peterson v. Baumwell*, 202 Ga. App. 283, 285 (1991). A corporation is a client for purposes of invoking the attorney-client privilege. *Garner v. Wolfinbarger*, 430 F.2d 1093, 1096 (5th Cir. 1970). Furthermore, with respect to a corporation, the power to waive the attorney-client privilege is held by existing corporate management. *In re: Michigan Boiler & Engineering Co.*, 87 B.R. 465, 469 (Bankr. E.D. Mich. 1988). When a corporation becomes a debtor in bankruptcy and a trustee is appointed, the trustee displaces existing management. Id. Stated another way, once a corporation files a bankruptcy petition and a Trustee is thereafter appointed, the power to waive the attorney-client privilege rests with the Trustee of the corporate debtor. See also *Diamant v. Sheldon L. Pollack Corp.*, 216 B.R. 589, 592 (Bankr. S.D. Tex. 1995)(citation omitted)(stating that "a Chapter 7 Trustee of a corporation has control over the corporate attorney-client privilege and the power to waive that privilege with respect to prebankruptcy communications"); *Am. Metrocomm Corp. v. Duane Morris & Heckscher LLP (In re: Am. Metrocomm)*, 274 B.R. 641, 654 (Bankr. D. Del. 2002); *Turner v. Davis, Gillenwater & Lynch (In re: Investment Bankers, Inc.)*, 30 B.R. 883, 886 (Bankr. D. Colo. 1983).

The question arises whether the attorney-client privilege is applicable where two clients have been jointly represented by an attorney. The law is well settled that the

attorney-client privilege is not applicable where two clients have been jointly represented

by an attorney, and the interest of those clients subsequently becomes adverse to one

another.  The Court in _SIPA Protection Corp. v. Kushnir & Co._, 246 B.R. 582, 588

(Bankr. N.D. Ill. 2000) stated this rule as follows:

> Among co-clients, the attorney client privilege is narrowed substantially.  Under
> the "joint defense doctrine", if the same lawyer jointly represents two or more
> clients with respect to the same matter, those clients have no reasonable
> expectation that their communications to the lawyer with respect to the joint
> matter will be kept secret from each other. _In re Madison Management Group,_
> _Inc._, 212 B.R. 894 (Bankr. N.D. Ill. 1997).

_SIPA Protection Corp. v. R.D. Kushnir & Co._, 246 B.R. 582, 588 (Bankr. N.D. Ill. 2000).

See also _Brennan's, Inc. v. Brennan's Restaurants, Inc._, 590 F.2d 168, 171 (5th Cir.

1979)(where prior representation was joint, neither of the parties can assert the attorney-

client privilege against the other as to matters comprehended by that joint representation);

see also _Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group (In re:_

_Hechinger Investment Co. of Delaware)_, 285 B.R. 601, 612 (D. Del. 2002)("[g]enerally,

where the same lawyer jointly represents two clients with respect to the same matter, the

clients have no expectation that their confidences concerning the joint matter will remain

secret from each other, and those confidential communications are not within the

privilege in subsequent adverse proceedings between the co-clients")(citing _Tekni-Plex,_

_Inc. v. Meyner & Landis_, 89 N.Y.2d 123, 137 (1996); _In re: Mirant Corp._, 326 B.R. 646,

649-50 (Bankr. N.D. Tex. 2005)("in a case of a joint representation of two clients by an

attorney, one client may not invoke the privilege against the other client in litigation

between them arising from the matter in which they were jointly represented")(citation

omitted); _Bass Pub. Ltd. Co. v. Promus Cos._, 868 F. Supp. 615, 620 (S.D.N.Y. 1994)("[w]here there is a joint attorney-client privilege, there is no expectation that confidential information will be withheld from joint clients as there is no privilege between them")(citations omitted); _Garner v. Wolfinbarger_, 430 F.2d 1093, 1103 (5th Cir. 1970)("[i]n many situations in which the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other"); _United States v. Moscony_, 697 F. Supp. 888, 894 (E.D. Pa. 1988)(holding that the exception to the attorney-client privilege for suits between former clients squarely applies when former clients subsequently face one another as adverse parties in litigation brought by any one of them); _E. F. Hutton & Co. v. Brown_, 305 F.Supp. 371, 393 (S.D. Tex. 1969)("information imparted to the common attorney relating to the subject of the joint representation is imparted for the mutual benefit of all the joint clients and is therefore not privileged against any of them"); _Arce v. Cotton Club of Greenville_, 1995 U.S. Dist. LEXIS 21539, at *7 (N.D. Miss. Jan. 13, 1995)(stating that "neither the attorney-client privilege nor the obligation of confidentiality is absolute, but may be waived where one attorney acts for two or more parties having a common interest").

The Courts of Georgia have consistently recognized this exception to the attorney-client privilege. _See_ _In re: Mirant Corp._, 326 B.R. 646, 650 (noting that Georgia courts have consistently recognized the rule that attorneys who represent two clients in the same matter cannot keep confidences of one respecting the matter from the other)(citing _Scoggins v. Powerll, Goldstein, Frazer & Murphy (In re: Kaleidoscope,_

_Inc._, 15 B.R. 232, 244 (Bankr. N.D. Ga. 1981), _rev'd on other grounds_ 25 B.R. 729 (N.D.

Ga. 1982); _Gearhart v. Etheridge_, 232 Ga. 638, 208 S.E.2d 460, 462 (1974); _Peterson v._

_Baumwell_, 202 Ga. App. 283, 414 S.E.2d 278, 280 (Ga. Ct. App. 1991); _Atwood v._

_Sipple_, 182 Ga. App. 831, 357 S.E.2d 273, 276 (1987).


     The present case falls precisely within the scope of this exception to the attorney-

client privilege.   Rudolph Terry and Terry Manufacturing were simultaneously

represented by the Defendants in the Commercial Factors Litigation.  In accordance with

the aforementioned authorities, neither Terry Manufacturing nor Rudolph Terry could

have had any expectation that their confidences concerning the Commercial Factors

Litigation would be kept secret from one another in the event of subsequent litigation in

which their interests would become adverse.  The first document, a facsimile from

Rudolph Terry to Earnest H. Delong and Jerry Thomas, which contained a letter from Jon

Pouncey, is not protected by the attorney-client privilege.  First, Jon Pouncey was not a

client of the Defendants.  Furthermore, even if the letter from Jon Pouncey to Rudolph

Terry could be considered a statement by Rudolph Terry made to his attorneys through

the doctrine of incorporation, that document cannot be withheld from the co-client, Terry

Manufacturing.  Following this rule to its conclusion, upon Terry Manufacturing's filing

of a petition in bankruptcy the right to waive the attorney-client privilege passed from the

corporate management of the Debtor to the Trustee.  The same analysis applies to the

second facsimile at issue in this case, a communication from Rudolph Terry to his

attorneys Brian Steel, Earnest H. Delong, Jr., and Jerry Thomas.  Neither of these

documents can be withheld on the basis of the attorney-client privilege in light of the

prior joint representation of Terry Manufacturing and Rudolph Terry in the Commercial

Factors Litigation.

### B.  The Work Product Privilege

In addition to the attorney-client privilege, the Defendants have also asserted the

work-product privilege[7] with regards to the second document, the facsimile from

Rudolph Terry to his attorneys Brian Steel, Earnest H. Delong, Jr., and Jerry Thomas

which contained attorney notes regarding litigation.  (Doc. 89, Ex. A).  The Court finds

that the work-product privilege is inapplicable here.  The work-product privilege does not

give an attorney the right to withhold documents from his own clients.  *Martin v. Valley*

*Nat'l Bank*, 140 F.R.D. 291, 320 (S.D.N.Y.1991)(citations omitted); *see also In re:*

*Kaleidoscope, Inc.*, 15 B.R. 232, 244 (Bankr. N.D. Ga. 1981), *rev'd on other grounds* 25

B.R. 729 (N.D. Ga. 1982), (observing that "the doctrine of 'work product' has no

application to the situation in which a *client*, or the legal successor-in-interest to a former

client, seeks to obtain documents and other things created or amassed by an attorney

during the course of that attorney's representation of that client).  The work product

privilege is intended to protect an attorney's work product from invasion by adversaries,

---

[7] The federal work-product privilege is codified in Federal Rule of Civil Procedure 26(b)(3), which states the following:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

not clients.  *See*  *S.N. Phelps & Co. v. Circle K Corp.* (*In re: Circle K Corp.*)(noting that

the purpose of the work-product privilege is to protect the adversary system rather than

confidential communications).  Given the purpose of the work-product privilege and the

context in which it is now being asserted, the Court does not find that the law permits the

Defendants to protect such documents from the scrutiny of their own former client.

### III.  CONCLUSION

For the reasons above expressed the two facsimiles from Rudolph Terry are not

protected by the attorney-client privilege or the work-product privilege.  Accordingly, the

Plaintiff's Motion to Compel Production of Documents is hereby GRANTED. (Doc. 89).

The Court will enter an Order consistent with the conclusions of law set forth in this

Memorandum Decision by way of a separate document.

Done this 30th day of September, 2005.


/s/ William R. Sawyer
United States Bankruptcy Judge


Brent B. Barriere, Attorney for Plaintiff
J. Flyn Mozingo,
Robert F. Northcutt, Attorneys for Defendants

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:                                              Case No. 03-32063

TERRY MANUFACTURING
COMPANY INC.,

     Debtor.


In re:                                              Case No. 03-32213

TERRY UNIFORM
COMPANY, LLC,


     Debtor.

J. LESTER ALEXANDER III,                            Adv. Pro. No. 04-3135
TRUSTEE OF TERRY
MANUFACTURING COMPANY, INC.
AND TERRY UNIFORM COMPANY,
LLC

     Plaintiff,

v.

DELONG, CALDWELL, NOVOTNY,
& BRIDGERS, LLC, et. al.

     Defendants.


## ORDER ON MOTION TO COMPEL PRODUCTION OF DOCUMENTS


     For the reasons set forth in the Court's Memorandum Decision of this date, the objection of the Defendants is **OVERRULED** and the Plaintiff's Motion to Compel Production of Documents Improperly Withheld as Privileged is **GRANTED**. (Doc. 89 Ex A).  In accordance with this Order the Defendants shall produce the requested documents to the Plaintiff **within twenty (20) days** of the date of this Order.

Done this 30th day of September, 2005.

/s/ William R. Sawyer
United States Bankruptcy Judge

Brent B. Barriere, Attorney for Plaintiff
J. Flyn Mozingo,
Robert F. Northcutt, Attorneys for Defendant

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 03-32063 |
| | Chapter 7 |
| TERRY MANUFACTURING COMPANY, INC., | |
|       Debtor. | |
| | |
| In re | Case No. 03-32213 |
| | Chapter 7 |
| TERRY UNIFORM COMPANY, LLC, | |
|       Debtor. | |
| | |
| J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. & TERRY UNIFORM COMPANY, LLC, | Adv. Pro. No. 04-03135 |
|       Plaintiff, | |
|     v. | |
| DELONG, CLADWELL, NOVOTNY, & BRIDGERS, LLC; DELONG, CALDWELL, LOGUE & WISEBRAM; DELONG & CALDWELL, LLC; and EARNEST H. DELONG, JR. | |
|       Defendants. | |

## <u>ORDER DENYING MOTION FOR SUMMARY JUDGMENT</u>

For the reasons set forth in the Court's Memorandum Decision of this date, the

Defendant's Motion for Summary Judgment is DENIED.  The issues are subject to trial.

Done this the 2nd day of November, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 03-32063 |
| | Chapter 7 |
| TERRY MANUFACTURING COMPANY, INC., | |
| Debtor. | |

| | |
|---|---|
| In re | Case No. 03-32213 |
| | Chapter 7 |
| TERRY UNIFORM COMPANY, LLC, | |
| Debtor. | |

| | |
|---|---|
| J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. and TERRY UNIFORM COMPANY, LLC, | Adv. Pro. No. 04-03135 |
| Plaintiff, | |
| v. | |
| DELONG, CALDWELL, NOVOTNY, & BRIDGERS, LLC; DELONG, CALDWELL, LOGUE & WISEBRAM; DELONG & CALDWELL, LLC; and EARNEST H. DELONG, JR. | |
| Defendants. | |

### <u>MEMORANDUM DECISION</u>

This Adversary Proceeding is before the Court upon the Motion for Summary

Judgment filed by the Defendants, DeLong, Caldwell, Novotny & Bridgers, LLC, and

Earnest H. DeLong, Jr., (hereinafter "Defendants").  The Plaintiff, the bankruptcy Trustee

J. Lester Alexander, III (hereinafter "Trustee") filed an opposition to the summary judgment motion.  (Doc. 156).  Both parties have briefed the issues.  (Docs. 126, 156). Upon consideration of the pleadings, memorandums of law, statements of facts, and supporting declarations submitted by the parties, the Court finds that there are genuine issues of material facts with respect to the Trustee's four causes of action against the Defendants: legal malpractice, fraudulent conveyance, avoidance of fraudulent conveyances, and avoidance of preferential transfers.  For the reasons explained below, Defendants' Motion for Summary Judgment is DENIED.

## I. FACTS

Terry Manufacturing, the debtor in the underlying bankruptcy case, was an Alabama corporation owned by two brothers, Roy and Rudolph Terry.  In late 1999, Terry Manufacturing was sued by Commercial Factors of Atlanta in the Superior Court of Gwinnett County, Georgia.  It appears from the Court's record that in January of 2000, Terry Manufacturing hired Mr. DeLong and Mr. Thomas of the law firm DeLong & Caldwell to represent it in the Commercial Factors litigation.[1]  There is a factual dispute as to whether just the two attorneys or the entire law firm were retained to represent Terry Manufacturing.  The Defendants contend that only Mr. DeLong and Mr. Thomas were retained and that the Terry brothers never intended to hire the law firm DeLong & Caldwell.  (DeLong Decl. ¶ 9, Doc. 128; Rudolph Terry Decl. ¶ 28, Doc. 130).  The Trustee disputes this, arguing that the law firm, and not just Mr. DeLong and Mr. Thomas, represented Terry Manufacturing.  (Trustee's Facts ¶ 3, Doc. 156).  Terry

---

[1] The law firm of DeLong, Caldwell, Novotny & Bridgers, the Defendant in this Adversary Proceeding, is the successor law firm of DeLong & Caldwell and DeLong, Caldwell, Logue & Wisebram.

Manufacturing was represented by Mr. DeLong until June 2003, when Terry Manufacturing filed for bankruptcy.

In this Adversary Proceeding, the Trustee asserts claims against the Defendants for legal malpractice, fraudulent conveyance, and avoidance of fraudulent and preferential transfers. (Doc. 161). Having reviewed the evidentiary submissions of the parties, particularly the two Statements of Facts submitted by both parties (Docs. 127, 156) and the Declarations submitted by Earnest DeLong, Jr. (Doc. 128), Roy Terry (Doc. 129), and Rudolph Terry (Doc. 130), it is apparent that many of the material facts are in dispute, precluding an award of summary judgment. The following facts appear to be disputed: First, the Trustee and the Defendants dispute whether Mr. DeLong informed the Terry brothers of the potential conflict of interest and whether the conflict was waived. Second, the Trustee and the Defendants also dispute whether the payments made to the Defendants were in exchange for substantially equivalent value and whether the Trustee can avoid the payments. Last, the Trustee and the Defendants dispute whether the payments were made to an insider or made in the ordinary course of business. The disputed material facts are discussed in more detail below. These disputed facts must be resolved at trial before the Court can dispose of this Adversary Proceeding.

## II. CONCLUSIONS OF LAW

The Court has jurisdiction to hear this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b). This Adversary Proceeding asserts both core and non-core claims under 28 U.S.C. § 157(b)(2). This Adversary Proceeding is before the Court on Defendants' Motion for Summary Judgment. (Doc. 125).

### A. Summary Judgment

Summary judgment is only proper when there are no genuine issues of material facts and the moving party is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56, made applicable to Adversary Proceedings pursuant to FED. R. BANKR. P. 7056.  Rule 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c).  "When a party moves for summary judgment, the court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party." Thomas v. Gulf Coast Credit Servs., Inc., 214 F.Supp.2d 1228, 1231 (M.D. Ala. 2002).  The court does not "weigh the evidence to determine the truth of the matter, but solely determines whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

The initial burden is on the moving party to prove that there are no material facts in dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-moving party to establish that there are material facts in dispute.  Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence presented." Thomas, 214 F.Supp.2d at 1231.  If there are any material facts in dispute, summary judgment must be denied.  Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983).  In this Adversary Proceeding, as set forth in the discussion of the facts above,

the Court finds that material facts are in dispute, thereby precluding an award of summary judgment.

### B. Trustee's Claim Against Defendants for Legal Malpractice

The Trustee's first count against the Defendants is for legal malpractice under Georgia Law and the Alabama Legal Services Liability Act (ALSLA).[2]  In support of the motion for summary judgment, the Defendants argue that Mr. DeLong is not subject to ALSLA, because he is not licensed to practice law by the State of Alabama.  However, ALSLA provides that it applies to "[a]nyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama."  ALA. CODE § 6-5-72(2) (emphasis added).  The Court has already determined that Mr. DeLong engaged in the practice of law "as counsel of record in at least three separate cases in Alabama courts."  (July 22, 2005 Mem. Decision p. 5, Doc. 76).  Therefore, the Defendants' argument that they are entitled to summary judgment as to the Trustee's first count is without merit.

The Trustee's malpractice claims against the Defendants are based on the Trustee's assertion that Terry Manufacturing did not waive the conflict of interest.  The Defendants claim, both in their Statement of Facts and through declarations, that the Terry brothers were aware of the conflict and effectively waived the conflict.  (DeLong Decl. ¶ 11–19, Doc. 128; Rudolph Terry Decl. ¶ 10-19, Doc. 130).  The Defendants assert that Mr. DeLong informed the Terry brothers of the conflict of interest that existed by representing both Terry Manufacturing and Rudolph Terry.[3]  (Id.).  The Defendants

---

[2] See ALA. CODE § 6-5-70 et seq.

further assert that Mr. DeLong counseled the Terry brothers to seek the advice of another attorney regarding the conflict.  (Id.).  Mr. DeLong and Roy and Rudolph Terry assert, through declarations, that they declined to seek independent legal advice and waived the conflict through informed consent.  (Id.).

It appears undisputed that a conflict of interest existed in Mr. DeLong's representation of both Terry Manufacturing and Rudolph Terry.  (DeLong Decl. ¶ 11, Doc. 128).  The Trustee argues that the records contain no indication that Mr. DeLong ever informed the Terry brothers of the conflict or that a waiver was ever executed. (Trustee's Facts ¶ 14-17, Doc. 156).  This discrepancy is evidence of disputed facts, which must be determined at trial.

### C. Trustee's Claims Against Defendants to Avoid Fraudulent Conveyances

The Trustee's second claim against the Defendants is for fraudulent conveyances under ALA. CODE § 8-9A-5 and GA. CODE ANN. § 18-2-74, and the Trustee's third claim is to avoid the fraudulent conveyances pursuant to 11 U.S.C. § 548.  Section 548 of the Bankruptcy Code, as it stood at the time this proceeding was filed,[4] allows a trustee to avoid any transfer made by the debtor within one year of filing bankruptcy, if the transfer was for less than reasonably equivalent value and the debtor was insolvent at the time of

---

[3] A conflict of interest existed, because Terry Manufacturing and Rudolph Terry were both named as defendants in the Commercial Factors litigation.  Mr. DeLong, in representing both Rudolph Terry and Terry Manufacturing, filed a motion for summary judgment on behalf of Terry Manufacturing, whereby he asserted that Rudolph Terry was acting outside the scope of his employment when he committed fraud.  (DeLong Decl. ¶ 20-22, Doc. 128).

[4] Section 548 of the Bankruptcy Code was amended effective October 17, 2005, pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. No. 109-8) (BAPCPA).  As both the underlying bankruptcy case and this Adversary Proceeding were filed prior to the effective date of BAPCPA, the amendments do not apply here.

the transfer.[5]  11 U.S.C. § 548(a)(1).

The Trustee claims that within one year of filing for bankruptcy, Terry Manufacturing made payments of approximately $860,998.54 to the Defendants but received either no value or substantially less value than the amount of the payments. (Pl.'s Am. Compl. ¶ 25-27, Doc. 161).  The Defendants not only dispute the amount of the payments, but argue that any payments were attorney's fees for work performed by Mr. DeLong on behalf of Terry Manufacturing.  (DeLong Decl. ¶ 30-31, Doc. 128).  The Defendants further assert that Terry Manufacturing received significant value for the payments in the form of legal work performed over a three year period, totaling over 1,900 billable hours of work.  (Id.).  For support, the Defendants refer to the complexity of the litigation, the length of time spent, and the experience of Mr. DeLong.

The crux of these claims is whether the legal work performed by the Defendants was reasonably equivalent in value to the payments made by Terry Manufacturing to the Defendants.[6]  Whether the payments were made in exchange for legal work of

---

[5] At the time this Adversary Proceeding was filed, the relevant subparts of § 548 provided:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

11 U.S.C. § 548(a)(1)(B)

[6] Both the Alabama and Georgia fraudulent conveyance acts require the plaintiff to prove that the transfers or payments were given without receiving reasonably equivalent value.

"reasonably equivalent value" is necessarily a factual issue.  "Actions to set aside alleged fraudulent conveyances are fact intensive by nature. Thus, the Court is hesitant to decide such matters at the summary judgment stage of litigation."  Tidwell v. Gilbert (In re Grimes), 1997 WL 33419261, at *2 (Bankr. M.D. Ga. Mar. 3, 1997).  Because the value of the services performed by the Defendants in exchange for the payments is in dispute, summary judgment is precluded, and this issue must be resolved at trial.

### D. Trustee's Claims Against Defendants to Avoid Preferential Transfers

The Trustee's fourth claim against the Defendants is to avoid preferential transfers under 11 U.S.C. § 547.  Pursuant to § 547(b), a trustee may avoid a preferential transfer made within one year of filing for bankruptcy if the transfer was made to an "insider" within the meaning of § 101(31).[7]  11 U.S.C. § 547(b).  However, the trustee has no authority to avoid a transfer that falls within one of the nine exceptions enumerated in § 547(c). Particularly significant to this litigation is whether the payments were made to the Defendants in the ordinary course of business pursuant to § 547(c)(2),

---

See GA. CODE ANN. § 18-2-74(a)(2) (stating that a transfer by the debtor is fraudulent if the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer . . ."); ALA. CODE § 8-9A-5(a) (stating that a transfer made by a debtor is fraudulent "if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer . . .").  Furthermore, 11 U.S.C. § 548(a)(1)(B) provides that a trustee may avoid a fraudulent transfer if the debtor "received less than a reasonably equivalent value in exchange for such transfer . . ."

[7] The relevant subparts of § 101(31) provide:

> The term "insider" includes--
> (B) if the debtor is a corporation-- (i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor.

11 U.S.C. § 101(31)(B).

which provides that transfers made in the ordinary course of business are unavoidable.[8]

The Trustee asserts that because the payments were made to an insider during the one year period prior to filing the bankruptcy petition, they constituted avoidable preferences. The Defendants argue that Mr. DeLong was not an "insider" within the meaning of § 101(31). (DeLong Decl. ¶ 37-38, Doc. 128). The Defendants also seek shelter under § 547(c)(2), claiming that all payments were made in the ordinary course of business and are, therefore, unavoidable. (Defs.' Mem. Supp. Summ. J. 41, Doc. 126). The Trustee does not dispute the truth of the Defendants' assertion, but argues that the Defendants have offered no evidence about the ordinary course of business for similar law firms. (Pl.'s Opp'n Summ. J. 21, Doc. 156). The Trustee contends that the Defendants' failure to prove that the elements of § 547(c)(2) are met precludes summary judgment.

The Court agrees with the Trustee and finds that a genuine issue of material fact exists as to whether the payments were made to the Defendants in the ordinary course of business. "Generally, the defense provided by § 547(c)(2) is not suitable for determination by summary judgment." Osborne v. Howell Elec. Motors (In re Fultonville Metal Prods. Co.), 330 B.R. 305, 311 (Bankr. M.D. Fla. 2005). Because the

---

[8] As discussed in note 4, the BAPCPA Amendments to § 547(c) do not apply to this action. Section 547(c)(2), as it stood at the time this action was filed, provides:

> The trustee may not avoid under this section a transfer . . .
> (2) to the extent that such transfer was
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

Defendants' § 547(c)(2) defense is necessarily fact determinative, it must be decided at trial.

### III. CONCLUSION

Based on the foregoing, the Court denies Defendant's Motion for Summary Judgment as to all four claims, because there are genuine issues of material facts in dispute.

Done this the 2nd day of November, 2006.

/s/ William R. Sawyer
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TERRY MANUFACTURING** | ) | **CASE NO.  03-32063-WRS** |
| **COMPANY, INC.** | ) | |
| | ) | **CHAPTER 7** |
| Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CASE NO.  03-32213-WRS** |
| **TERRY UNIFORM** | ) | |
| **COMPANY, LLC,** | ) | **CHAPTER 7** |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| **J. LESTER ALEXANDER, III,** | ) | |
| **TRUSTEE OF TERRY** | ) | |
| **MANUFACTURING COMPANY, INC.** | ) | |
| **AND TERRY UNIFORM** | ) | |
| **COMPANY, LLC** | ) | **ADVERSARY PROCEEDING** |
| | ) | **NO. 04-03135** |
| **VERSUS** | ) | |
| | ) | |
| **DELONG, CALDWELL, NOVOTNY,** | ) | |
| **& BRIDGERS, L.L.C. , DELONG** | ) | |
| **CALDWELL LOGUE & WISEBRAM,** | ) | |
| **DELONG & CALDWELL, L.L.C.** | ) | |
| **AND EARNEST H. DELONG, JR.** | ) | |

**SUMMARY OF TRUSTEE'S CONTENTIONS  DISCLOSURES PURSUANT TO RULE
7026(a)(3) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Pursuant to Rule 7026(a)(3) of the Federal Rules of Bankruptcy Procedure, which

incorporates by reference Rule 26 of the Federal Rules of Civil Procedure, J. Lester Alexander,

III, the duly appointed and acting Trustee of Terry Manufacturing Company, Inc. ("Terry Manufacturing") and Terry Uniform Company, LLC ("Terry Uniform"), through undersigned counsel, hereby submits the following pretrial disclosures:

1.

By this action, the Trustee seeks to recover the sum of $460,998.54 from defendants Earnest H. DeLong, Jr.; DeLong, Caldwell, Novotny & Bridgers, LLC; DeLong, Caldwell, Logue and Wisebram, LLC and DeLong & Caldwell, LLC (collectively the "DeLong Defendants"). That sum represents the total of payments by Terry Manufacturing Company, Inc. in satisfaction of statements purportedly representing legal services rendered to Terry Manufacturing and Rudolph Terry in litigation styled *Commercial Factors of Atlanta, Inc. v. Terry Manufacturing Company, Inc., Floodgates, Ltd. and John L. Pouncey*, 99-A-10650-5 in the Superior Court of Gwinnett County, State of Georgia (the "Commercial Factors Litigation"). The Trustee seeks recovery on the theory that the DeLong Defendants committed legal malpractice and breached legal duties owed to Terry Manufacturing by simultaneous representation of Terry Manufacturing and Rudolph Terry when their interests were in direct conflict; a conflict which could not be, and, in fact was not effectively waived. Alternatively, the Trustee seeks recovery because the payments constitute avoidable fraudulent conveyances recoverable under the Alabama Fraudulent Transfer Act, Alabama Code 1975 §§ 8-9A-1, et seq. including, in particular, Alabama Code 1975 § 8-9A-4(a) and (c) and Alabama Code 1975 § 8-9A-5(a). To the extent the law of the State of Georgia applies in this action, the transfers also constitute fraudulent conveyance within the meaning of the Georgia Fraudulent Transfer Act (Georgia Code, Title 18, Chapter 2, Article 4). With respect to those amounts paid to the

NO.99750889.1

Defendants by Terry Manufacturing between July 7, 2002 and July 7, 2003 (the date Terry Manufacturing filed for relief under Chapter 11), the Trustee is also entitled to recovery pursuant to 11 U.S.C. § 547(a)(1)(A) and (B).

2.

The Commercial Factors Litigation arose out of a factoring fraud scheme perpetrated on plaintiff, Commercial Factors, by Jon Pouncey and Rudolph Terry. In essence, Pouncey's company, Floodgates, Ltd., generated invoices purporting to represent sales of t-shirts and other apparel to Terry Manufacturing and for delivery at its Atlanta facility. Rudolph Terry executed bills of lading, acceptances and acknowledgements of delivery for this product. Pouncey then sold these invoices at a discount to Commercial Factors. In fact, the invoices generated by Pouncey and the documentation generated by Rudolph Terry were bogus as no product was actually transferred by Floodgates to Terry Manufacturing.

3.

Typical of the factoring fraud is the September, 1999 transaction which resulted in Rudolph Terry's conviction for mail fraud. Floodgates issued multiple invoices to Terry Manufacturing representing sales of $2,294,195.00 of product. Rudolph Terry executed an acknowledgement of delivery of the product which stated in relevant part "[(t)he above signed acknowledges receipt and acceptance of the goods reflected in the invoices attached. I am aware that Commercial Factors of Atlanta is relying on my verification to advance Floodgates, Ltd. …" The invoices were then factored to Commercial Factors for 80% of the face amount. In fact, Floodgates had not delivered any product to Terry Manufacturing and Rudolph Terry's acknowledgement was false.

4.

An analysis generated by an expert engaged by the DeLong Defendants and reviewed by Rudolph Terry, determined Commercial Factors advanced $11,161,355.00 on the bogus invoices. Terry Manufacturing in turn paid to Commercial Factors and/or Pouncey and Floodgates $10,560,766.00.

5.

The fundamental flaw in the factoring scheme is that Commercial Factors advanced approximately 80% of the face amount of the invoices but Terry Manufacturing was required to pay 100%. As a result of this deficiency, by the fourth quarter of 1999, Terry Manufacturing was seriously delinquent in amounts owed to Commercial Factors. Pouncey and Floodgates were also liable for this amount pursuant to guaranties given in favor of Commercial Factors.

6.

During the month of December, 1999, Rudolph Terry negotiated with representatives of Commercial Factors concerning a pay-off of more than $2,000,000.00 purportedly owed by Terry Manufacturing. Given his awareness of the unlawful scheme, Rudolph was highly secretive about these negotiations. Ultimately, the negotiations failed and Commercial Factors proceeded with the litigation.

7.

At the time it filed its initial complaint, Commercial Factors was not aware of the factoring fraud scheme, and its initial complaint outlined a garden variety collection claim. Terry Manufacturing, Pouncey and Floodgates were named as defendants.

-4-

8.

Earnest DeLong was contacted concerning representation of Terry Manufacturing and its officers, directors and shareholders.  In early January, 2000, DeLong & Caldwell, LLC issued an engagement letter to Rudolph Terry which referenced the Commercial Factors Litigation and provided in relevant part:

> This letter is intended to memorialize the understanding we have reached.  Jerry Thomas and I [Earnest DeLong] have been engaged to represent the interests of Terry Manufacturing Company, Inc., its officers, directors and shareholders in the defense of the above-referenced matter.

9.

In correspondence issued to counsel for Commercial Factors in the first quarter of 2000 and in pleadings filed in the Commercial Factors Litigation, DeLong repeatedly admitted that Terry Manufacturing was indebted to Commercial Factors in an amount in excess of $2,000,000, and that Terry Manufacturing was prepared to pay that amount but it required a payment schedule.

10.

Mr. DeLong and his law firm were initially engaged in January, 2000, and continued to represent Terry Manufacturing through the time of its Chapter 11 filing on July 7, 2003.  At no time did he obtain a written waiver of conflict of interest from Terry Manufacturing or Rudolph Terry.  Likewise, the DeLong Defendants never issued any writing addressing any potential or actual conflict.

-5-

11.

Following Terry Manufacturing's Chapter 11 filing, the DeLong Defendants represented Rudolph Terry and other Terry family members in the Terry Manufacturing Chapter 11 case and other Alabama litigation filed by creditors of Terry Manufacturing.

12.

All fees paid to the DeLong Defendants were paid by Terry Manufacturing. All statements paid by Terry Manufacturing were issued by DeLong & Caldwell, LLC. During the period in question, the Commercial Factors Litigation was Mr. DeLong's most lucrative engagement.

13.

Commercial Factors sought to take discovery from Mr. Pouncey concerning the source of the product he purportedly sold to Terry Manufacturing. Mr. Pouncey stonewalled. After the state trial court issued an order directing he respond to that discovery, Pouncey and Floodgates sought protection under the Bankruptcy Code in an effort to stay compliance with the state court's discovery order. Commercial Factors then sought Pouncey's examination under Bankruptcy Rule 2004. In that examination, Pouncey claimed that he obtained product from a source in South Carolina, RGB, which could not be identified due to some unwritten confidentiality agreement. Commercial Factors then initiated contempt proceedings before the Bankruptcy Court in Atlanta. At the hearing before the Bankruptcy Court, Pouncey acknowledged that he committed perjury and admitted to the fraudulent scheme including Rudolph Terry's critical role in the provision of bogus bills of lading and related

NO.99750889.1

acknowledgements. Mr. Pouncey then appeared for another 2004 examination on June 27, 2000 and confirmed the particulars of the fraudulent scheme including Rudolph Terry's role.

14.

As a result of the disclosure by Mr. Pouncey, the DeLong Defendants were aware by no later than mid-June, 2000, that Rudolph Terry had engaged in conduct which was fraudulent at a minimum and most likely criminal.

15.

At about the same time as Pouncey acknowledged the factoring fraud scheme, counsel for Commercial Factors gave notice that Commercial Factors intended to add Rudolph Terry as an additional defendant. Mr. Terry ultimately was added as an additional defendant, and the DeLong Defendants appeared as his counsel.

16.

Mr. Pouncey was held in civil contempt in June, 2000, and the Bankruptcy Judge referred him for investigation by the United States Trustee and the United States Attorney. In July, counsel for Commercial Factors provided correspondence detailing the criminal conduct of Mr. Pouncey and Mr. Terry. A copy of that letter was received by Mr. DeLong. From that time forward Mr. DeLong knew or should have known that there was a substantial probability that Mr. Terry would be named in a federal criminal indictment. Ultimately, Mr. Terry was indicted and pled guilty to a single count of mail fraud.

NO.99750889.1

17.

In August and September, 2000, Mr. DeLong yet again acknowledged to the state court and opposing counsel that Terry Manufacturing owed well in excess of $2,000,000.00 to Commercial Factors, and attempted to obtain a settlement by which Terry Manufacturing would pay Commercial Factors more than $2,000,000.00 in installments.  There were discussions with counsel for Commercial Factors which resulted in some understanding as to possible terms. Ultimately, Commercial Factors refused to proceed with the settlement.  Mr. DeLong then attempted to obtain a court order enforcing a settlement.  That motion was denied.

18.

Rudolph Terry was deposed in the Spring of 2000.  At that time, he repeatedly testified that Terry Manufacturing had acquired product from Floodgates and then re-sold that product to multiple clients, none of whom he could identify.  That testimony was false.  The deposition continued in October, 2000.  At that time, Mr. Terry claimed that the dealings with Pouncey and Floodgates were his "personal business" and that no one else in the company was involved. Accordingly, as of October, 2000, the DeLong Defendants were representing both Terry Manufacturing and Rudolph Terry despite the fact that (i) at Rudolph's insistence, he attempted to compel a settlement by which Terry Manufacturing would pay more than $2,000,000.00 for product it never received; (ii) Rudolph Terry had engaged in conduct which would lead to his criminal conviction and which by his own admission was his "personal business;" and (iii) Rudolph Terry apparently committed perjury.

-8-

19.

When efforts to compel a settlement failed, the approach in the litigation changed dramatically. No longer would Terry Manufacturing admit that it owed the funds. Instead, the story became that Rudolph Terry had agreed to pay millions of dollars to Commercial Factors because of concerns that Commercial Factors was controlled by members of the Mafia and that Rudolph Terry's safety and that of his family would be at risk if he did not arrange for millions of dollars in cash payments.

20.

Rudolph Terry was not entitled to indemnity, nor payment of his attorney's fees under Terry Manufacturing's By-Laws or Articles of Incorporation. None of the DeLong Defendants ever consulted with Terry Manufacturing concerning its indemnity obligations.

21.

In the summer of 2001, Commercial Factors attempted to depose Richard Rose and to obtain from him the audited financial statements that he prepared for Terry Manufacturing and all work papers supporting those financial statements.

22.

Had Mr. Rose produced the financial statements and work papers, it would have likely resulted in disclosure that the financial statements were grossly fraudulent and that work papers either did not exist or had been forged. As a result, Mr. Rose, in cooperation with Rudolph Terry and the DeLong Defendants, asserted an accountant privilege and refused to produce the subpoenaed documents. Hundreds of hours and tens of thousands of attorneys' fees were

invested in an effort to avoid disclosure of financial statements and work papers including multiple hearings before the state trial court and an appeal to the Georgia appellate court.

23.

This massive effort to avoid discovery with respect to Terry Manufacturing's financial statements was intended, and ultimately had the effect of insuring that other creditors of the Company would not learn of the Company's financial insolvency or that the financial statements circulated to lenders, preferred shareholders and other creditors were fraudulent.

24.

Rudolph Terry and John Pouncey were indicted in January of 2005 and both pled guilty to mail fraud.  Following Mr. Terry's indictment, the DeLong Defendants first raised the defense that, if Mr. Terry had acted as alleged by Commercial Factors, that conduct did not benefit Terry Manufacturing, violated company policy and was outside the scope of his employment.  Plainly, these defenses could have been raised when Rudolph Terry was originally named as a defendant, but the DeLong Defendants were precluded from doing so because of the dual representation.

25.

The interests of Terry Manufacturing and Rudolph Terry were in direct conflict.  The DeLong Defendants never advised the two clients of the conflict in writing and never obtained a written waiver all as required by applicable Georgia law.  In fact, the conflict between the interests of Rudolph Terry and Terry Manufacturing was so fundamental that the conflict could not be effectively waived.

-10-

26.

The DeLong Defendants conducted the defense of the Commercial Factors Litigation in a manner which was either adverse or indifferent to the interests of Terry Manufacturing. While Terry Manufacturing paid all statements, Rudolph Terry was the real client -- virtually all communications were with him and the defense strategy focused on protecting his individual interests.

27.

Because of its dual loyalties, the DeLong Defendants failed to represent Terry Manufacturing as would a competent attorney whose only loyalty was owed to the Company. By way of illustration only:

> (a) Terry Manufacturing would not have aggressively pursued a strategy to pay more than $2,000,000.00 that it did not owe to Commercial Factors.

> (b) Terry Manufacturing would have been free to assert timely that Rudolph Terry was solely engaged in his "personal business," acted outside the scope of his employment and in a manner adverse to company policy.

> (c) Terry Manufacturing would have received meaningful advice with respect to its indemnity obligations and would not have paid Rudolph Terry's legal fees.

> (d) Terry Manufacturing would have received timely and meaningful written advice that Rudolph Terry committed perjury and had engaged in criminal conduct.

28.

The DeLong Defendants' simultaneous representation of Terry Manufacturing and Rudolph Terry violated Georgia's Canons of Ethics and Rules of Professional Conduct. The

NO.99750889.1

simultaneous representation also violated the fiduciary and legal duties owed by the DeLong Defendants to Terry Manufacturing. The appropriate remedy is the disgorgement of all amounts paid to the DeLong Defendants by Terry Manufacturing.

29.

Terry Manufacturing was insolvent throughout the period it made payments to the DeLong Defendants. The amount of its liabilities substantially exceeded the fair value of its assets; it had inadequate capital and it incurred debts beyond its ability to pay timely.

30.

Multiple persons were creditors of Terry Manufacturing before it made the first payment to the DeLong Defendants and remained creditors at the time it filed for Chapter 11 relief.

31.

Earnest DeLong is a member of DeLong, Caldwell, Novotny & Bridgers, LLC; DeLong, Caldwell, Logue & Wisebram and DeLong & Caldwell, LLC. The three purported LLCs should be deemed a single business entity. Also, to the extent any of those three entities did not conduct its affairs as a limited liability company (including making necessary filings with the Georgia Secretary of State), that entity is deemed a general partnership and each member is a general partner. Under Georgia law, each of the partners is liable for all of the debts of the partnership.

32.

The DeLong Defendants are jointly and severally liable for whatever damages may be awarded to the Trustee.

-12-

33.

Under applicable Georgia law, the Trustee is also entitled to reasonable attorneys' fees incurred in this litigation and pre-judgment interest.

Respectfully submitted this 12th day of January, 2007.

Respectfully submitted,

By:    /s/    Brent B. Barriere
      Brent B. Barriere, T.A.  (La. Bar No. 2818)
      David L. Patrón (La. Bar No. 22566)
      Catherine E. Lasky (La. Bar No. 28652)
      **PHELPS DUNBAR LLP**
      Canal Place
      365 Canal Street • Suite 2000
      New Orleans, Louisiana  70130-6534
      Telephone:  (504) 566-1311
      Facsimile:  (504) 568-9130

      **ATTORNEYS FOR  J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been filed into the record and further served on the following counsel by facsimile, this 12th day of January, 2007:

Earnest H. DeLong, Jr.
DeLong, Caldwell & Bridgers LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

      /s/ Catherine E. Lasky

-13-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                    )
                                          )
TERRY MANUFACTURING                       )    CASE NO.  03-32063-WRS
   COMPANY, INC.                          )
                                          )    CHAPTER 7
   Debtor                                 )
                                          )
_____

IN RE:                                    )
                                          )    CASE NO.  03-32213-WRS
TERRY UNIFORM                             )
   COMPANY, LLC,                          )    CHAPTER 7
                                          )
   Debtor.                                )
_____

J. LESTER ALEXANDER, III,                 )
TRUSTEE OF TERRY                          )
MANUFACTURING COMPANY, INC.               )
AND TERRY UNIFORM                         )
COMPANY, LLC                              )    ADVERSARY PROCEEDING
                                          )    NO.  04-03135
VERSUS                                    )
                                          )
DELONG, CALDWELL, NOVOTNY,                )
& BRIDGERS, L.L.C. , DELONG               )
CALDWELL LOGUE & WISEBRAM,                )
DELONG & CALDWELL, L.L.C.                 )
AND EARNEST H. DELONG, JR.                )

## STIPULATIONS

NOW INTO COURT, through undersigned counsel, comes plaintiff, J. Lester Alexander,

III, the duly appointed and acting Chapter 7 Trustee (the "Trustee") of Terry Manufacturing

Company, Inc. ("Terry Manufacturing") and Terry Uniform Company, LLC ("Terry Uniform"),

and defendants, DeLong Caldwell Novotny & Bridgers, LLC; DeLong, Caldwell, Logue &

Wisebram, LLC; DeLong & Caldwell, LLC and Earnest H. DeLong, Jr. (sometimes hereinafter

collectively the "DeLong Defendants") and hereby stipulate to the facts detailed below.  These

stipulated facts shall be considered as conclusively established for all purposes including in

connection with the trial of the Adversary Proceeding, any post-trial motions and other requests for relief and any appeal:

1.

In early January, 2000, Earnest H. DeLong issued an engagement letter to Rudolph Terry which referenced litigation styled *Commercial Factors of Atlanta, Inc. v. Terry Manufacturing Company, Inc., Floodgates, Ltd. and John L. Pouncey*, 99-A-10650-5 in the Superior Court of Gwinnett County, State of Georgia (the "Commercial Factors Litigation").  The engagement letter provided in relevant part:

> This letter is intended to memorialize the understanding we have reached.  Jerry Thomas and I [Earnest DeLong] have been engaged to represent the interests of Terry Manufacturing Company, Inc., its officers, directors and shareholders in the defense of the above-referenced matter.

2.

Terry Manufacturing paid $476,233.67 in connection with statements issued for fees and expenses incurred in the defense of the Commercial Factors Litigation.  All of the statements were issued using the billing program of DeLong & Caldwell, LLC.

3.

Earnest DeLong represented Terry Manufacturing and Rudolph Terry in the Commercial Factors litigation.  Neither Mr. DeLong nor any of the other DeLong Defendants ever issued a writing addressing any actual or potential conflict of interest between Terry Manufacturing and

Rudolph Terry.  Neither Terry Manufacturing nor Rudolph Terry ever issued a writing waiving any potential or actual conflict of interest presented by the dual representation.

4.

A number of entities were unsecured creditors of Terry Manufacturing prior to January 18, 2000 (the date on which Terry Manufacturing made the first payment to DeLong & Caldwell) and remained unsecured creditors of Terry Manufacturing as of the date Terry Manufacturing filed for relief under Chapter 11 of the Bankruptcy Code.  These unsecured creditors include American Express, Southern Mills, Arkansas State Highway Employees Retirement System, Arkansas Department of Economic Development, CIT Financial Services, Milliken & Company, Darwood Manufacturing, HLC Industries, Inc., Atlantic Thread & Supply Company, Inc. and Bonifay Manufacturing Company.

5.

Terry Manufacturing was insolvent throughout the period of January 1, 2000 through July 7, 2003, the date on which it filed for relief under Chapter 11 of the Bankruptcy Code. Throughout this time period, the amount of Terry Manufacturing's liabilities exceeded the fair value of its assets.  During the same period, Terry Manufacturing had unreasonably small capital to conduct its business and it incurred debts which it knew, or reasonably should have known, it could not pay timely in accordance with their respective terms.  This should not be deemed or construed as an admission by any Defendant that any of the Defendants had actual or constructive knowledge of the insolvency of Terry Manufacturing at any time prior to the filing by Terry Manufacturing of a petition for relief under Chapter 11 of the Bankruptcy Code.

Respectfully submitted,

By:    /s/    Brent B. Barriere

Brent B. Barriere, T.A.  (La. Bar No. 2818)
David L. Patrón (La. Bar No. 22566)
Catherine E. Lasky (La. Bar No. 28652)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

**ATTORNEYS FOR J. LESTER ALEXANDER, III, TRUSTEE OF TERRY MANUFACTURING COMPANY, INC. AND TERRY UNIFORM COMPANY, LLC**

- AND –

By:    /s/    Earnest H. DeLong, Jr.

Earnest H. DeLong, Jr., Esq.
Charles Bridgers, Esq.
DeLong, Caldwell,& Bridgers LLC
Centennial Tower, Suite 3100
101 Marietta Street N.W.
Atlanta, GA 30303
Telephone:  404-979-3170

**ATTORNEYS FOR  DELONG CALDWELL NOVOTNY & BRIDGERS, LLC, DELONG, CALDWELL, LOGUE & WISEBRAM, LLC, DELONG & CALDWELL, LLC AND EARNEST H. DELONG, JR.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE:                                    )
                                          )
TERRY MANUFACTURING                       )        CASE NO.  03-32063-WRS
    COMPANY, INC.                         )
                                          )        CHAPTER 7
    Debtor                                )
                                          )
_____
IN RE:                                    )
                                          )        CASE NO.  03-32213-WRS
TERRY UNIFORM                             )
    COMPANY, LLC,                         )        CHAPTER 7
                                          )
    Debtor.                               )
_____
J. LESTER ALEXANDER, III,                 )
TRUSTEE OF TERRY                          )
MANUFACTURING COMPANY, INC.               )
AND TERRY UNIFORM                         )
COMPANY, LLC                              )        ADVERSARY PROCEEDING
                                          )        NO.  04-03135
VERSUS                                    )
                                          )
DELONG, CALDWELL, NOVOTNY,                )
& BRIDGERS, L.L.C. , DELONG               )
CALDWELL LOGUE & WISEBRAM,                )
DELONG & CALDWELL, L.L.C.                 )
AND EARNEST H. DELONG, JR.                )

### TRUSTEE'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

NOW INTO COURT, through undersigned counsel, comes J. Lester Alexander, III, the duly

appointed and acting Chapter 7 trustee (the "Trustee") of Terry Manufacturing Company, Inc.

("Terry Manufacturing") and Terry Uniform Company, LLC, ("Terry Uniform"), who

respectfully submits the following proposed Findings of Fact and Conclusions of Law in the above-captioned adversary proceeding and also attaches a proposed form of judgment:

The trial in the above-captioned matter was conducted on January 30 through February 2, 2007.

Appearances:

| | |
|---|---|
| J. Lester Alexander, III, Trustee of Terry Manufacturing Company, Inc. and Terry Uniform Company, LLC | Brent B. Barriere Catherine E. Lasky Phelps Dunbar, LLP |
| DeLong, Caldwell, Novotny & Bridgers LLC; DeLong, Caldwell Logue & Wisebram; DeLong & Caldwell LLC and Earnest H. DeLong, Jr. | Charles Bridgers Earnest H. DeLong, Jr. Michael Caldwell DeLong Caldwell & Bridgers, LLC |

Plaintiff, J. Lester Alexander, III, the duly appointed and acting Trustee of Terry Manufacturing Company, Inc. ("Terry Manufacturing") brings this adversary proceeding against Earnest H. DeLong, Jr.; DeLong, Caldwell, Novotny & Bridgers, LLC; DeLong, Caldwell, Logue and Wisebram, LLC and DeLong & Caldwell, LLC (collectively the "DeLong Defendants") seeking damages arising out of the legal malpractice committed by the DeLong Defendants and their breach of the legal duties owed to Terry Manufacturing by simultaneous representation of Terry Manufacturing and Rudolph Terry when their interests were in direct conflict; a conflict which could not be, and, in fact was not effectively waived. Alternatively, the Trustee seeks recovery because the payments constitute avoidable fraudulent conveyances recoverable under the Alabama Fraudulent Transfer Act, Alabama Code 1975 §§ 8-9A-1, et seq. including, in particular, Alabama Code 1975 § 8-9A-4(a) and (c) and Alabama Code 1975 § 8-9A-5(a). To the extent the law of the State of Georgia applies in this action, the Trustee seeks

NO.99773775.1

avoidance of the payments as fraudulent conveyances within the meaning of the Georgia Fraudulent Transfer Act (Georgia Code, Title 18, Chapter 2, Article 4). With respect to those amounts paid to the Defendants by Terry Manufacturing between July 7, 2002 and July 7, 2003 (the date Terry Manufacturing filed for relief under Chapter 11), the Trustee also seeks recovery pursuant to 11 U.S.C. § 547(a)(1)(A) and (B).

Having heard and considered the stipulated facts, testimony and numerous exhibits introduced at trial, and the argument of counsel, the Court now enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

### Overview

1.     By this adversary proceeding, the Trustee seeks to recover the sum of $476,233.67 from the DeLong Defendants. That sum represents the total of payments by Terry Manufacturing Company, Inc., an Alabama corporation with its principal place of business in Roanoke, Alabama, in satisfaction of statements purportedly representing legal services rendered to Terry Manufacturing and Rudolph Terry in litigation styled *Commercial Factors of Atlanta, Inc. v. Terry Manufacturing Company, Inc., Floodgates, Ltd. and John L. Pouncey*, 99-A-10650-5 in the Superior Court of Gwinnett County, State of Georgia (the "Commercial Factors Litigation").

2.     The Trustee seeks recovery on the theory that the DeLong Defendants committed legal malpractice and breached legal duties owed to Terry Manufacturing by simultaneous representation of Terry Manufacturing and Rudolph Terry when their interests were in direct conflict; a conflict which could not be, and, in fact was not effectively waived. Alternatively, the

Trustee seeks recovery because the payments constitute avoidable fraudulent conveyances recoverable under the Alabama Fraudulent Transfer Act, Alabama Code 1975 §§ 8-9A-1, et seq. including, in particular, Alabama Code 1975 § 8-9A-4(a) and (c) and Alabama Code 1975 § 8-9A-5(a). To the extent the law of the State of Georgia applies in this action, the transfers also constitute fraudulent conveyance within the meaning of the Georgia Fraudulent Transfer Act (Georgia Code, Title 18, Chapter 2, Article 4). With respect to those amounts paid to the Defendants by Terry Manufacturing between July 7, 2002 and July 7, 2003 (the date Terry Manufacturing filed for relief under Chapter 11), the Trustee is also entitled to recovery pursuant to 11 U.S.C. § 547(a)(1)(A) and (B).

3.    Terry Manufacturing filed a Voluntary Petition for Reorganization under Chapter 11 of the Bankruptcy Code on July 7, 2003. Shortly after that filing, J. Lester Alexander was appointed Chapter 11 trustee. He determined that Terry Manufacturing was hopelessly insolvent and it could not reorganize as an operating entity. The Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code on May 8, 2004, and Mr. Alexander was appointed Chapter 7 Trustee.

4.    Prior to its Chapter 11 filing, Terry Manufacturing appeared to be a successful manufacturer of uniforms and sportswear. It is now apparent that was an illusion and that Terry Manufacturing was grossly insolvent. Claims exceeding $60,000,000 have been asserted in the Chapter 7 case. Both Roy and Rudolph Terry have pled guilty to federal criminal indictments arising out of the demise of the company.

**Commercial Factors Litigation**

-4-

5.    The Commercial Factors Litigation arose out of a factoring fraud scheme perpetrated on plaintiff, Commercial Factors, by Jon Pouncey and Rudolph Terry.  In essence, Pouncey's company, Floodgates, Ltd., generated invoices purporting to represent sales of t-shirts and other apparel to Terry Manufacturing and for delivery at its Atlanta facility.  Rudolph Terry executed bills of lading, acceptances and acknowledgements of delivery for this product. Pouncey then sold these invoices at a discount to Commercial Factors.  In fact, the invoices generated by Pouncey and the documentation generated by Rudolph Terry were bogus as no product was actually transferred by Floodgates to Terry Manufacturing.

6.    Typical of the factoring fraud is the September, 1999 transaction which resulted in Rudolph Terry's conviction for mail fraud.  Floodgates issued multiple invoices to Terry Manufacturing representing sales of $2,294,195.00 of product.  Rudolph Terry executed an acknowledgement of delivery of the product which stated in relevant part "(t)he above signed acknowledges receipt and acceptance of the goods reflected in the invoices attached.  I am aware that Commercial Factors of Atlanta is relying on my verification to advance Floodgates, Ltd. …" The invoices were then factored to Commercial Factors for 80% of the face amount.  In fact, Floodgates had not delivered any product to Terry Manufacturing and Rudolph Terry's acknowledgement was false.  *See* Exhibit 71.

7.    An analysis generated by an expert engaged by the DeLong Defendants and reviewed by Rudolph Terry, determined Commercial Factors advanced $11,161,355.00 on the bogus invoices.  Terry Manufacturing in turn paid to Commercial Factors and/or Pouncey and Floodgates $10,560,766.00.  *See* Exhibit 74.

-5-

8. The fundamental flaw in the factoring scheme is that Commercial Factors advanced approximately 80% of the face amount of the invoices but Terry Manufacturing was required to pay 100%. As a result of this deficiency, by the fourth quarter of 1999, Terry Manufacturing was seriously delinquent in amounts owed to Commercial Factors. Pouncey and Floodgates were also liable for this amount pursuant to guaranties given in favor of Commercial Factors.

9. During the month of December 1999, Rudolph Terry negotiated with representatives of Commercial Factors concerning a pay-off of more than $2,000,000.00 purportedly owed by Terry Manufacturing. *See* Exhibits 18 through 30. Given his awareness of the unlawful scheme, Rudolph was highly secretive about these negotiations. *See* Exhibit 21. Ultimately, the negotiations failed and Commercial Factors proceeded with the litigation.

10. At the time it filed its initial complaint, Commercial Factors was not aware of the factoring fraud scheme, and its initial complaint outlined a garden variety collection claim. Terry Manufacturing, Pouncey and Floodgates were named as defendants. *See* Exhibit 31.

11. Earnest DeLong was contacted concerning representation of Terry Manufacturing and its officers, directors and shareholders. In early January, 2000, DeLong & Caldwell, LLC issued an engagement letter to Rudolph Terry which referenced the Commercial Factors Litigation and provided in relevant part:

> This letter is intended to memorialize the understanding we have reached. Jerry Thomas and I [Earnest DeLong] have been engaged to represent the interests of Terry Manufacturing Company, Inc., its officers, directors and shareholders in the defense of the above-referenced matter.

*See* Exhibit 10.

12.     In correspondence issued to counsel for Commercial Factors in the first quarter of 2000 and in pleadings filed in the Commercial Factors Litigation, DeLong repeatedly admitted that Terry Manufacturing was indebted to Commercial Factors in an amount in excess of $2,000,000, and that Terry Manufacturing was prepared to pay that amount but it required a payment schedule.    *See* Exhibits 32 (Answer and Counterclaim of Defendant Terry Manufacturing Company, Inc.), 33 (February 9, 2000 Correspondence from Mr. DeLong to Matthew Coles, counsel for Commercial Factors about $2,130,628.91 consent judgment), 34 (April 21, 2000 Correspondence from Mr. DeLong to Matthew Coles re: payment schedule for consent judgment) and 35 (Second Amendment to Answer of Defendant Terry Manufacturing Company).

13.     Mr. DeLong and his law firm were initially engaged in January, 2000, and continued to represent Terry Manufacturing through the time of its Chapter 11 filing on July 7, 2003.  At no time did he obtain a written waiver of conflict of interest from Terry Manufacturing or Rudolph Terry.  Likewise, the DeLong Defendants never issued any writing addressing any potential or actual conflict.  *See* Stipulation at ¶ 3.

14.     Following Terry Manufacturing's Chapter 11 filing, the DeLong Defendants represented Rudolph Terry and other Terry family members in the Terry Manufacturing Chapter 11 case and other Alabama litigation filed by creditors of Terry Manufacturing.  *See* Exhibits 132, 134 and 135.

15.     All fees paid to the DeLong Defendants were paid by Terry Manufacturing.  *See* Exhibit 12 *in globo*.  All statements paid by Terry Manufacturing were issued by DeLong &

Caldwell, LLC. *See* Exhibit 13 *in globo*. During the period in question, the Commercial Factors Litigation was Mr. DeLong's most lucrative engagement. Trial Transcript at 236:19-237:5.

16.    Commercial Factors sought to take discovery from Mr. Pouncey concerning the source of the product he purportedly sold to Terry Manufacturing. Mr. Pouncey stonewalled. After the state trial court issued an order directing he respond to that discovery, Pouncey and Floodgates sought protection under the Bankruptcy Code in an effort to stay compliance with the state court's discovery order. Commercial Factors then sought Pouncey's examination under Bankruptcy Rule 2004. In that examination, Pouncey claimed that he obtained product from a source in South Carolina, RGB, which could not be identified due to some unwritten confidentiality agreement. Commercial Factors then initiated contempt proceedings before the Bankruptcy Court in Atlanta. At the hearing before the Bankruptcy Court, Pouncey acknowledged that he committed perjury and admitted to the fraudulent scheme including Rudolph Terry's critical role in the provision of bogus bills of lading and related acknowledgements. *See* Exhibit 53. Mr. Pouncey then appeared for another 2004 examination on June 27, 2000 and confirmed the particulars of the fraudulent scheme including Rudolph Terry's role. *See* Exhibit 54. Mr. DeLong reviewed the 2004 examination of Mr. Pouncey and made handwritten notes of the testimony. *See* Exhibit 55.

17.    Even before the disclosure by Mr. Pouncey, the DeLong Defendants were aware by no later than April, 2000, that Rudolph Terry had engaged in conduct which was fraudulent at a minimum and most likely criminal. In fact, the DeLong Defendants knew or should have known that Rudolph Terry perjured himself at his April 28, 2000 deposition by testifying about product allegedly received from Floodgates related to the invoices at issue in the Commercial

Factors Litigation when in fact, no product was ever received. At his deposition, Rudolph Terry gave incredible testimony about receiving nearly two million dollars of t-shirts from Floodgates which were then sold to customers he could not identify. Mr. Terry was also unable to testify as to the amounts owed to Terry Manufacturing by those customers and his efforts to collect the outstanding amounts. By way of illustration,

Q.    What efforts are you undertaking to collect the monies from the franchisees who have not paid you?

A.    I'm always making efforts to collect all dollars owed to me.

Q.    But specifically, what are you doing, or what is Terry Manufacturing doing to collect those funds?

A.    I guess probably less than I should or could, simply because I'm – you know, so much of my time is tied up related to this matter and others. But yes, certainly, we're making efforts to collect.

Q.    My question to you is: What efforts?

A.    I can't give you anything specific….

Q.    Okay. So my question to you is: What have you done, you personally, since you're the one that's primarily responsible for it, to collect the monies that are owed to Terry Manufacturing from the franchisees?

A.    I cannot give you specific efforts. I cannot give you specific efforts.

*See* Exhibit 44(a) at 114:9-22; 115:19-25. Mr. Terry was unable to give this information at his deposition because no t-shirts were received from Floodgates by Terry Manufacturing nor

sold by Terry Manufacturing to other customers.  *See* Trial Transcript at 98:20-99:1, 101:17-102:5, 104:19-22, 105:1-11; Exhibit 44(a) at pages 105-115.

18.    At about the same time as Pouncey acknowledged the factoring fraud scheme, counsel for Commercial Factors gave notice that Commercial Factors intended to add Rudolph Terry as an additional defendant.  *See* Exhibits 49 and 57.  Mr. Terry ultimately was added as an additional defendant, and the DeLong Defendants appeared as his counsel.  *See* Exhibit 59.

19.    Mr. Pouncey was held in civil contempt in June 2000, and the Bankruptcy Judge referred him for investigation by the United States Trustee and the United States Attorney.  In July 2000, counsel for Commercial Factors issued correspondence detailing the criminal conduct of Mr. Pouncey and Mr. Terry.  A copy of that letter was received by Mr. DeLong.  *See* Exhibit 73.  From that time forward Mr. DeLong knew or should have known that there was a substantial probability that Mr. Terry would be named in a federal criminal indictment.  Ultimately, Mr. Terry was indicted and pled guilty to a single count of mail fraud.  Exhibit 76.

20.    In August and September, 2000, Mr. DeLong yet again acknowledged to the state court and opposing counsel that Terry Manufacturing owed well in excess of $2,000,000.00 to Commercial Factors, and attempted to obtain a settlement by which Terry Manufacturing would pay Commercial Factors more than $2,000,000.00 in installments.  There were discussions with counsel for Commercial Factors which resulted in some understanding as to possible terms.  Ultimately, Commercial Factors refused to proceed with the settlement.  Mr. DeLong then attempted to obtain a court order enforcing a settlement.  *See* Exhibit 41.  That motion was denied.

21.    Rudolph Terry was deposed in the Spring of 2000.  At that time, he repeatedly testified that Terry Manufacturing had acquired product from Floodgates and then re-sold that product to multiple clients, none of whom he could identify.  That testimony was false.  Exhibits 44(a) and 45.  The deposition continued in October, 2000.  At that time, Mr. Terry claimed that the dealings with Pouncey and Floodgates were "something I did personally.  And so it had nothing to do with the company."  *See* Exhibit 47 at 466:15-21.  Mr. Terry also acknowledged that the transactions with Pouncey and Floodgates, although Mr. Terry's personal business, were done with Terry Manufacturing's money.

Q.    Now, you realize now, on October 31 of 2000, that these hundreds of thousands of dollars that you were advancing and loaning to Pouncey and Floodgates, that you were, in effect, using Terry Manufacturing's money, not Rudolph Terry's money.  You just realized that; is that correct?

A.    I never really thought of it in that respect.  But, yeah, I was loaning Jon Pouncey Terry Manufacturing dollars…"  *See* Exhibit 47 at 486:7-15.  Mr. Terry also testified that "the reality is that if there is some amount that should be owed, I probably owe it rather than Terry Manufacturing Company."  *See* Exhibit 47 at 423:6-9.

Accordingly, as of October, 2000, the DeLong Defendants were representing both Terry Manufacturing and Rudolph Terry despite the fact that (i) at Rudolph's insistence, he attempted to compel a settlement by which Terry Manufacturing would pay more than $2,000,000.00 for product it never received; (ii) Rudolph Terry had engaged in conduct which would lead to his

-11-

criminal conviction and which by his own admission was his "personal business;" and (iii) Rudolph Terry apparently committed perjury.[1]

22.    When efforts to compel a settlement failed, the approach in the litigation changed dramatically.  No longer would Terry Manufacturing admit that it owed the funds.  Instead, the story became that Rudolph Terry had agreed to pay millions of dollars to Commercial Factors because of concerns that Commercial Factors was controlled by members of the Mafia and that Rudolph Terry's safety and that of his family would be at risk if he did not arrange for millions of dollars in cash payments.  *See* Exhibit 92.  Even Mr. DeLong himself had doubts about the credibility of this defense.  *See* Exhibit 89.

23.    Rudolph Terry was not entitled to indemnity, nor payment of his attorney's fees under Terry Manufacturing's By-Laws or Articles of Incorporation.  Exhibits 15 and 16.  None of the DeLong Defendants ever consulted with Terry Manufacturing concerning its indemnity obligations.  Trial Transcript at 231:13-232:1.

24.    In the summer of 2000, Commercial Factors attempted to depose Richard Rose and to obtain from him the audited financial statements that he prepared for Terry Manufacturing and all work papers supporting those financial statements.  *See* Exhibit 104.  Those financial statements had been widely distributed by Terry Manufacturing.  *See* Exhibit 131.

25.    Had Mr. Rose produced the financial statements and work papers, it would have likely resulted in disclosure that the financial statements were fraudulent and that work papers either did not exist or had been forged.  *See* Exhibit 105.  As a result, Mr. Rose, in cooperation

---

1    Exhibit 47 also reflects that a few weeks prior to the October deposition that Mr. DeLong represented to the Court that the alleged transactions between Terry Manufacturing and Floodgates were a "sham" and that everyone knew from the beginning that no shirts were provided.  *See* Exhibit 47 at p. 409-410.

with Rudolph Terry and the DeLong Defendants, asserted an accountant privilege and refused to produce the subpoenaed documents. *See* Exhibits 111-113 and 118-119. Hundreds of hours and tens of thousands of dollars of attorneys' fees were invested in an effort to avoid disclosure of financial statements and work papers including multiple hearings before the state trial court and an appeal to the Georgia appellate court. *See* Exhibit 13 and Exhibits 121-129.

26.    This massive effort to avoid discovery with respect to Terry Manufacturing's financial statements was intended, and ultimately had the effect of insuring that other creditors of the Company would not learn of the Company's financial insolvency or that the financial statements circulated to lenders, preferred shareholders and other creditors were fraudulent. The transfers made by Terry Manufacturing to the DeLong Defendants were plainly made with the actual intent to "hinder, delay or defraud" the creditors of Terry Manufacturing.

27.    Rudolph Terry and John Pouncey were indicted in January of 2003 and both pled guilty to mail fraud. *See* Exhibits 72 and 76. Following Mr. Terry's indictment, the DeLong Defendants first raised the defense that, if Mr. Terry had acted as alleged by Commercial Factors, that conduct did not benefit Terry Manufacturing, violated company policy and was outside the scope of his employment. *See* Exhibit 67 through 69. Plainly, these defenses could have been raised when Rudolph Terry was originally named as a defendant, but the DeLong Defendants were precluded from doing so because of the dual representation.

28.    Terry Manufacturing paid $476,233.67 in connection with statements issued for fees and expenses incurred in the defense of the Commercial Factors Litigation. All of the statements were issued under the name of DeLong & Caldwell, LLC. *See* Exhibit 13 *in globo* and Exhibit 140. The following illustrates the amounts paid to the DeLong Defendants by Terry

-13-

Manufacturing **after** certain dates critical to the DeLong Defendants' knowledge of the conflict between Terry Manufacturing and Rudolph Terry. *See* Exhibit 140 at Appendix B.

| Date/Event | Total Amount Paid After |
|---|---|
| April 28, 2000- Rudolph Terry perjures himself at deposition by testifying about product allegedly received from Jon Pouncey and Floodgates | **$464,133.67** |
| May 23, 2000- Mr. DeLong receives correspondence from lawyer for Commercial Factors stating intent to add Rudolph Terry as an individual defendant | **$464,133.67** |
| October 9, 2000- Commercial Factors files a motion to add Rudolph Terry as a defendant | **$430,449.62** |

29.     Earnest DeLong and DeLong & Caldwell LLC represented Terry Manufacturing and Rudolph Terry in the Commercial Factors litigation. Neither Mr. DeLong nor any of the other DeLong Defendants ever issued a writing addressing any actual or potential conflict of interest between Terry Manufacturing and Rudolph Terry. Neither Terry Manufacturing nor Rudolph Terry ever issued a writing waiving any potential or actual conflict of interest presented by the dual representation. In fact, it is doubtful whether any discussion about the conflict of interest between Rudolph Terry and Terry Manufacturing occurred between Mr. DeLong and Roy Terry. Whether these conversations occurred is a matter of witness credibility, and it is simply not credible that there was a valid oral waiver. Further, the conflict between the interests of Rudolph Terry and Terry Manufacturing was so fundamental that the conflict could not be

-14-

effectively waived.  The DeLong Defendants now bear the burden of proving to this Court that a satisfactory waiver of the conflict between Terry Manufacturing and Rudolph Terry did occur.[2]

30.    The DeLong Defendants conducted the defense of the Commercial Factors Litigation in a manner which was either adverse or indifferent to the interests of Terry Manufacturing.  While Terry Manufacturing paid all statements, Rudolph Terry was the real client -- virtually all communications were with him and the defense strategy focused on protecting his individual interests.  There is no evidence that DeLong Defendants ever delivered any correspondence or other written materials to Terry Manufacturing's headquarters in Roanoke.

31.    Because of its dual loyalties, the DeLong Defendants failed to represent Terry Manufacturing as would a competent attorney whose only loyalty was owed to the Company. By way of illustration only:

> (a) Terry Manufacturing would not have aggressively pursued a strategy to pay more than $2,000,000.00 that it did not owe to Commercial Factors.

> (b) Terry Manufacturing would have been free to assert timely that Rudolph Terry was solely engaged in his "personal business," acted outside the scope of his employment and in a manner adverse to company policy.

---

2    This Court notes that both Roy and Rudolph Terry have been convicted of crimes of moral turpitude, for which they are both currently incarcerated.  Even more surprising is that Terrys still appear to be incapable of candor.  By way of illustration, Rudolph Terry made the incredible assertion that he was in fact a victim with regards to the Commercial Factors matter despite his guilty plea and prison sentence for his conduct.  Transcript at 466:7-20.

Further, this Court has questions about Mr. DeLong's credibility.  In an attempt to avoid this Court's venue, Mr. DeLong signed an affidavit swearing that he had never practiced law in the State of Alabama.  However, this Court was later presented with evidence of Mr. DeLong's substantial involvement in multiple cases in this state.

(c) Terry Manufacturing would have received meaningful advice with respect to its indemnity obligations and would not have paid Rudolph Terry's legal fees.

(d) Terry Manufacturing would have received timely and meaningful written advice that Rudolph Terry committed perjury and had engaged in criminal conduct.

(e) Terry Manufacturing did not receive timely, complete and meaningful information concerning the Commercial Factors litigation.

32.    The DeLong Defendants' simultaneous representation of Terry Manufacturing and Rudolph Terry violated Georgia's Canons of Ethics and Rules of Professional Conduct. The simultaneous representation also violated the fiduciary and legal duties owed by the DeLong Defendants to Terry Manufacturing. The appropriate remedy is the disgorgement of all amounts paid to the DeLong Defendants by Terry Manufacturing. *See Blecher & Collins, P.C. v. Northwest Airlines, Inc.*, 858 F.Supp. 1442, 1461 (C.D. Cal. 1994)(holding the proper remedy when an attorney represents clients with a conflict of interest is disgorgement of all fees received after the conflict arises).[3]

33.    Terry Manufacturing was insolvent throughout the period of January 1, 2000 through July 7, 2003, the date on which it filed for relief under Chapter 11 of the Bankruptcy Code. Throughout this time period, the amount of Terry Manufacturing's liabilities exceeded the fair value of its assets. During the same period, Terry Manufacturing had unreasonably small capital to conduct its business and it incurred debts which it knew, or reasonably should have known, it could not pay timely in accordance with their respective terms. Accordingly, fiduciary and other legal duties were owed to creditors rather than shareholders. Stipulation at ¶ 4.

---

3        The Court was unable to find any Georgia cases on point.

NO.99773775.1

34.    Multiple persons were creditors of Terry Manufacturing before it made the first payment to the DeLong Defendants and remained creditors at the time it filed for Chapter 11 relief including American Express, Southern Mills, Arkansas State Highway Employees Retirement System, Arkansas Department of Economic Development, CIT Financial Services, Milliken & Company, Darwood Manufacturing, HLC Industries, Inc., Atlantic Thread & Supply Company, Inc. and Bonifay Manufacturing Company.  Stipulation at ¶ 5.

35.    Earnest DeLong is a member of DeLong, Caldwell, Novotny & Bridgers, LLC; DeLong, Caldwell, Logue & Wisebram and DeLong & Caldwell, LLC.  Under Georgia law, successor entities are liable for the debts of the predecessor entities.  *See, e.g.*, Ga. Code Ann. §§ 14-9-206.1 and 14-11-905.  Also, DeLong & Caldwell LLC was not registered as an limited liability company in Georgia until January 28, 2007, two days before the trial in this matter.  *See* Exhibits 1 and 142.  At all times relevant to this litigation, DeLong & Caldwell LLC was not a properly formed limited liability company.  *See* Ga. Code Ann. § 14-11-203(c).

36.    Terry Manufacturing was injured as a proximate result of the DeLong Defendants' breach of their duties to Terry Manufacturing.  These injuries include the payment of $476,233.67 to the DeLong Defendants- the majority of which was for services that did not benefit Terry Manufacturing or were paid while the DeLong Defendants were operating under an impermissible and unwaivable conflict of interest.  In addition, Commercial Factors continues to seek funds from Terry Manufacturing for its losses and filed a proof of claim in the Terry Manufacturing bankruptcy in the amount of $1,793,302.42.  *See* Exhibit 88.

## CONCLUSIONS OF LAW

1.

-17-

This is a core proceeding within the meaning of 28 U.S.C. §157(b) and this Court may enter a final judgment because the Trustee has asserted claims pursuant to 11 U.S.C. § 548 and the Alabama and Georgia Fraudulent Transfer Acts.  *See, e.g.*, *In re Mankin*, 823 F.2d 1296, 1300 (9th Cir. 1987) (action brought pursuant to state fraudulent conveyance law is a core proceeding under § 157(b)); *In re Skil-Aire Corp.*, 142 B.R. 692, 694 (Bankr. D.N.J. 1992) (same); *In re Hunt*, 136 B.R. 437, 442 (Bankr. N.D.Tex. 1991) (same).  It falls under this Court's jurisdiction pursuant to 28 U.S.C. § 1334 and the standard order of reference of core proceedings to this Court by the United States District Court for the Middle District of Alabama.  Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

The Trustee has asserted causes of action under both the Alabama Fraudulent Transfer Act, Ala. Code § 8-9a-1, et seq. ("Alabama Act"), the Georgia Fraudulent Transfer Act, Georgia Code, Title 18, Chapter 2, Article 4 ("Georgia Act") and § 548 of the United States Bankruptcy Code.  This adversary proceeding was filed before the Effective Date of the Bankruptcy Abuse Prevention and Consumer Protection of 2005, and in employing § 548, the Trustee may only avoid transfers which occurred within one (1) year of the July 7, 2003 Chapter 11 filing by Terry Manufacturing.  Under the Alabama Act, however, the Trustee employing the so-called constructive fraud provisions, may avoid transfers which occurred not more than four (4) years before the Chapter 11 filing, and under the actual fraud provisions he may avoid transfers that occurred less than six (6) years before the Chapter 11 filing.  *See* Ala. Code § 8-9A-9(2)(3).  The Georgia Act also provides for a four (4) year reach back provision.  *See* Ga. Code Ann. § 18-2-

79.  All of the transfers at issue here occurred between January, 2000 and May, 2003, and fall within the four year reach back period under the Alabama and Georgia Acts.

2.

The elements of the cause of action under § 548 and the constructive fraud provisions of the Alabama and Georgia Acts are essentially the same.  A transfer may be avoided if the debtor did not receive reasonably equivalent value in exchange for the transfer and at the time of the transfer either (1) the debtor was insolvent from a balance sheet standpoint with the amount of its liabilities exceeding the fair value of its assets, (2) the debtor had unreasonably small capital or (3) the debtor incurred debts which he knew or reasonably should have known could not be repaid timely.  *See* Ala. Code § 8-9A-4(c) and § 8-9A-5; Ga. Code Ann. § 18-2-74; 11 U.S.C. § 548(b).  Each of these elements will be analyzed separately below.

3.

In an action under the Alabama Act, once the plaintiff establishes that he was a creditor of the debtor prior to the date of the challenged transfer, the burden of proof shifts to the defendant to demonstrate that he gave reasonably equivalent value for the transfer or the other elements of the cause of action have not been met.  *See, Cox v. Hughes*, 781 So.2d 197, 204 (Ala. 2000); *Pennington v. Bigham*, 512 So.2d 1344, 1346 (Ala. 1987); *U.S. v. Glascock*, 631 F.Supp. 383, 388 (N.D. Ala. 1986); and *United States Shoe Corp. v. Beard*, 463 F.Supp. 754, 758 (S.D. Ala. 1979).  In this case, the Trustee stands in the shoes of the creditors of Terry Manufacturing that existed prior to the transfers at issue.  11 U.S.C. §544(b).

4.

Under the Alabama Act, certain transfers may only be avoided by a creditor whose claim arose before the date of the transfer. The Trustee is deemed to stand in the shoes of any creditor who had a claim against the debtor prior to the challenged transfers and who also had a claim against the debtor as of the date of the filing of the Reorganization Petition. 11 U.S.C. § 544(b). The parties have stipulated that not less than eight unsecured creditors qualify.

5.

The Trustee has also asserted a legal malpractice claim against the DeLong Defendants. To the extent this Court decides the Trustee's legal malpractice claim, that decision would not be a core proceeding within the meaning of 28 U.S.C. §157(b) and this Court may not enter a final judgment without consent of the parties.

## I.    CHOICE OF LAW

1.

A bankruptcy court applies the choice of law provisions of the state in which it is located. In this case, this Court must apply Alabama choice of law rules. *See, e.g.*, *Sunbelt Veterinary Supply, Inc. v. International* Business *Systems United States, Inc.*, 985 F.Supp. 1352, 1354 (M.D.Ala.1997)). The Trustee's fraudulent transfer and legal malpractice claims both sound in tort. *See, e.g.*, *Drenis v. Haligiannis*, 452 F.Supp. 418, 427 (S.D.N.Y. 2006)(holding fraudulent transfer claim was tort claim); *Grabert v. Lightfoot*, 571 So.2d 293, 294 (Ala. 1990)(malpractice claims are tort claims).

2.

Alabama courts apply the rule of *lex loci* when deciding which state's law applies to a tort claim brought in this state. *Fitts v. Minnesota Mining & Manufacturing Co.*, 581 So.2d 819,

823 (Ala. 1991). The rule provides that "the substantive rights of an injured party according to the law of the state where the injury occurred." *Id.* at 820 (*citing Norris v. Taylor*, 460 So.2d 151, 153 (Ala.1984); *Mullins v. Alabama Great Southern R.R.*, 239 Ala. 608, 195 So. 866 (1940); *Dawson v. Dawson*, 224 Ala. 13, 138 So. 414 (1931); *Alabama Great Southern R.R. v. Carroll*, 97 Ala. 126, 11 So. 803 (1892)).

3.

It is clear that Georgia law applies to the Trustee's legal malpractice claims as the Commercial Factors Litigation occurred in Georgia and virtually all contact between the DeLong Defendants and Rudolph Terry on behalf of Terry Manufacturing occurred in Georgia.

4.

It is also clear that Alabama law applies to the Trustee's fraudulent transfer claims. The payments came from Terry Manufacturing, an Alabama corporation. The injury that resulted from any fraudulent transfers was to an Alabama corporation which filed for bankruptcy protection in this District in the State of Alabama with a majority of the creditors in the State of Alabama. As a result, this Court holds that Alabama law applies to the Trustee's fraudulent transfer claims.

**I.      LEGAL MALPRACTICE**

1.

Frank J. Beltran was tendered by the Trustee and accepted by the Court as an expert as to the ethical obligations applied to attorneys practicing in the state of Georgia; the standard of care applicable to attorneys practicing in the state of Georgia and what constitutes a breach thereof. Mr. Beltran is admitted to practice law in the State of Georgia and has testified as an expert in

-21-

both state and federal courts in Georgia.  Mr. Beltran testified that the standard of care for an attorney practicing in the State of Georgia is to "use such skill, prudence and diligence as lawyers of ordinary skill [and] capacity commonly possess and exercise in the performance of the tasks which they undertake."  Transcript at 309:25-310:4.

Mr. Beltran also testified as to his opinions with respect to the conduct of the defendants in this case.  Based upon his review of the pleadings in this case; the deposition testimony of Mr. DeLong and the exhibits thereto; the trial testimony of Mr. DeLong; the Georgia ethical rules, both prior to January 1, 2001, and after January 1, 2001; the formal advisory opinions of the Georgia Supreme Court; and relevant case law, his opinion was that at the time of the initial engagement, there was an actual conflict between Rudolph Terry and Terry Manufacturing and that the interests of Terry Manufacturing and Rudolph Terry were so fundamentally at odds that the conflict of interest between them could not be waived by the clients.  Transcript at 324:14-325:12, 335:13-25.  The lawyer, as an officer of the Court, has a duty to proceed in the best interests of all of his clients and to adhere to his ethical and professional duties- sometimes even in spite of his clients' wishes.  Therefore, even if a waiver by Roy and Rudolph Terry of the conflict between Terry Manufacturing and Rudolph Terry did in fact occur, the DeLong Defendants could not proceed with the joint representation.  Transcript 326:15-329:6.  This Court agrees with Mr. Beltran's conclusions.

2.

The DeLong Defendants offered William G. Ross as an expert.  Mr. Ross is a professor of law at the Cumberland School of Law in Alabama and admitted to practice law in the State of New York.  Mr. Ross is not admitted to practice law in the State of Georgia and has never

-22-

testified as an expert in any court in that state. According to Section 24-9-67.1(c) of the Georgia Code, "in professional malpractice actions, the opinion of an expert who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct at issue shall be admissible only if at the time of the act or omissions is alleged to have occurred such expert was licensed by an appropriate regulatory agency to practice her or his profession in the state in which such expert was practicing or teaching in the profession at such time." Ga. Code Ann. §24-9-67.1(c). This Court however, declines to decide whether that statute applies to this proceeding. *See Dukes v. Georgia*, 428 F. Supp. 2d 1298 (N.D.Ga. 2006). This Court found Professor Ross' testimony entirely without value based upon his own admission that he had no knowledge of the facts of the Commercial Factors case nor the standard of care for lawyers practicing in the State of Georgia. Professor Ross admitted that his entire understanding of the Commercial Factors Litigation and the alleged waivers given by Roy and Rudolph Terry came from Mr. DeLong. Transcript at 671:17-25. Professor Ross was unaware that Rudolph Terry had perjured himself during his depositions in the Commercial Factors Litigation and was unaware of whether Roy Terry or anyone else at Terry Manufacturing knew of that perjury, yet he asserted that Roy and Rudolph Terry gave knowing waivers of the conflict of interest between them. Transcript at 674:13-677:7. In order to offer a credible expert opinion, an expert must make an independent determination based upon the law and the facts—and more than the facts merely recited to him by his client. Professor Ross accepted Mr. DeLong's version of the facts in this case whole and undigested and made no effort to review any pleadings or testimony to confirm the accuracy of Mr. DeLong's account. For those reasons, this Court finds Professor Ross' testimony wholly without value.

-23-

3.

It became clear to the DeLong Defendants very early into their engagement that all of the conduct at issue in the Commercial Factors Litigation was done by Rudolph Terry and no one else at Terry Manufacturing. Further, it was clear that Rudolph Terry's conduct was outside the scope of his employment at Terry Manufacturing and contrary to the company's best interests. It should have been apparent to the DeLong Defendants that Rudolph Terry was willing and anxious to use Terry Manufacturing's assets to avoid criminal liability for his personal conduct and to solve a problem of his own making. The DeLong Defendants knew or should have known that the settlements urged by Rudolph Terry and Mr. DeLong contemplated nearly two million dollars in payments by Terry Manufacturing for product that it never received and invoices that it did not owe. Mr. DeLong was active in these settlement negotiations going so far as to file and litigate a motion seeking to compel a settlement by which Terry Manufacturing would have paid millions of dollars to solve Rudolph Terry's problem. *See* Exhibit 40.

4.

Georgia courts have recognized that even the potential for conflicting interests between an attorneys' clients mandates withdrawal by that attorney from the representation "even though he [the attorney] may have acted in good faith and with the consent of both clients." *First Nat'l Bank of Chattooga County v. Rapides Bank & Trust Co.*, 145 Ga.App. 514, 244 S.E.2d 51, 54 (Ga. Ct. App. 1978), *overruled on other grounds*. "Where the fact that an attorney represents conflicting interests comes to the attention of the court before which a cause is pending, the court is required to prevent the attorney from continuing so to act. The test in such cases is not the

-24-

actuality of conflict, but the possibility that conflict may arise." *Id.* (quoting *Young v. Champion*, 142 Ga.App. 687, 689-90, 236 S.E.2d 783, 785 (Ga. App. 1977)(internal quotations omitted).

5.

"Canons 6 and 37 of the Canons of Professional Ethics promulgated by the American Bar Association in 1908, Canon 5 of its recent Code of Professional Responsibility, both of which the State Bar of Georgia has officially endorsed, and Rule 3-106 of the Rules of the State Bar of Georgia, 219 Ga. 887, promulgated by the Supreme Court at the request of the Bar, make it clear that a lawyer should not represent clients in a matter where their interests are in any wise conflicting or diverse." *Corvair Furniture Manufacturing Co., Inc. et al. v. Bull*, 186 SE.2d 559, 563 (Ga. Ct. App. 1971).

6.

The Georgia Canons of Ethics and the related ethical considerations and Directory Rules were in effect at the time the DeLong Defendants began their representation of Terry Manufacturing and at the time the conflict between Terry Manufacturing and Rudolph Terry became apparent. The ethical considerations outlined by the Georgia State Bar, although not binding upon this Court or dispositive for a finding of legal malpractice, are instructive, and it is clear that the DeLong Defendants failed to observe those considerations in their dealings with Terry Manufacturing and Rudolph Terry. *See, Allen v. Lefkoff, Duncan, Grimes & Dermer*, 265 GA. 374, 453 S.E.2d 719 (Ga. 1995).

7.

Ethical Consideration 5-14 provides that "[m]aintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will

-25-

adversely affect his judgment on behalf of or dilute his loyalty to a client.  This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse or otherwise discordant."   As discussed above, the interests of Terry Manufacturing and Rudolph Terry were conflicting, inconsistent, diverse and discordant.

8.

Ethical Consideration 5-15 instructs attorneys that a lawyer "requested to undertake or to continue representation of multiple clients having potentially differing interests…must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment.  **He should resolve all doubts against the propriety of the representation.**"  (emphasis added).  The DeLong Defendants clearly failed to follow this mandate.

9.

The ethical considerations also address situations in which an attorney is asked to represent both a company and its officer or shareholder.  The DeLong Defendants, once retained by Terry Manufacturing, owed "allegiance to the entity and not to the stockholder, director, officer, employee, representative, or other person connected with the entity.  In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization."  Ethical Consideration 5-18.  This ethical consideration recognizes that the interests of a corporation and its constituents or control persons are not always the same.  It required the DeLong Defendants to put the interests of Terry Manufacturing over those of Rudolph Terry, which they failed to do.

-26-

10.

Based upon Mr. Beltran's expert testimony and an examination of the applicable Ethical Considerations, Directory Rules and caselaw, it is clear to this Court that the DeLong Defendants breached the standard of care by representing both Terry Manufacturing and Rudolph Terry despite the obvious and unwaivable conflict of interest between the two parties.

## II.    FRAUDULENT TRANSFER CLAIM

### A.    REASONABLY EQUIVALENT VALUE

1.

It is undisputed that Terry Manufacturing did not receive the full benefit in exchange for its payments to the DeLong Defendants.  As early as April 2000, just three months after the engagement began and after payment of $12,100.00 to the DeLong Defendants by Terry Manufacturing, the DeLong Defendants became aware that Rudolph Terry alone was responsible for the actions at issue in the Commercial Factors Litigation.  The DeLong Defendants, however, did not defend Terry Manufacturing's best interests, but instead engaged in a litigation strategy to protect Rudolph Terry and his criminal conduct.  By May of 2000, when the DeLong Defendants were informed that Commercial Factors intended to add Rudolph Terry as an individual defendant, the conflict of interest between Terry Manufacturing and Rudolph Terry was impermissible and unwaivable.  At that time, the DeLong Defendants were required to withdraw as counsel of Terry Manufacturing and they failed to do so.

2.

As stated herein, once the Trustee established creditors of Terry Manufacturing that existed prior to the date of the transfers to the DeLong Defendants, the burden of proof shifted to

the DeLong Defendants to demonstrate that they gave reasonably equivalent value for the transfers. *See, Cox v. Hughes*, 781 So.2d 197, 204 (Ala. 2000); *Pennington v. Bigham*, 512 So.2d 1344, 1346 (Ala. 1987); *U.S. v. Glascock*, 631 F.Supp. 383, 388 (N.D. Ala. 1986); and *United States Shoe Corp. v. Beard*, 463 F.Supp. 754, 758 (S.D. Ala. 1979). The DeLong Defendants failed to show that Terry Manufacturing and **not** Rudolph Terry received reasonably equivalent value for the hundreds of thousands of dollars paid to the DeLong Defendants.

3.

This Court acknowledges that Terry Manufacturing was in fact named as a defendant in the Commercial Factors Litigation and did require legal counsel to defend its interests. However, the DeLong Defendants could not and did not provide adequate representation to Terry Manufacturing because of their conflicting interests.

4.

What constitutes reasonably equivalent value is not defined in either the Alabama Act or the Bankruptcy Code. The courts have recognized that by using the term "reasonably equivalent" neither statute requires that the exchange be dollar for dollar; rather, the debtor must receive "full and adequate consideration" for what it surrendered to the transferee. *See, generally, Varon v. Trimble, Marshall & Goldman, P.C. (In re Euro Swiss International Corp.)*, 33 B.R. 872, 885 (Bankr. S.D.N.Y. 1983). The ultimate question is not the value of what the debtor received *per se*, but how that value compares to what the debtor surrendered. Thus, reasonable equivalence requires the comparison of the value of what went out with the value of what was received. *In re Grabill Corp.*, 12 B.R. 983, 994 (N.D. Ill. 1990). The ultimate

-28-

question is whether the transfer has materially affected the debtor's ability to satisfy its creditors

claims.  As the Fourth Circuit recognized in *In re Jeffrey Bigelow Design Group, Inc.*

> [T]he proper focus is on the net effect of the transfer
> on the debtor's estate, the funds available to the
> unsecured creditors.   As long as the unsecured
> creditors are no worse off because the debtor, and
> consequentially the estate, has received an amount
> reasonably equivalent to what it paid, no fraudulent
> transfer has occurred.

956 F.2d 479, 484 (4th Cir. 1992).

### 5.

The value given by the transferee need not be given directly to the debtor.  The courts

have recognized that "indirect benefit" may also constitute reasonably equivalent value.  Thus,

where the debtor pays the obligations of its principal shareholder or affiliated corporations for

which it has no liability, but at the same time receive transfers from its principal shareholder

equal to or greater to those payments, there is no net effect on the estate and the payments by the

debtor does not constitute a fraudulent conveyance.  *See, In re Chase & Sanborn Corp.,* 904 F.2d

588 (11th Cir. 1990).

As the Eleventh Circuit noted in *In re Rodriguez*:

> The purpose of voiding transfers unsupported by
> reasonably equivalent value is to protect creditors
> against depletion of the bankrupt's estate.
> Therefore, this provision [§ 548] does not authorize
> voiding a transfer which 'confers on economic
> benefit upon the debtor' either directly or indirectly.
> In such a situation, 'debtors' net worth has been
> preserved' and the interests of the creditors will not
> have been injured by the transfer.

NO.99773775.1

895 F.2d 725, 727 (11th Cir. 1990) (citing *Rubin v. Hanover Trust & Co.*, 661 F.2d 979, 991 (2d Cir. 1981)).

6.

While the benefit received by the debtor must not come directly from the transferee, that benefit must at least be in exchange for the transfer by the debtor. Indeed, the language of the statute is quite specific; it requires that the debtor receives reasonably equivalent value "in exchange for the transfer." Ala. Code § 8-9A-3(a).

Terry Manufacturing did not receive reasonably equivalent value for the more than four hundred thousand dollars in payments to the DeLong Defendants. Terry Manufacturing was named as a defendant in the Commercial Factors Litigation, but a short time after the DeLong Defendants' engagement, it became clear that Terry Manufacturing, the corporation, had no knowledge of or involvement in the conduct giving rise to that litigation. Rudolph Terry testified that he did not tell his brother, Roy Terry, about the transactions with Jon Pouncey at issue in the Commercial Factors Litigation. According to Rudolph Terry, "Roy was not involved in any of the checking accounts that I had in Atlanta… he didn't access the checkbook that I was doing in Atlanta." Trial Transcript 458:24-459:4. Further, in June 2003, the DeLong Defendants filed a Motion for Summary Judgment on behalf of Terry Manufacturing asserting as a defense for the first time that Rudolph Terry acted outside the scope of his employment and without the knowledge of Terry Manufacturing. *See* Exhibits 68 and 69. However, that motion was not filed until more than three years after the DeLong Defendants knew that Rudolph Terry alone was responsible for the conduct at issue in the Commercial Factors Litigation; six months after

-30-

Rudolph Terry's criminal indictment; and after receipt of more than $400,000.00 in legal fees from Terry Manufacturing.[4]

7.

Even if the payments by Terry Manufacturing to the DeLong Defendants provided value to Rudolph Terry, that is insufficient to defeat the Trustee's fraudulent transfer claim. In *Cox v. Hughes*, the individual defendants claimed that certain transfers to the debtor by a corporation with which they were affiliated provided reasonably equivalent value. 781 So.2d at 205. The Alabama Supreme Court rejected that notion stating that "[it goes without saying that transactions with a corporation are not legally equivalent to a transaction with individuals." *Id.* Here, the Bylaws and Articles of Incorporation of Terry Manufacturing outlined the requirements for indemnification of an officer or director for legal expenses. *See* Exhibits 15 and 16. Those requirements were not met in this case and Rudolph Terry was not entitled to indemnification. Therefore, to the extent that the payments to the DeLong Defendants provided value to Rudolph Terry, that was insufficient to provide value to Terry Manufacturing.

8.

As the Eleventh Circuit recognized in *Rodriguez, supra*, the ultimate issue presented by a fraudulent conveyance case is whether the transaction resulted in a diminution of the debtor's net worth or whether the debtor received such economic benefit, "either directly or indirectly" that its net worth has been preserved. 895 F.2d at 727. There, the Eleventh Circuit affirmed the

---

[4] The DeLong Defendants attempted to introduce nearly twenty boxes of paper into the record at trial purportedly to demonstrate the value provided to Terry Manufacturing. This Court instructed the DeLong Defendants that it would not accept all of the boxes as an exhibit and requested that they instead give the Court and opposing counsel selections from those boxes. Despite the repeated requests, the DeLong Defendants failed to offer anything to the Court.

-31-

bankruptcy court's judgment avoiding a parent corporation's payment of a loan to its subsidiary to finance a private jet. The parent corporation received no economic benefit from the reduction of the subsidiary's debt and had not used the aircraft. Here, the same result applies, there is no evidence Terry Manufacturing received equivalent economic benefit, direct or indirect, for the payments to the DeLong Defendants. Terry Manufacturing paid the legal fees to lawyers who were operating under an impermissible conflict of interest and were proceeding with its defense according to the best interests of Rudolph Terry and not Terry Manufacturing. Although no judgment was rendered against Terry Manufacturing in the Commercial Factors Litigation because of the stay imposed by the company's Chapter 11 filing, Commercial Factors has asserted a claim of more than $1.7 million in the Terry Manufacturing bankruptcy case. *See* Exhibit 88. Terry Manufacturing received little or no economic benefit from the DeLong Defendants' services, but its net worth reduced by $476,233.67.

9.

The DeLong Defendants' other defenses are similarly unavailing. First, the DeLong Defendants asserted that Mr. DeLong alone was the attorney for Terry Manufacturing and Rudolph Terry and attempted to show that those parties never intended nor understood they were hiring any of the other DeLong Defendants as their lawyers. However, the evidence is overwhelmingly contrary to this testimony. As stated above, all of the bills were issued to Terry Manufacturing by DeLong & Caldwell and contained instructions to make payments payable to DeLong & Caldwell. *See* Exhibit 13. The engagement letter was issued on DeLong & Caldwell letterhead and all of the pleadings were signed on behalf of DeLong & Caldwell or one of its successor entities. *See e.g.*, Exhibits 10, 32, 41, 42**.** Finally, the vast majority of the checks from

-32-

Terry Manufacturing were made payable to DeLong & Caldwell. This Court finds that DeLong & Caldwell and not just Mr. DeLong represented Terry Manufacturing and Rudolph Terry in the Commercial Factors Litigation.

10.

The DeLong Defendants also claimed that a portion of the payments received from Terry Manufacturing were not kept by them, but instead were forwarded to Jerry Thomas for his services in the Commercial Factors Litigation. The DeLong Defendants, however, failed to offer any evidence that those payments were made. Counsel for the Trustee made repeated requests for documentary evidence of payments to Jerry Thomas both in formal discovery requests and in correspondence sent shortly before trial. *See* Exhibits 14 and 14(a). At trial, the DeLong Defendants offered for the first time a statement that purported to list the payments made to Jerry Thomas. There was insufficient evidence to conclude that statement was a contemporaneous record. This Court finds that the DeLong Defendants' failed, despite numerous requests, to produce reliable evidence of payments to Jerry Thomas. In any case, this Court holds that the DeLong Defendants were initial transferees as defined by 11 U.S.C. § 550(a)(1).

**B.    INTENT TO HINDER, DELAY OR DEFRAUD**

11.

In addition, this Court concludes that the payments made to the DeLong Defendants were made by Terry Manufacturing with the actual intent to hinder, delay or defraud its creditors. The information sought by the attorneys for Commercial Factors included financial information of Terry Manufacturing- information that if disclosed, would have finally exposed the lies told by the Terrys and the true financial disaster that Terry Manufacturing had become. Ultimately,

-33-

when the actual financial condition of Terry Manufacturing was exposed, it resulted in a bankruptcy filing and prison sentences for Roy and Rudolph Terry.

In June of 2000, Commercial Factors issued a subpoena for the deposition of Richard Rose, Terry Manufacturing's outside auditor.  *See* Exhibit 104.  That subpoena included a request for copies of any financial statements prepared for Terry Manufacturing by Mr. Rose and the list of documents upon which Mr. Rose relied to prepare such statements.  *Id.*  Mr. Rose refused to produce any documents and at his deposition refused to answer any questions.  What followed was a nearly three year saga in which the DeLong Defendants, as counsel for Terry Manufacturing and Rudolph Terry, spent nearly 500 hours and were paid more than $130,00.00 by Terry Manufacturing to protect Mr. Rose from testifying.  *See* Exhibit 13 *in globo*.  As the Trustee testified, the financial statements purportedly audited by Mr. Rose and that were subject to the subpoena so vigorously fought by the DeLong Defendants were "wholly inaccurate." Trial Transcript at 238.

12.

The payments made to the DeLong Defendants by Terry Manufacturing were paid in order to perpetuate the fraud of Terry Manufacturing's financial health.  And the payments at issue allowed that fraud to continue to the detriment of the creditors of Terry Manufacturing. For those reasons, this Court finds that the payments at issue were made with the intent to hinder, delay and defraud the creditors of Terry Manufacturing.  In making this conclusion, the knowledge or intent of the DeLong Defendants is not at issue.  Rather, it is the intent of the transferor, Terry Manufacturing, which is at issue.  *See, e.g.*, *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255 (Bankr. N.D. Tex. 2003).

-34-

## C.    INSOLVENCY

### 13.

The Court also concludes that all of the payments were made at a time when Terry Manufacturing was insolvent because the sum of its liabilities exceeded the fair value of its assets, it had unreasonably small capital in relation to its business and it incurred, and reasonably should have known it incurred, debts which could not be repaid in accordance with their respective terms.

### 14.

Distilled to essentials, this is a fairly straightforward fraudulent conveyance case. Terry Manufacturing made payments to the defendants for services that benefited one of its insiders and for liability incurred by one of its insiders in his individual capacity and for which Terry Manufacturing received no benefit. The payments were made at a time when Terry Manufacturing was insolvent measured by each of the three tests set forth in the Alabama Act. Accordingly, the Trustee is entitled to judgment avoiding all of the transfers at issue.

### 15.

The Court also concludes that the transfers made to the DeLong Defendants during the year prior to the Chapter 11 filing are subject to avoidance under 11 U.S.C. § 548.

### 16.

Earnest DeLong is a member of DeLong, Caldwell, Novotny & Bridgers, LLC; DeLong, Caldwell, Logue & Wisebram and DeLong & Caldwell, LLC. The three purported LLCs should be deemed a single business entity. Also, because DeLong & Caldwell was not a properly formed limited liability company during the time at issue in this litigation. A limited liability

company is properly formed "when the articles of organization become effective pursuant to Code Section 14-11-206" which is when they are filed by the Georgia Secretary of State. Ga. Code Ann. § 14-11-203(c). Futhermore, "the Secretary of State's filing of the articles of organization is conclusive proof that the organizers satisfied all conditions precedent to formation, except in a proceeding by the state to cancel or revoke the formation." The DeLong Defendants' failure to file the Articles of Organization of DeLong & Caldwell or the proper name change forms means that DeLong & Caldwell LLC was not properly formed so its principals are not entitled to the protections of a limited liability company. Instead, Messrs. DeLong & Caldwell are jointly and severally liable for the judgment to the Trustee. Ga. Code Ann. § 14-2-204 ("All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting."). That Mr. DeLong and Mr. Caldwell each thought that the other had properly formed DeLong & Caldwell as a limited liability company is not a defense to their joint and several individual liability. *See Don Swann Sales Corp. v. Echols*, 160 Ga.App. 539, 287 S.E.2d 577 (Ga. App. 1981)(holding that principals of corporation that was not properly formed and registered with Secretary of State were individually liable even though "the parties *thought* the corporation had been registered with the Secretary of State....This is not a case where the corporation purportedly existed under "color of law," but rather where no corporation existed at all.")(emphasis in original). *See also Bonner v. Brunson*, 262 Ga.App. 521, 585 S.E.2d 917 (Ga. Ct. App. 2003)(holding that limited liability company form must be maintained and respected in order to benefit from the protections of that corporate form).

17.

Having prevailed on his cause of action under the Alabama Act, the Trustee is also entitled to pre-judgment interest on each of the payments transferred by Terry Manufacturing to defendants and calculated from the date each payment cleared the account of Terry Manufacturing through the date of judgment.

In this Circuit, prejudgment interest may be awarded to "compensate the debtor's entire estate for the use of the funds for the period of time in which they were wrongfully withheld." *In re: International Administrative Services, Inc.*, 408 F.3d 689, 710 (11th Cir. 2005)(internal citations omitted). The assessment of prejudgment is "not a penalty, but compensation to the plaintiff for the use of funds that were rightfully his." *Id.*

Because this Court sits in Alabama, it must look to Alabama law to determine which state's law applies to the application of prejudgment interest. *In re Poli*, 298 B.R. 557 (Bankr. E.D.Va. 2003). In this case, it is clear that the injury as a result of the challenged transfers occurred to an Alabama corporation who filed a bankruptcy petition in Alabama with the majority of its creditors also located in Alabama. Therefore, Alabama law on prejudgment interest applies.

Under Alabama law, prejudgment interest is "allowable at the legal rate in claims other than those contractual in nature where the unliquidated damages could be ascertained by mere computation, or where the damages are complete at a given time so as to be capable of determination at such time in accordance with known standards of value." *Lapeyrouse Grain Corp. v. Tallant*, 439 So.2d 105, 111-12 (Ala. 1983). Prejudgment interest may be assessed in this case because the damages to the Terry Manufacturing estate were known at the instant each

fraudulent transfer was made by Terry Manufacturing to the DeLong Defendants.  Accordingly, pre-judgment interest is allowed and calculated pursuant to Ala. Code § 8-8-1.

The assessment of post-judgment interest is permitted under the federal statute that provides that post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court…at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury Bills settled immediately prior to the date of judgment." 28 U.S.C. § 1961.  This statute is also applicable to money judgment in bankruptcy courts.  *See, e.g.*, *In re Pester Refining Co.*, 964 F.2d 842 (8th Cir. 1992); *Ocasek v. Manville Corp.  Asbestos Disease Compensation Fund*, 956 F.2d 152 (7th Cir. 1992); *In re Harvard Knitwear, Inc.*, 193 B.R. 389 (Bankr. E.D.N.Y. 1996);  *In re Southern Indus. Banking Corp.*, 87 B.R. 518 (Bankr. E.D.Tenn. 1988).  The Trustee is also entitled to an award of costs and shall file an appropriate application within fifteen (15) days of entry of judgment.

Respectfully submitted this 2nd day of April, 2007.

Respectfully submitted,

By:     /s/     Brent B. Barriere
Brent B. Barriere, T.A.  (La. Bar No. 2818)
David L. Patrón (La. Bar No. 22566)
Catherine E. Lasky (La. Bar No. 28652)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

**ATTORNEYS FOR  J. LESTER ALEXANDER, III, TRUSTEE OF TERRY**

-38-

**MANUFACTURING COMPANY, INC. AND
TERRY UNIFORM COMPANY, LLC**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been filed into the record and further served on the following counsel by facsimile, this 2nd day of April, 2007:

Earnest H. DeLong, Jr.
DeLong, Caldwell & Bridgers LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303

     /s/ Catherine E. Lasky

-39-

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

TERRY MANUFACTURING
COMPANY, INC.,

   Debtor.


J. LESTER ALEXANDER, III,
TRUSTEE,

   Plaintiff,

 v.

DELONG, CALDWELL, NOVOTNY &
BRIDGERS, LLC;  DELONG,
CALDWELL, LOGUE & WISEBRAM;
DELONG & CALDWELL, LLC; and
EARNEST H. DELONG, JR.,

   Defendants.

Case No. 03-32063-WRS
Chapter 7



Adv. Pro. No. 04-3135-WRS

### <u>MEMORANDUM DECISION</u>

  This Adversary Proceeding came before the Court for a four-day trial beginning on

January 30, 2007.  Plaintiff J. Lester Alexander, III, was present in person and by counsel Brent

B. Barriere, T.A. and Catherine E. Lasky.  Defendants were present by Earnest H. DeLong, Jr.,

Michael A. Caldwell, and Charles R. Bridgers.  At the conclusion of the trial, the Court took the

matter under submission.  The parties, at the Court's request, have filed Proposed Findings of

Fact and Conclusions of Law.  (Docs. 199, 200).

  In this Adversary Proceeding, the Chapter 7 Trustee seeks to avoid payments totaling

$476,233.67 made by the Debtor Terry Manufacturing to lawyers who represented it in a civil

action in Georgia.  The Trustee contends that the cash transfers are avoidable as fraudulent

conveyances alleging that the payments were constructively fraudulent in that Terry

Manufacturing did not receive reasonably equivalent value in exchange for the transfers.  The

Trustee also seeks to avoid the payments as preferential transfers.  The Trustee further alleges

that the Defendants committed malpractice by representing both Terry Manufacturing and

Rudolph Terry.  For the reasons set forth below, the Court enters judgment in favor of the

Trustee in the amount of $476,233.67 on the fraudulent conveyance claim.  As the malpractice

claim is not a core proceeding, the Court enters Proposed Findings of Fact and Conclusions of

Law by way of a separate document.  As a final matter, the preference claim is dismissed with

prejudice.

## I.  FINDINGS OF FACT

### A.  Background

Terry Manufacturing, Inc., filed a voluntary petition in bankruptcy pursuant to Chapter

11 of the Bankruptcy Code in this Court on July 7, 2003.  (Case No. 03-32063, Doc. 1).  J. Lester

Alexander, III, was appointed Trustee on July 11, 2003.  (Case No. 03-32063, Doc. 20).  The

case was converted to a case under Chapter 7 on May 13, 2004.  (Case No. 03-32063, Doc. 579).

The Trustee filed a complaint initiating this Adversary Proceeding on December 8, 2004.  (Doc.

1).[1]  The Trustee's complaint alleges claims for fraudulent conveyances, avoidable preferences,

and attorney malpractice.

---

[1]  Documents in this Adversary Proceeding, No. 04-3135, will be referred to by its
document number.  Documents in other files will be preceded by the case number of that file.

Terry Manufacturing was a textile business specializing in the manufacture of uniforms. Its two most notable contracts were with the United States Department of Defense for combat fatigues and McDonald's for its restaurant workers' uniforms. Terry Manufacturing has its main business and manufacturing location in Roanoke, Alabama and also had a facility in Atlanta, Georgia. By local standards, Terry Manufacturing was a large business employing more than 300 people in its heyday.

The principals of Terry Manufacturing were Roy Terry and Rudolph Terry, who are brothers. Both of Terry brothers have been convicted of crimes relating to their activities at Terry Manufacturing. Roy Terry plead guilty to thirteen counts of bank fraud, wire fraud and mail fraud and has been sentenced to prison for seventy-eight months. United States v. Roy Terry, in the United States District Court for the Middle District of Alabama, Criminal No. 3:05CR141-MEF. Rudolph Terry plead guilty to one count of conspiracy to defraud the United States and was sentenced to prison for forty-one months. United States v. Rudolph Terry, in the United States District Court for the Middle District of Alabama, Criminal No. 3:06CR52-MEF. In addition, Rudolph Terry plead guilty to criminal charges in the Northern District of Georgia for his fraud in connection with the Commercial Factors case.

Rudolph Terry was Vice President of Terry Manufacturing and owned 49% of the common stock. Rudolph Terry lived in Georgia at all times relevant to these proceedings. Moreover, Rudolph worked in the Atlanta, Georgia office. It appears that almost all of the cash transfers were by check written from the Georgia bank account. (Pl. Ex. 12). Moreover, DeLong's law office is in Atlanta, and the Commercial Factors litigation was in Gwinnett

County, Georgia. While Terry Manufacturing was based in Roanoke, Alabama, it appears that virtually all of the activities relating to the claims at issue here took place in Georgia.

The activities of the Terry brothers has spawned a considerable amount of litigation, and this Court has become familiar with the workings of Terry Manufacturing and the Terry brothers. Both Rudolph and Roy Terry testified at the trial of this Adversary Proceeding. While the loss to creditors and shareholders has not yet been quantified, the plea agreement entered in Roy Terry's criminal case estimates the loss at between $20 and $50 million, which appears to the undersigned to be a reasonable estimation of the losses. The Terry brothers engaged in a massive fraud which took place over a number of years beginning in the late 1990's and continuing to 2003, when Terry Manufacturing ceased doing business. The fraudulent scheme included the issuance of false financial statements, check kiting, and the massive diversion of funds from Terry Manufacturing.

### B. The Commercial Factors Litigation

Rudolph Terry involved himself in a scheme to defraud Commercial Factors of Atlanta, Inc. Floodgates, LTD., had been a supplier of tee shirts to Terry Manufacturing during the 1996 Summer Olympic games, which were in Atlanta. Jon L. Pouncey was the principal of Floodgates, which factored its accounts receivable to Commercial Factors. Floodgates entered into a commercial borrowing arrangement whereby it would transfer its accounts receivable to Commercial Factors in exchange for cash. Pouncey and Rudolph Terry conspired to defraud Commercial Factors by submitting fraudulent invoices which were issued by Floodgates to Terry Manufacturing. That is, Floodgates would issue invoices to Terry Manufacturing for product which was never delivered. Millions of dollars worth of fraudulent invoices were transferred to

Commercial Factors.  Moreover, Rudolph Terry signed a certification for Commercial Factors, verifying receipt of the invoiced tee shirts, knowing that in reality no such tee shirts had been delivered.  Rudolph Terry knew that his certification was false, and he knew that Commercial Factors was advancing money to Floodgates in reliance upon the legitimacy of the invoices.

In December of 1999, Commercial Factors brought a civil action against Terry Manufacturing, Floodgates, and Pouncey.  (Pl. Ex. 31).  <u>Commercial Factors of Atlanta, Inc., v. Terry Manufacturing Co., et al.,</u> in the Superior Court of Gwinnett County, Georgia, Civil No. 99-A10650-5.  Rudolph Terry retained Defendant Earnest DeLong, an Atlanta lawyer, to represent Terry Manufacturing, and later himself in the <u>Commercial Factors</u> litigation.[2]  In his trial testimony, DeLong characterized the original complaint in the Commercial Factors suit as a garden variety collection dispute.  On January 31, 2000, DeLong filed an Answer and Counterclaim on behalf of Terry Manufacturing in the Commercial Factors suit.  (Pl. Ex. 32).  In the original complaint, Commercial Factors alleged that Terry Manufacturing owed approximately $3.3 million on the Floodgate invoices.  (Pl. Ex. 31).  In the Answer and Counterclaim filed by DeLong on behalf of Terry Manufacturing, it was alleged that Terry Manufacturing owed approximately $2.1 million on the Floodgate invoices.  (Pl. Ex. 32).  It is significant in that Terry Manufacturing filed a pleading in court to the effect that it owed $2.1 million, when in fact it had never received the first tee shirt, and for that reason owed nothing.

---

[2]  There is a great deal of confusion as to whether Earnest DeLong, an individual, was retained or whether it was the law firm.  To further complicate matters, DeLong practiced under the name of DeLong & Caldwell, LLC, at the time he was retained.  The firm has gone through several changes due to partners joining and leaving the firm at various times.  For purposes of discussion, the Defendant will be referred to as DeLong.  In Part I(D) below, the problem of the proper entity will be discussed in more detail.

As Terry Manufacturing in fact owed nothing on the invoices, the defense of the civil action should have been a relatively straightforward matter.

Commercial Factors undertook extensive discovery beginning in the spring of 2000. Rudolph Terry's deposition was first taken on April 28, 2000. (Pl. Ex. 44A). The deposition was continued and Rudolph Terry was further deposed on May 17, 2000, (Pl. Ex. 45), and again on October 31, 2000. (Pl. Ex. 47). Rudolph Terry's deposition was also taken on October 11, 2001. (Pl. Ex. 48). When Rudolph Terry's appeared for a scheduled deposition on April 28, 2000, he did not bring documents relating to the invoices, as requested by the lawyers representing Commercial Factors. It is noteworthy that DeLong had filed a pleading alleging that Terry Manufacturing owed Floodgates $2,130,628.91 on the invoices in question. (Pl. Ex. 32). Such a precise figure implies that an accounting was undertaken to arrive at that figure. Rudolph Terry testified, on April 28, 2000, as follows:

> Q. What search did you engage in to find documents responsive to request No. 2?
>
> A. I have not – I have not had the opportunity to do any such search.
>
> Q. And do you plan to make such search in the future?
>
> A. I plan to consult with my attorney and make a decision as it relates to that. I have not assessed any of these as it relates to relevancy, applicability. So I just physically have gone beyond reason so to make myself available here.

(Pl. Ex. 44A, 11:3-11:14). Thus, it appears that Rudolph Terry was stonewalling Commercial Factor's efforts to discover the facts relating to the invoices in question.[3] Indeed, the record in

---

[3] An exasperated Commercial Factors lawyer, Matthew Coles, complained at Rudolph Terry's April 28, 2000 deposition:

the Commercial Factors litigation is replete with stonewalling and obfuscation.

Commercial Factors took Rudolph Terry's deposition again on May 17, 2000, and Rudolph Terry did not produce any documents. (Pl. Ex. 45, 153:22-155:12). Following a ruling by the Court in Gwinnett County, Rudolph Terry produced eighteen boxes of documents at a deposition held October 31, 2000. (Pl. Ex. 47, 287:5-287:14). In Rudolph Terry's lengthy deposition testimony, it becomes clear that none of the documents in the eighteen boxes produced contained documents which related to the Commercial Factors invoices to Terry Manufacturing. The following deposition testimony is illustrative:

> Q. When Terry Manufacturing purchased goods or services from Floodgates, would Terry Manufacturing issue a purchase order?
>
> A. Probably not.
>
> Q. Never?
>
> A. Probably–I don't know that never, but probably not. I say that that was not the general process.
>
> Q. What document would Terry Manufacturing exchange with Floodgates concerning goods and services that Floodgates was to provide to Terry Manufacturing?
>
> A. Might not be any document.

---

> I don't understand what we're doing here. I mean, you know that we're going to have no choice but to go back in front of the Court. The Court has heard from us on this case multiple times and has made it abundantly clear that discovery is going to go forward, and now we're being absolutely stonewalled at this properly noticed deposition. Not a single document has been produced, and not we're being told that the most basic of questions are not going to be answered. I am dumbfounded by that, in light of the Judge's order.

(Pl. Ex. 44A, 59:11-60:1).

-7-

(Pl. Ex. 47, 300:10-300:22).  Rudolph Terry was testifying falsely here as he was well aware that there were no documents.   According to invoices previously certified by Rudolph Terry to Commercial Factors, Terry Manufacturing had received millions of dollars worth of tee shirts. (Pl. Ex. 70). Commercial Facts amended its complaint and added Rudolph Terry as a named party Defendant.

### C. Cash Transfers

DeLong represented Terry Manufacturing from January 2000 until July 2003, when Terry Manufacturing filed for bankruptcy.  The parties have stipulated that Rudolph Terry paid DeLong $476,233.67 for the legal work DeLong performed in the Commercial Factors case. (Doc. 193, ¶ 2).  The payments were made in forty transfers between January 18, 2000 and June 12, 2003.[4]  DeLong sent regular bills to Rudolph, which Rudolph paid from checks written on Terry Manufacturing's accounts.  The Court has reviewed these bills, which total 141 pages.  (Pl. Ex. 13).  It is undisputed that the bills were sent under the letter head of "DeLong & Caldwell, LLC."

---

[4] These forty cash transfers total $860,998.54.  (Pl. Ex. 11).  The parties have stipulated that the amount of the transfers subject to the Trustee's fraudulent transfer claim is $476,233.67. (Doc. 193).  It appears that the difference is that amounts were transferred to DeLong in an effort to settle the Commercial Factors claim which are not actually DeLong's money.  Thus, DeLong was a conduit to the extent of $384,764.87.  The stipulation does not attempt to reconcile Plaintiff's Exhibit 11 with amount agreed up.  As the Court has found that the transfers are avoidable under both old Georgia law and new Georgia law, the distinction is not material.

### D. Identity of Defendants

The Court will next turn to the question of which Defendants are liable. The "Second Amended and Restated Complaint," in this Adversary Proceeding named four Defendants: (1) DeLong, Caldwell, Novotny & Bridgers, LLC (DCNB); (2) DeLong, Caldwell, Logue & Wisebram, LLC (DCLW); (3) Earnest H. DeLong, Jr., an individual; and (4) DeLong & Caldwell, LLC. (Doc. 161).

All of the billing and correspondence for DeLong's services for Rudolph Terry was done under the name "DeLong & Caldwell, LLC," on bills issued to Terry Manufacturing. (Pl. Exs. 10-13). However, at no time relevant to these proceeding was such an entity in existence. DCLW filed a change of name with the Georgia Secretary of State's office on January 28, 2007, changing its name to "DeLong & Caldwell, LLC." (Pl. Ex. 142). Thus, DeLong & Caldwell, LLC, did not exist until two days before the trial.

On the other hand, Earnest H. DeLong, Jr., an individual, was involved at all relevant times. The Defendants vigorously deny liability on both the fraudulent conveyance and professional liability counts. Alternatively, they contend that if there is any liability, Earnest DeLong is the only liable party. The Court finds that Earnest DeLong, an individual, is the only Defendant who should be held liable here. The evidence does not establish that any other named Defendant had an interest in the transfers in question.

## II.  CONCLUSIONS OF LAW

### A.  Jurisdiction/Core Proceedings

This Court has subject matter jurisdiction over the claims brought here pursuant to 28 U.S.C. § 1334.  The fraudulent conveyance claims are core proceedings.  28 U.S.C. § 157(b)(2)(H).  The preference claims are also core proceedings.  28 U.S.C. § 157(b)(2)(I).  As the attorney malpractice claim could be prosecuted independent of the Bankruptcy filing, it is not a core proceeding.  See Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Electric Mach. Enters., Inc.), 479 F.3d 791 (11th Cir. 2007) (holding that a core proceedings is one that would only arise in bankruptcy).  For this reason, the Court will enter a final order on the fraudulent conveyance and preference claims, and it will make proposed findings of fact and conclusions of law on the attorney malpractice claim.

### B.  Conflict of Laws

In this Adversary Proceeding, the Trustee asserts state law claims for malpractice and fraudulent conveyances.  Both the Trustee and DeLong agree that Georgia substantive law applies to the malpractice claims.  (Doc. 199, p. 21; Doc. 200, p. 30).  However, the Trustee argues that Alabama substantive law applies to the fraudulent transfer, while DeLong asserts that Georgia substantive law is applicable.  (Id.).

The first step in deciding a conflict of law problem is to determine whether the substantive law of Georgia is different than that of Alabama on the legal issues presented.  Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006).  The inquiry here is complicated by the fact that the Georgia Legislature amended its fraudulent transfer statutes on July 1, 2002, which make some of the transfers here subject to the old law

and others subject to the new law.  See Hays v. Morgan Stanley DW, Inc. (In re Stewart Finance Co.), __ B.R. __, 2007 WL 1032263 (Bankr. M.D. Ga. Mar. 30, 2007) (applying the repealed Georgia fraudulent transfer act to conveyances that occurred prior to July 1, 2002 and applying the current Georgia act to transfers that occurred after July 1, 2002).  The former act was codified at GA. CODE. ANN.  § 18-2-22 (repealed 2002), while the new law is codified at GA. CODE ANN. § 18-2-70 et seq. (2002).  The Alabama Fraudulent Transfer Act is codified at ALA. CODE § 8-9A-1 et seq.  There is a conflict in the burden of proof applied under the Alabama act and the Georgia act.  Compare Pennington v. Bigham, 512 So.2d 1344, 1346 (Ala. 1987) (holding that under  ALA. CODE § 8-9A-4, the plaintiff bears the initial burden of proving that a transfer was made, and then the burden shifts to the defendant to prove that it was for reasonably equivalent value), with Ambase Int'l Corp. v. Bank South, N.A., 395 S.E.2d 904, 908 (Ga. Ct. App. 1990) (holding that under GA. CODE. ANN.  § 18-2-22, the plaintiff must prove each element by a preponderance of the evidence).

　　　　Finding a conflict between Alabama and Georgia law, this Court applies the conflict of law rule from the forum state–Alabama.  See JP Morgan Chase Bank, N.A. v. AVCO Corp. (In re Citation Corp.), 349 B.R. 290, 294 (Bankr. N.D. Ala. 2006) ("This Court is bound by the Erie Doctrine in this case and therefore will look to Alabama choice-of-law rules.").  This case presents a cause of action for fraudulent transfers, which are properly characterized as tort claims.  See Cox v. Hughes, 781 So.2d 197, 201 (Ala. 2000) (classifying fraudulent conveyances actions as tort claims).  For tort actions, Alabama applies the law of lex loci delicti, which requires application of the law of the state where the wrong occurred.  Fitzgerald v. Austin, 715 So.2d 795, 797 (Ala. Civ. App. 1997).

This case involves a series of payments made from Rudolph Terry to DeLong. At the time of these transfers, Rudolph Terry and Earnest DeLong were residents of the State of Georgia. Rudolph Terry made the transfers on checks written from Terry Manufacturing's Atlanta office to Earnest DeLong's Atlanta law practice. The checks were written on a Georgia bank account and were made in payment for legal work that DeLong purportedly performed on the Commercial Factors Litigation, which was in a Georgia state court. Under the law of *lex loci delicti*, it appears that the "wrong" occurred in Georgia. As such, this Court concludes that Georgia substantive law applies to both the state law claims for malpractice and fraudulent transfers.

### C. Fraudulent Transfer Claims

As the Court has resolved the conflict of law question, concluding that Georgia law controls, the Court will next examine Georgia law. This is complicated by fact that the fraudulent transfer claim involves approximately forty cash transfers, the first one taking place on January 18, 2000, and the last one having occurred on June 12, 2003. These dates are significant in that the Georgia fraudulent transfer statutes were amended effective July 1, 2002. Thus, some of the transfers were made while the old law was in effect and the remainder were made while the new law was in effect. The transfers made prior to July 1, 2002 are analyzed under GA. CODE ANN. § 18-2-22 (old Georgia law), and the transfers made on or after July 1, 2002 are analyzed under GA. CODE ANN. §§ 18-2-70 to 18-2-80 (new Georgia law). See Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1081 (11th Cir. 2004) (concluding that causes of action existing prior to July 1, 2002, were not extinguished).

-12-

In this case, the Trustee seeks to stand in the shoes of a creditor of Terry Manufacturing.
See 11 U.S.C. § 544(b) (allowing the Trustee to act on behalf of an unsecured creditor to avoid
any transfer of an interest of the debtor in property that is voidable under applicable law).  The
parties have stipulated that there are at least eight unsecured creditors of Terry Manufacturing
whose claims arose prior to the date of the transfers at issue here.  (Doc. 193, ¶ 4).

### 1.  Old Georgia Law

The former Georgia act on fraudulent conveyances, GA. CODE ANN. § 18-2-22 (repealed
2002), provided in pertinent part as follows:

> The following acts by debtors shall be fraudulent in law against
> creditors and others and as to them shall be null and void:
>
> * * *
>
> (3) Every voluntary deed or conveyance, not for a valuable
> consideration, made by a debtor who is insolvent at the time of the
> conveyance.

Id.  The necessary elements under the constructive fraud provision are: (1) a bona fide creditor
must exist at the time the transfer was made; (2) the transfer was made for inadequate
consideration; and (3) the debtor was insolvent at the time of the transfer or was rendered
insolvent as a result of the transfer.  Ambase Int'l Corp., 395 S.E.2d at 908; Loeb v. Dante (In re
Dante), 1 B.R. 547, 548 (Bankr. N.D. Ga. 1979).  The Trustee bears the burden to prove each
element by a preponderance of the evidence.  See Carey v. U.S.A. (In re Carey), 1992 WL
12004363, at *5 (Bankr. S.D. Ga. May 14, 1992).

The first and third elements are not disputed by the parties.  The parties have stipulated to
the transfers.  (Doc. 193, ¶ 2).  The parties have also stipulated that Terry Manufacturing was
insolvent on January 1, 2000 and at all times thereafter.  (Doc. 193, ¶ 5).  The Trustee's

fraudulent transfer claim turns on the question of whether Terry Manufacturing received

adequate consideration for its cash transfers to DeLong.  Georgia courts have held that "valuable

consideration is founded on money or something convertible into money or having a value in

money."  Lionheart Legend, Inc. v. Norwest Bank Minnesota National Assoc., 560 S.E.2d 120,

124 (Ga. Ct. App. 2002).

Terry Manufacturing paid $476,233.67 to DeLong for the legal work he performed in the

Commercial Factors case.  The sheer magnitude of the attorney's fees here is astonishing.  Terry

Manufacturing never received the first tee shirt.  This fact could have been easily established

with a modest amount of effort.  However, this fact could not be proven without also establishing

that Rudolph Terry had lied to Commercial Factors about the Floodgates invoices.  Thus, the

thrust of DeLong's efforts was not to defend Terry Manufacturing in the Commercial Factors

civil action.  Rather, it was to shield Rudolph Terry from criminal liability, using Terry

Manufacturing to fund the effort and refusing to produce Terry Manufacturing documents which

would have gotten it off the hook, while placing Rudolph Terry in jeopardy of a criminal

indictment.

The DeLong bills, spanning a period of time from January 2000, to June 2003, consist of

141 pages.  (Pl. Ex. 13).  As Terry Manufacturing did not receive the first tee shirt from

Commercial Factors (during the period covered by the invoices), there is no valid reason for the

defense to have taken such a massive effort.  Examination of the DeLong bills reveals that an

enormous amount of time was spent resisting the efforts of Commercial Factors to obtain

discovery from Terry Manufacturing and its accountant, Richard S. Rose.  The underlying

purpose of this massive effort to thwart Commercial Factor's discovery was to conceal the

criminal activities of Rudolph and Roy Terry and not to defend Terry Manufacturing. Rudolph

Terry was deeply involved in the fraudulent scheme with Jon Pouncey, and the materials sought

by Commercial Factors would have paved Rudolph Terry's path to prison. Moreover, the

accounting work papers of Rose, Terry Manufacturing's accountant, if they in fact did exist,

would have shown that Terry Manufacturing's financial statements were fraudulent.[5]

　　　　Terry Manufacturing was named a Defendant in the Commercial Factors litigation where

millions of dollars in damages were sought. DeLong contends that the failure to successfully

defend Terry Manufacturing could have resulted in its ruin. DeLong contends that he vigorously

litigated the Commercial Factors case and that he used a high degree of skill. The problem is

that virtually all of DeLong's efforts were directed at protecting Rudolph Terry from criminal

prosecution, often to the detriment of Terry Manufacturing. For example, DeLong filed a

pleading which admitted that Terry Manufacturing had received approximately $2.1 million in

goods from Floodgate, when in fact it had not. (Pl. Ex. 32). Rather than aggressively work to

prove that Terry Manufacturing had received no tee shirts, which would have gotten Terry

---

[5] Rose refused to produce documents or give testimony in the Commercial Factors case. Following a court order compelling discovery, Rose prosecuted an appeal to the Georgia Court of Appeals. Rose v. Commercial Factors of Atlanta, Inc., 586 S.E.2d 41 (Ga. Ct. App. 2003) (holding that crime-fraud exception overrides a claim of privilege). Georgia law recognizes an accountant-client privilege. However, the trial court found that the privilege did not apply in that case because Rose acted in furtherance of a fraudulent scheme. The Georgia Court of Appeals affirmed the trial court. Id. The evidence produced at trial established that Rose did not subsequently produce his work papers. The Trustee testified at the trial of this Adversary Proceeding that in all likelihood, no such work papers exist and that Rose probably certified Terry Manufacturing's financial statements without conducting an audit. While this is an inference and not direct evidence, the Court is of the view that the Trustee is correct. If the fact that Terry Manufacturing's financial statements were fraudulent been established in the year 2000 or 2001, the unraveling of Terry Manufacturing would have taken place earlier. In other words, DeLong's efforts stalled, for a year or two, the exposure of the massive fraud perpetrated by the Terry brothers.

Manufacturing off the hook, DeLong undertook an extraordinarily time consuming effort to keep evidence which would have proved this fact from Commercial Factors. Having heard many hours of testimony and having considered voluminous documents concerning the Commercial Factors litigation, the Court finds that this was done not to benefit Terry Manufacturing; rather, it was done to protect Rudolph Terry. Indeed, these efforts were highly prejudicial to Terry Manufacturing.

DeLong argues that the claims made against Terry Manufacturing and Rudolph Terry were coextensive. This is true. However, DeLong ignores the fact that the defenses of Terry Manufacturing and Rudolph Terry were antagonistic. Terry Manufacturing's defense–no tee shirts–necessarily implies Rudolph Terry's fraud, as he had falsely certified the existence of the nonexistent tee shirts. Rather than defending Terry Manufacturing, DeLong placed Terry Manufacturing squarely between Commercial Factors and Rudolph Terry. That is, DeLong was defending Rudolph Terry at the expense of Terry Manufacturing.

The shortcomings in DeLong's defense is that he assumes that value provided to Rudolph Terry individually inured to the benefit of Terry Manufacturing. This is not correct. Terry Manufacturing did not benefit from DeLong's services in the Commercial Factors litigation. As Terry Manufacturing did not receive the tee shirts represented by the Commercial Factors invoices, it had a simple, straight-forward defense, which DeLong could not raise without also establishing that Rudolph Terry falsely certified the Commercial Factors invoices. DeLong argues that Terry Manufacturing not been defended, that judgment would have been taken and the corporation ultimately destroyed. To be sure, by filing any kind of answer and taking any

-16-

kind of position, judgment was staved off for a time.[6]  The proper comparison is not DeLong's services with no services, but rather the services rendered by DeLong with those of an attorney not encumbered with the defense of Rudolph Terry.   Indeed, not only did Terry Manufacturing not benefit from DeLong's services, rather it was harmed because its defense was not established.

Buried deeply in the papers filed DeLong in the Commercial Factors litigation was an affidavit of Roy Terry, which was filed in the Gwinnett County case in support of a motion for summary judgment.  (Pl. Ex. 69).  In Paragraph 13 of that affidavit Roy Terry states that "if Rudolph Terry engaged in the inappropriate conduct alleged by the Plaintiff [Commercial Factors], that conduct was outside the scope of Rudolph Terry's employment at TMC, and it was not in furtherance of the business of TMC."  (Pl. Ex. 69).  As DeLong argues in his filings here, he raised every possible defense, none of which were credible because they were inconsistent with one another.  Indeed, he qualified Roy Terry's statement with the conditional "if."   One need look no farther than Roy Terry's affidavit to see that facts raised by the Defense were inconsistent with one another.

Rudolph Terry's defense to the fraud allegations was that the fraudulent invoices were part of a scheme to lend money to Jon Pouncey.  Roy Terry admits knowledge of the scheme at Paragraph 10 of his affidavit.  (Pl. Ex. 69).  It was alleged by Rudolph Terry that Tracy Eden (an employee of Commercial Factors) had knowledge of the lending arrangement and that as a result Commercial Factors was not misled.  (Pl. Ex. 64, Response to Interrogatory No. 5).  In sum, the

---

[6]  DeLong states in his Proposed Findings that "without a defense, it is exceeding likely that a judgment wold have ben entered against Terry Manufacturing."  (Doc. 200, p. 33).

Defense was that Rudolph Terry didn't do any thing wrong because Commercial Factors was in on the arrangement, or in the alternative, if Rudolph Terry did anything wrong, Terry Manufacturing did not have anything to do with it. Not surprisingly, the motion for summary judgment was denied.

One cannot sit down and stand up at the same time. So it was with the inconsistent defenses raised by DeLong on behalf of Terry Manufacturing and Rudolph Terry in the Commercial Factors litigation. Terry Manufacturing paid DeLong nearly half a million dollars to effectively eviscerate its litigation position. For this reason, Terry Manufacturing did not receive adequate consideration for the cash transfers in suit, and therefore, this Court finds that the transfers are voidable as constructively fraudulent.[7]

### 2. New Georgia Law

The Uniform Fraudulent Transfer act (UFTA), found at GA. CODE ANN. § 18-2-70 et seq. (2002), provides in § 18-2-74, as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> * * *
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

---

[7] At trial, the Trustee offered evidence as to DeLong's liability under the "actual fraud" category of fraudulent transfer law. However, the Trustee's complaint and second amended complaint only address theories under "constructive fraud." Therefore, this Court will not address the "actual fraud" theories. See Atlas Chem. Indus., Inc. v. Moraine Prods., 509 F.2d 1, 7-8 (6th Cir. 1974) (holding that the Court will not address causes of action introduced at trial but not included in the pleadings).

> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

GA. CODE ANN. § 18-2-74 (2002). As discussed in Part II(C)(1) above, the Court concludes that the transfers in question are fraudulent transfers under old Georgia law. Having considered Georgia's new fraudulent transfer statute, the Court comes to the same conclusion - the cash transfers to DeLong were made for less than sufficient consideration.

### 3. Section 548 of the Bankruptcy Code

The Trustee has also sought to avoid the payments as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B). At the time relevant to this Adversary Proceeding,[8] that section provided, in relevant part:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily -
>
> * * *
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

_____

[8] Section 548(a)(1)(B) was amended in 2005, pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23. The pre-BAPCPA version of the statute is applicable here as the underlying bankruptcy case was filed prior to the effective date of the Act.

-19-

11 U.S.C. § 548(a)(1)(B).  The Court finds that the Trustee has satisfied the elements of

fraudulent transfer under the Bankruptcy Code.  However, section 548 only provides for a one

year look back period for avoidance.  As the Court has already determined that the transfers in

issue here are avoidable as fraudulent transfers under Georgia law, it need not address the issue

avoidability under section 548.

### 4. Good Faith Defense

Georgia has codified a good faith defense at GA. CODE ANN. § 18-2-78, which provides,

in part, as follows:

> A transfer or obligation is not voidable under paragraph (1) of
> subsection (a) of Code Section 18-2-74 against a person who took
> in good faith and for a reasonably equivalent value or against any
> subsequent transferee or obligee.

GA. CODE ANN. § 18-2-78(a) (2002).  As the Court has determined that DeLong did not provide

reasonably equivalent value for the cash transfers in question, a defense predicated on § 18-2-78

fails.

### 5. Conduit Theory

DeLong raises a "conduit" defense, arguing that he was a mere conduit, at least to the

extent of fees paid to co-counsel Jerry Thomas.  (Doc. 200, pp. 58-64).  The United States Court

of Appeals for the Eleventh Circuit recognizes a "conduit theory."[9] IBT Int'l, Inc., v. Northern

(In re International Admin. Servs., Inc.), 408 F.3d 689, 705 (11th Cir. 2005); Nordberg v. Arab

Banking Corp. (In re Chase & Sandborn Corp.), 904 F.2d 588, 598 (11th Cir. 1990).  Moreover,

---

[9] Presumably, the conduit defense is available regardless of whether it is raised in the
context of a suit brought pursuant to 11 U.S.C. § 548, or 11 U.S.C. § 544 and applicable state
law.

this Court has discussed the conduit defense in two recent decisions. <u>Alexander v. Horton (In re Terry Manufacturing Co.)</u>, 345 B.R. 377 (Bankr. M.D. Ala. 2006); <u>Alexander v. J. Martin & Assocs. (In re Terry Manufacturing Co.)</u>, __ BR __, 2007 WL 528067 (Bankr. M.D. Ala. Feb. 20, 2007).

The conduit theory provides that the first entity which receives a transfer from a debtor may be so controlled by the debtor that it cannot be said to be an initial transferee. This Court rejected a conduit theory argument similar to that made by DeLong in <u>J. Martin & Assoc.</u>  In <u>Martin</u>, Brian Steele, a criminal defense lawyer, was hired to defend Rudolph Terry in the criminal proceeding which arose out of the Commercial Factors fraud. Steele in turn hired co-counsel Leeza Cherniak and J. Martin, an investigator. The Trustee argued there that Steele was a mere conduit for Cherniak and Martin. The Court rejected that argument, finding that the criminal defense lawyer was not so controlled by the Terry brothers so as to make him a mere conduit.

The facts in this Adversary Proceeding is similar to those in <u>J. Martin</u>. Rudolph Terry hired DeLong, who in turn associated Jerry Thomas. It was DeLong and not Rudolph Terry who made this decision, and it was DeLong who controlled the Commercial Factors litigation and the activities of Jerry Thomas. The Court heard lengthy testimony from both DeLong and Rudolph Terry. It was well established at trial that DeLong had substantial control and cannot be said to have been so controlled by Rudolph Terry so as to be a mere conduit between Terry Manufacturing and Jerry Thomas. Therefore, the Court finds that DeLong's conduit theory defense is without merit.

### D. The Preference Claim

A voidable preference is defined as follows:

> [T]he trustee may avoid any transfer of an interest of the debtor in property–
>
> > (1) to or for the benefit of a creditor;
> > (2) for or on account of an antecedent debtor owed by the debtor before such transfer was made.
> > (3) made while the debtor was insolvent;
> > (4) made
> > > (A) on or within 90 days before the date of the filing of the petition; and
> >
> > * * *
> > (5) that enables such creditor to receive more than such creditor would receive if–
> > > (A) the case were a case under chapter 7 of this title;
> > > (B) the transfer had not been made; and
> > > (C) such creditor received payment of such debt to
>
> the
>
> > extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Having considered the evidence, it appears that the elements of a voidable preference, within the meaning of 11 U.S.C. § 547(b), have been met.  However, the Trustee may not avoid a transfer made in the ordinary course of business.  <u>See</u> 11 U.S.C. § 547(c)(2).[10]  The evidence shows that DeLong billed Terry Manufacturing periodically, usually monthly, for services rendered.  The evidence further shows that DeLong's bills were paid promptly.  The Court finds

---

[10]  Section 547(c)(2) was amended in 2005, pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.  The pre-BAPCPA version of the statute is applicable here as the underlying bankruptcy case was filed prior to the effective date of the Act.

that the payments in question were made in the ordinary course of business; therefore, DeLong

has established this defense.  For this reason, the Trustee's preference claim is dismissed.

### E.  The Attorney Malpractice Claim

As the malpractice claim is not a core proceeding, the Court will file Proposed Findings

of Fact and Conclusions of Law with the District Court.

### F.  Rule 54(b) Certification

As this Court has determined that the malpractice claim is a noncore proceeding, it

necessarily follows that this Court cannot dispose of all pending claims by way of this decision.

When judgment on fewer than all claims is entered, that judgment is not a final judgment.  Rule

54(b), Fed. R. Civ. P., as made applicable by Rule 7054, Fed. R. Bankr. P.  However, if the

Court finds that "there is no just reason for delay" it may direct entry of a final judgment.  The

Court makes such a determination here.  The Clerk will enter a final judgment on all claims,

except for the attorney malpractice claim.  Specifically, the Court will, by way of a separate

document, enter final judgment in favor of the Plaintiff and against Defendant Earnest H.

DeLong, Jr., in the amount of $476,233.67.  Moreover, the claims against Defendants DeLong,

Caldwell, Novotny & Bridgers, LLC, DeLong, Caldwell, Logue & Wisebram; and DeLong &

Caldwell, LLC, are DISMISSED.  In addition, the preference claim is DISMISSED.

## <u>CONCLUSION</u>

Having considered all of the evidence on this point, having heard the testimony of the witnesses, having considered voluminous documents, the Court finds that Terry Manufacturing not receive reasonably equivalent value for the money paid DeLong.  Therefore, this Court finds that the transfers were constructively fraudulent under Georgia Law.   Judgment will be entered by way of a separate document.