IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EARNEST H. DeLONG, JR.,            )
DELONG, CALDWELL, NOVOTNY   )
& BRIDGERS, L.L.C., DeLONG,        )
CALDWELL, LOGUE & WISEBRAM, )
L.L.C., & DeLONG & CALDWELL,    )
L.L.C.                                         )
                                                 )
    Appellants/Cross-Appellees        )
                                                 )        CIVIL ACTION FILE
VS.                                            )
                                                 )        NO. 2:07-CV-0620
J. LESTER ALEXANDER, III,          )
TRUSTEE OF TERRY                     )
MANUFACTURING COMPANY          )
INC. and TERRY UNIFORM            )
COMPANY, L.L.C.                        )
                                                 )
    Cross-Appellant/Appellee           )

**Reply of Appellant Earnest H. DeLong To Brief of Appellee**

Earnest H. DeLong
DeLong, Caldwell & Bridgers, LLC
3100 Centennial tower
101 Marietta Street
Atlanta, Georgia 30303
404/979-3150
Appellant/Cross Appellee

i

## Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Argument And Citation Of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## Table of Authorities

General Electric Credit Corporation v. Murphy, 895 F.2f 725 (11th Cir., 1990).   5

Rubin v. Manufacturers hanover Trust Co., 661 F.2d 979, 991 (2d Cir. 1981) . . . 5

Jeffrey Bigelow Design Group, Inc. v. First American Bank of Maryland,
956 F.2d 479, 484 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

General Electric Credit Corporation of Tennessee v. Murphy, 995 F.2d 725 . . . . . 6

Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823 (5th Cir. 1959) . . . . . . . . . . . . 6

Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979 (2d Cir. 1981) . . . . . . . 6

## ARGUMENT AND CITATION OF AUTHORITIES

The Trustee's tactic in his Response is to obscure the clear and obvious errors in the bankruptcy court's findings of fact by emphasizing Roy and Rudolph Terry's criminal conduct. That Terry Manufacturing Company ("TMC") and its owners, Roy and Rudolph Terry, were not the pillars of business achievement that the world believed them to be is well established and documented. In January, 2000, however, when Mr. DeLong and Mr. Thomas were hired to represent the Company in the Commercial Factors litigation, the real state of affairs within TMC was unknown to all but the Terry brothers themselves. It is uncontested that Mr. DeLong never had heard of Terry Manufacturing Company or Rudolph or Roy Terry before they engaged him and Mr. Thomas to defend TMC in the Commercial Factors litigation. [T. 609, ln. 18-19] Neither Mr. DeLong nor Mr. Thomas ever provided business or other corporate advice to Terry Manufacturing Company other than on matters ancillary to the Commercial Factors litigation. [T. 497, ln. 25 - T. 499, ln. 17; T. 273-276] When the Terry brothers engaged Mr. DeLong and Mr. Thomas to represent TMC, Mr. DeLong shared the apparently universal belief that TMC was a very successful company. [T - 557, ln. 7] The extent of the fraud that TMC and its owners, the Terry brothers, had perpetrated is utterly irrelevant to this case or to the issues now before this Court.

-1-

**The Bankruptcy Court's Finding That TMC Did Not Receive Reasonably Equivalent Value For The Fees It Paid To Mr. DeLong And Mr. Thomas Is Clearly Erroneous**

Before Mr. DeLong even  entered his appearance in the Commercial Factors litigation in January, 2000, TMC already had acknowledged in writing to CFA that it owed 2.1 million dollars on the Floodgates invoices that it had factored. [T. 558, ln. 7] Both Roy and Rudolph Terry told Mr. DeLong that TMC owed the money reflected in the Floodgates invoices. They instructed him  to try to resolve the matter on behalf of TMC through a settlement or consent judgment for $2,130,000.00 and a payment schedule. [T. 78-79; T. 424, ln. 21 –T. 425, ln. 4] CFA rejected the settlement proposal.  Additional efforts at settlement likewise were unsuccessful.

In its initial Complaint, CFA sought $3,320,710.00 in damages, plus attorneys fees.  [P-1; T. 279, ln. 6 – 13; T. 351, ln. 16-21]  In the settlement negotiations CFA's stated goal was to extract at least $3,000,000.00 from TMC. [T. 582, ln. 15]  When CFA was not able to get Terry to commit to settle the case for the desired $3,000,000.00 it began to ratchet up the pressure upon TMC.  Like all the attorneys for both sides, CFA believed that Terry Manufacturing Company was a very successful company.  CFA and its attorneys obviously believed that, if they applied the right pressure and squeezed hard enough in the litigation, the Terry brothers

-2-

would open TMC's checkbook and write a check for whatever amount CFA demanded. [T. 557, ln. 5] Pursuing that strategy, CFA repeatedly ratcheted up the liability stakes for TMC. [T. 561, ln. 12] After filing its initial collection complaint, CFA amended the claims to add a claim for stubborn litigiousness. Next, it raised a claim for bad faith. Later, CFA amended the Complaint to add a fraud claim against TMC. After the first year of the litigation, on December 6, 2000, CFA added Rudolph Terry as a defendant and asserted a fraud claim against him personally. Later still, CFA raised a RICO claim against TMC, Floodgates, Jon Pouncey, and Rudolph Terry. [T. 558, ln. 7]

It is undisputable that TMC was compelled to defend itself in the face of potentially crushing liability. [T. 285, ln. 4–21; T. 350, ln. 14-20] By the time CFA added its last amendment to the Complaint, its total claims presented a potential liability of almost ten million dollars ($10,000,000). As later events (including the federal convictions of Roy and Rudolph Terry) revealed, the actual facts rendered it highly probable that TMC would be found liable for the RICO damages. The notion advanced both in the Bankruptcy Court's decision and in the Trustee's brief, that the only thing TMC's Counsel needed to do in order to win the litigation was to demonstrate that TMC never received the t-shirts reflected on the Floodgates invoices, is a grossly oversimplified speculation amounting to pure fantasy. In fact,

had Mr. DeLong and Mr. Thomas defended TMC solely on the basis that TMC never received the t-shirts from Floodgates, the legal and financial result for TMC would have been inescapably dire. Relying upon such a defense would have *assured* that the Gwinnett Superior Court would render a judgment against TMC amounting to no less than $2,100,000.00 (the amount to which TMC had admitted owing Floodgates on the invoices), because the facts clearly established that the Company had ratified at least that amount.  Given the very real likelihood that TMC would be found liable for at least $2,100,000, and considering the fact that CFA was intent upon recovering considerably more than $ 3,000,000 in the litigation, Mr. DeLong's and Mr. Thomas' aggressive defense of Terry Manufacturing Company's interests was both absolutely essential and quite successful. There is no dispute that they actually spent the time in the defense of the CFA case for which they billed the Company. [T. 33, ln. 22]  They were paid an appropriate amount for their services to the Company, and the Company unquestionably received reasonably equivalent value for the fees it paid them.

The Trustee's re-construction of TMC's accounts reflects that the Company's income for the years from between 2000 through mid 2003, the period during which the CFA litigation was pending, was approximately $100,000,000.00. [T. 277, ln. 19 – 23] It is not mere speculation to suggest that without Mr. DeLong's and Mr. Thomas' work, the judgment CFA would have obtained from TMC could have been

-4-

collected from the Company. Even if the Company failed to pay the judgment, CFA would have been elevated to the status of a Judgment Creditor in the bankruptcy case. In either event, the funds available for TMC's unsecured creditors would have been diminished by a minimum of $2,100,000.00.

The purpose of voiding transfers unsupported by "reasonably equivalent value" is to protect creditors against the depletion of a bankrupt's estate. <u>General Electric Credit Corporation v. Murphy</u>, 895 F.2d 725 (11th Cir., 1990). It is not appropriate to void a transfer which "confers an economic benefit upon the debtor", either directly or indirectly. <u>Rubin v. Manufacturers Hanover Trust Co.</u>, 661 F.2d 979, 991 (2d Cir. 1981). The defense that Mr. DeLong and Mr. Thomas provided, conferred substantial economic benefit on TMC. The work that Mr. DeLong and Mr. Thomas did for TMC prevented the Company's net worth from being further diminished. Accordingly, the interests of the Company's creditors were protected.

The proper focus in this fraudulent transfer case is on the net effect of the transfers that TMC made to Mr. DeLong and Mr. Thomas upon TMC's bankruptcy estate. In the matter of the CFA litigation, the position of TMC's unsecured creditors was substantially better as the result of Mr. DeLong's and Mr. Thomas's efforts. As the Courts have recognized in the Eleventh and other Circuits, so long as the unsecured creditors are no worse off, no fraudulent transfer has occurred. <u>Jeffrey</u>

-5-

Bigelow Design Group, Inc. v. First American Bank of Maryland, 956 F.2d 479, 484
(4th Cir. 1992).[1]

**Mr. DeLong Was a Conduit For The Payments That TMC Made To Mr. Thomas**

The Trustee's statement that DeLong failed to provide evidence of any
payments to Mr. Thomas is, at best, disingenuous. Defendant's Exhibit 29 is the
ledger kept by Mr. DeLong in the regular course of his business. It reflects the
amount billed, the amount recovered for expenses advanced, the amount of fees and
the portion of fees disbursed to Mr. Thomas. The uncontradicted evidence establishes
that TMC had an understanding with Mr. DeLong and Mr. Thomas that TMC would
pay the money it owed them to Mr. DeLong, and that Mr. DeLong immediately
would, in turn, disburse to Mr. Thomas the agreed upon amounts owed to him.
Exhibit 29 shows that Mr. DeLong distributed $167,304.74 to Mr. Thomas. [P-13; D-
29; T.606, ln. 15 - T.607, ln. 25; T.622, ln. 18 - T.623, ln. 5]

The Bankruptcy Court's conclusion that Mr. DeLong was not a mere conduit
for the payments made to Mr. Thomas derives from the Court's statement[2] that:

Rudolph Terry hired DeLong, who in turn associated Jerry Thomas.  It

---

[1] *Compare,.* General Electric Credit Corporation of Tennessee v. Murphy, 895 F.2d 725,
727, citing Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823,(5th Cir, 1959), *cert denied* 362 U.S.
962; and Rubin v. Manufacturers Hanover Trust Co. 661 F.2d 979 (2d Cir. 1981).

[2] Memorandum Decision, Page 21

> was DeLong and not Rudolph Terry who made this decision, and it was
> DeLong who controlled the Commercial Factors litigation and the
> activities of Jerry Thomas.

The statement is contradicted by the uncontested record evidence adduced at trial and it is clearly erroneous. Mr. DeLong testified that **Mr. Thomas** brought *him* into the case. [T.48, ln. 22]. His testimony was corroborated by Rudolph Terry who testified that he hired *Mr. Thomas,* and that Mr. Terry, in consultation with Mr. Thomas, subsequently hired Mr. DeLong. [T. 400, ln. 19; T. 407, ln.2]  Rudolph Terry's testimony further was confirmed by Roy Terry.

The record reflects that the Bankruptcy Court had a clearly erroneous understanding of Mr. DeLong's role as lead counsel.  The fact that Mr. DeLong ultimately was designated as lead counsel in the CFA litigation had no impact upon the financial arrangement that he and Mr. Thomas had made with TMC.  The uncontradicted evidence reveals that the arrangement between the attorneys and TMC was that Mr. DeLong would be responsible for the billing; that TMC would make the payments to Mr. DeLong from which Mr. DeLong was responsible for paying Mr. Thomas the portion that he was due under the Company's financial agreement with the lawyers. Had Mr. DeLong failed to pay the money due to Mr. Thomas, he would have violated his compensation agreement with TMC.  Mr. Thomas would then have

-7-

had a claim against TMC and Mr. DeLong for his compensation.  Mr. DeLong clearly was no more than a mere conduit for TMC's payment of the amounts due to Mr. Thomas.

### Conclusion

The Bankruptcy Court's statement that "Terry Manufacturing Company did not benefit from DeLong's services in the Commercial Factors litigation",[3] demonstrates irrefutably the Court's clear error.  The logical extension from the Court's finding is that: (i) Terry Manufacturing Company did not receive one penny of value from the work that Mr. DeLong and Mr. Thomas did; (ii) TNC did not receive one penny of value from Mr. DeLong preparing and filing an Answer to the CFA Complaint; (iii) TMC did not receive one penny of value from Mr. DeLong and Mr. Thomas defending the Company through the year that the case was litigated before CFA raised its fraud claims against Rudolph Terry personally.  That result is absurd; the Court's error is obvious.

Had Mr. DeLong not filed the Answer, judgment would have been entered against TMC for no less than $2,100,000.00. In reality, the judgment that would have been entered against TMC would more likely have been $3,320,710.00, the amount TMC claimed in its first Complaint. These uncontested facts are central to an

---

[3] Memorandum Decision, Pg. 16.

evaluation of the services that Mr. DeLong and Mr. Thomas provided in the defense of Terry Manufacturing Company. TMC had ratified Rudolph Terry's conduct and the resulting debt long before it engaged Mr. DeLong. He could not change that fact. There is no statement that he could have made, no motion that he could have filed, no defense that he could have raised that would have altered that fact. After three years of litigation the case was going to trial. The trial judge had determined that he would let a jury decide what to do with the case. [T.560, ln. 10]

The fact that the defense that Mr. DeLong and Mr. Thomas provided may have also benefitted Rudolph Terry does not diminish the benefit that it afforded TMC. When CFA did sue Rudolph Terry on December 5, 2000, the Complaint repeated verbatim the same allegations against Mr. Terry for "Conspiracy to Defraud", "Fraud and Deceit", and "Conversion" that CFA had previously asserted against TMC, Floodgates and Jon Pouncey. This latest iteration of the amended Complaint raised no new factual or legal claims against Rudolph Terry. It was carefully crafted to couch each allegation in terms of *defendants' collective conduct.* [Pl Ex 59] The unanimity of claims meant that every defensive step after December 5, 2000 continued to benefit Terry Manufacturing Company.

Finally, it is important to remember that CFA is a creditor in the Terry Manufacturing bankruptcy. If CFA determines to pursue a claim against TMC in the

bankruptcy court, the Trustee's only avenue of defense will be provided through the file that Mr. DeLong and Mr. Thomas generated in their original defense of the Company.

For the reasons cited it is clear that TMC's unsecured creditors are in a much better position today as a direct consequence of Mr. DeLong's efforts. Therefore, the Bankruptcy Court's decision must be reversed.

Respectfully submitted this 3rd day of January, 2008.


s/ Earnest H. DeLong
Earnest H. DeLong
Georgia Bar No. 217300


DeLong, Caldwell & Bridgers, LLC
3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
404/979-3150

<u>Certificate of Service</u>

I certify that I have on this 3rd day of January, 2008, electronically filed the foregoing Reply of Appellant Earnest H. DeLong To Brief of Appellee with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record who have consented to electronic notification and have served a copy on opposing counsel by depositing a copy of same in the U.S. Mail with adequate postage affixed therto and addressed as follows:

> Brent B. Barrier
> Catherine E. Lasky
> Phelps Dunbar LLP
> 365 Canal Street
> Suite 2000
> New Orleans, LA 70130

s/ Earnest H. DeLong

-11-